UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 9:21-cv-81565-DMM

WILLIAM DAVID WILCOX, JR.,
a/k/a DAVID WILCOX,
an individual, and MEGAN DANIELLE LUCHEY,
an individual,

    Plaintiffs,
v.

LA PENSEE CONDOMINIUM ASSOCIATION,
INC., A Florida Not-For-Profit Corporation,
MARY MCFADDEN, an individual,
MAC RESIDENTIAL MANAGEMENT SERVICES, LLC,
A Florida Limited Liability Company, and
DAVID WOLFF a/k/a DAVID WOLF, an individual,

    Defendants.
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS MARY MCFADDEN AND MAC RESIDENTIAL MANAGEMENT SERVICES, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff, William David Wilcox, Jr. ("David"), and Plaintiff, Megan Danielle Luchey ("Megan" and together with David, "Plaintiffs"), by and through undersigned counsel, hereby file this Response to the Defendants Mary McFadden ("McFadden") and MAC Residential Management Services, LLC's ("MAC") Motion to Dismiss With Incorporated Memorandum of Law (the "Motion to Dismiss"), and in support, state as follows:

**BACKGROUND AND PROCEDURAL HISTORY**

1. On September 3, 2021, Plaintiffs filed their complaint [ECF 1] (the "Complaint") in which they assert three (3) causes of action (Count 1 – Retaliation Under the Fair Housing Act; Count II – Interference, Coercion, or Intimidation under Section 760.37 of the Florida Statutes; and Count III – Intentional Infliction of Emotional Distress) against Defendant, La Pensee Condominium Association, Inc. (the "Association"), Defendant, McFadden, the principal of MAC,

1

the Association's property manager, and David Wolff a/k/a David Wolf ("Wolff" and together with the Association, McFadden, and MAC, "Defendants"), a member of the Association's Board of Directors (the "Board"), and the Association's Secretary.

2. The Complaint sets forth, and delineates, each of the Defendants' respective reprehensible conduct that gives rise to the causes of action set forth therein, thereby providing Defendants with sufficient notice of the claims asserted against them.

3. As discussed in greater detail below, the Complaint sets forth each Defendant's despicable conduct, acting in concert, in furtherance of their diabolical, fraudulent scheme to have Plaintiffs removed from the unit in which they reside (the "Unit"), which is managed by MAC, and McFadden, because Megan is African-American, and because David received a reasonable accommodation from the Association allowing his dog Zeus to reside in the Unit.

4. Despite the clear, detailed delineation of each individual Defendant's odious conduct, which was premeditated, pervasive, and has occurred over the course of ten (10) months, and continues to this day, evidencing their liability to Plaintiffs under the causes of action asserted in the Complaint, McFadden, and MAC, filed the Motion to Dismiss [ECF 9] erroneously asserting that Plaintiffs improperly lumped Defendants together, that that the Defendants' insidious conduct, including the fabrication of a false lease in an effort to remove Plaintiffs from the Unit, was not outrageous enough to give rise to a cause of action for intentional infliction of emotional distress.

## ARGUMENT

**A.     Standard of Review for Motion to Dismiss**

"Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 231 5th Cir. 2009)(citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005). Federal Rule of Civil Procedure 8(a)(2) ("Rule 8") requires that a complaint provide "a short and plain statement of the claim

showing that the pleader is entitled to relief." *Fed. R. Civ. Pro. 8(a)(2)*. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive [a motion to dismiss] a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on it face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twonbly*, 550 U.S. at 570). A claim to relief is plausible on its face when it has "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. *Twombly*, 550 U.S. at 556.

As set forth below, Plaintiffs have satisfied Rule 8, as well as stated a cause of action for Intentional Infliction of Emotion Distress, and the Motion to Dismiss should be denied in its entirety.

      **B.    The Complaint Is Not A Shotgun Pleading And Each Defendant Has Been Provided Notice of the Claims Asserted Against Them**

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

Accordingly, a motion to dismiss is only granted when the moving party demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

The Complaint clearly delineates, and attributes, conduct to each of the Defendants that, if accepted as true, which at this juncture they must be, provide Defendants with adequate notice of the claims asserted against them in the Complaint and the supporting factual allegations for each claim.

"[T]he key feature of a shotgun pleading is that it fails to give defendants 'adequate notice' of the claims against them and the supporting factual allegations for each claim.'" *Smith v. Ethicon, Inc.*, 2020 WL 9071685 at *2 (N.D. Fla. 2020)(citation omitted). "A complaint is not a shotgun pleading if the pleader's 'adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." *Id.* (citation omitted).

Moreover, a complaint is not considered a shotgun pleading subject to dismissal simply because it accuses all of the defendants collectively. *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000)("[t]he fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct").

Asserting individual counts against multiple defendants does not violate Rule 8. *Mobil Oil Corp. v. Dade County Esoil Management Co., Inc.*, 982 F.Supp. 873, 878 (S.D. Fla. 1997)(motion to dismiss fraud claims under Rule 9, which is more stringent with respect to its pleading requirement that Rule 8, denied as court determined arguments of "lumping the various named Defendants together into the allegations of fraud . . . unavailing"); *see also*, *Baker v. Warner/Chappell Music, Inc.*, 2017 WL 4310750 at *12 (S.D. Fla. 2017); *King v. Astrazeneca Pharmaceuticals, LP*, 2014 WL 1400629 at *2 (M.D. Fla. 2014)(denying motion to dismiss where the allegations of a complaint provide defendants with notice of the claims asserted against them noting "lumping . . . into a single count does not warrant dismissal); *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, 232 F.Supp.3d 1201, 1206 (M.D. Fla. 2017)(motion to dismiss for "lumping" Defendants into a single count denied); *Smith*, *supra*, 2020 WL at *3 (not a shotgun pleading despite the fact that each count is asserted against multiple defendants).

Despite the McFadden's, and the MAC's, assertion to the contrary, a review of the allegations set forth in the Complaint establishes that it is not a shotgun pleading, as it can be fairly read to aver that all Defendants are responsible for the alleged conduct, and each Defendant is on notice of their conduct that gives rise to the causes of action asserted against them.

- In Paragraph 5 of the Complaint, Plaintiffs allege that "MAC, through its principal, McFadden, acts as the Association's property manager."

- In Paragraph 6 of the Complaint, Plaintiffs allege that "all conduct complained of herein by MAC was perpetrated by and through McFadden, its authorized agent."

- In Paragraph 7 of the Complaint, Plaintiffs allege that "McFadden is individually liable to Plaintiffs for all claims asserted herein, because McFadden either committed, or participated in the commission of, said claims."

- In Paragraph 8 of the Complaint, Plaintiffs allege that "MAC is liable to Plaintiffs for all of McFadden's conduct complained of herein, because at all times relevant hereto, McFadden was the authorized agent for MAC, and such conduct was engaged in while in the scope of her authorized duties to act on behalf of MAC."

- In Paragraph 9 of the Complaint, Plaintiffs allege "McFadden violated the FHA (defined below), because McFadden personally implemented and enforced the Association's retaliatory conduct towards Plaintiffs."

- In Paragraph 20 of the Complaint, Plaintiffs allege "[t]his lawsuit is predicated upon Defendants' premeditated, diabolical actions of coercion, threats, and intimidation in order to ensure that David, and Megan, would be removed from their home, because David has a service dog named Zeus that the Association

previously approved to reside in the subject unit, and because Megan is African-American."

- In Paragraph 41 of the Complaint, Plaintiffs allege that "[a]s part of the move-in process, the Association required David to fill out a document entitled "SERVICE ANIMAL/EMOTIONAL SUPPPORT ANIMAL APPLICATION" (the "Service Animal Application"), as David has a service animal named Zeus, and was requesting a reasonable accommodation so that Zeus could reside in the Unit."

- In Paragraph 42 of the Complaint, Plaintiffs allege that "David filled out the Service Animal Application, and provided it to McFadden on three (3) separate occasions, but McFadden only confirmed receipt of it once, on January 11, 2021."

- In Paragraph 43 of the Complaint, Plaintiffs allege "[i]n connection with Zeus' approval to reside in the Unit, at McFadden's request, on January 8, 2021, David sent McFadden an email attaching Zeus' registration identification (the "Zeus Registration Email")."

- In Paragraph 44 of the Complaint, Plaintiffs allege "[a]lso, in connection with Zeus' approval to reside in the Unit, at McFadden's request, on January 8, 2021, David sent McFadden an email attaching Zeus' vaccination records (the "Zeus Vaccination Email")."

- In Paragraph 45 of the Complaint, Plaintiffs allege "[o]n January 15, 2021, David received a phone call from McFadden during which she advised him that David, Megan, and Zeus were conditionally approved, pending an interview with a Board member, which was scheduled to occur on January 19, 2021."

- In Paragraph 50 of the Complaint, Plaintiffs allege "[o]n January 19, 2021, Lepselter, [the Unit owner's] real estate agent, emailed McFadden inquiring as to whether the Association would issue an approval letter with respect to David's rental of the Unit."

- In Paragraph 51 of the Complaint, Plaintiffs allege, "McFadden responded to Lepselter advising that the Association 'does not issue approval letters' but that she can send Lepselter a Certificate of Approval the following day."

- In Paragraph 65 of the Complaint, Plaintiffs allege "[o]n February 13, 2021, McFadden emailed Manzo about the alleged vomiting incident, and stated that David "lied about the service animal he has in your unit, which is a Doberman puppy, larger than the building and has everyone frightened."

- In Paragraph 66 of the Complaint, Plaintiffs allege "o]n February 13, 2021, Manzo responded to McFadden, and reminded her 'that the lawyer for the Association vetted them. Based on the fact that only service animals would be approved . . . . his animal is legitimate . . . no?"

- In Paragraph 67 of the Complaint, Plaintiffs allege "[r]emarkably, McFadden, doing the Defendants' bidding, was attempting to intimidate Manzo into getting rid of David, Megan, and Zeus, because Zeus was a Dobermann, a fact that was disclosed to the Association, Rosati, and McFadden, in the Service Animal Application, the identification pictures, and the vaccination records, that David provided to McFadden, and in the interview with Rosati."

-  In Paragraph 68 of the Complaint, Plaintiffs allege "McFadden, and the Association's, harassment continued."

7

- In Paragraph 69 of the Complaint, Plaintiffs allege "[o]n February 18, 2021, McFadden emailed David lying, and asserting that Zeus was barking non-stop, when he was not."

- In Paragraph 79 of the Complaint, Plaintiffs allege "[t]he harassment continued. The Defendants were fabricating arguments against David, and Zeus, a protected service animal, while ignoring the fact that the barking was emanating from a unit on the same floor as the Unit that is owned by Laurie Marchel ("Marchel"), a member of the Board, and the Vice President of the Association."

- In Paragraph 80 of the Complaint, Plaintiffs allege "[s]ignificantly, while McFadden, and the Association, harassed David about his service animal, they flouted the Association's governing documents with respect to Marchel, as the Vice President of the Association has 2 dogs living in her unit, in violation of the Association's governing documents."

- In Paragraph 81 of the Complaint, Plaintiffs allege "David responded to multiple emails from McFadden regarding allegations that Zeus was barking providing video evidence proving that the barking was actually coming from Marchel's 2 dogs."

- In Paragraph 82 of the Complaint, Plaintiffs allege "[o]n June 22, 2021, David email McFadden providing her a video of, among other things, multiple dogs barking in Marche's unit."

- In Paragraph 90 of the Complaint, Plaintiffs allege "[w]hile David was waiting for the police to arrive in the Building, he, and others, heard McFadden excoriating

    Davis for showing David the video footage, yelling "[w]e are fucked Todd . . . how did he get that video? We are trying to get him out!"

- In Paragraph 90 of the Complaint, Plantiffs allege "[o]n July 20, 2021, Ms. Burnett sent a letter (the "Second Burnett Letter"), addressed to undersigned counsel, as counsel for David, and to Megan, Gelber, Lepsetter, and Manzo, among others, in which Ms. Burnett alleged that a purported lease agreement (the "Forged Lease") was sent to McFadden on July 8, 2021, by an unidentified individual, that contains a forged document purporting to be page 2 of David, and 303's lease."

- In Paragraph 91 of the Complaint, Plaintiffs allege "[t]he Forged Lease was not a part of the Lease, and was not prepared by Manzo, Lepselter, Gelber, or Manzo."

- In Paragraph 92 of the Complaint, Plaintiffs allege that the Forged Lease "was prepared by, or at the behest of, one, or more, of the Defendants, in an attempt to get rid of David, Megan, and Zeus."

- In Paragraph 97 of the Complaint, Plaintiffs allege "[t]he Amended Complaint is replete with lies, and based upon a document that was created by, or at the best of, one or more of the Defendants."

- In Paragraph 100 of the Complaint, Plaintiffs allege "[t]he lengths to which the Defendants have gone to retaliate against David, and Megan, shocks the conscience."

The attribution of the aforementioned conduct on the Defendants clearly puts them on notice of what claims are asserted against them.

While in the three (3) counts asserted in the Complaint Plaintiffs use the word "Defendants" in the collective, they repeat and reallege all of the "FACTS COMMON TO ALL

9

COUNTS," which, as established above, put Defendants on notice of the conduct that gives rise to the causes of action. Regardless, as demonstrated above, both attributing acts to multiple defendants, and asserting single counts against multiple defendants, as is done in the Complaint, does not constitute a shotgun pleading.

Consequently, Plaintiffs satisfy Rule 8, and the Motion to Dismiss should be denied.

In the Motion to Dismiss, McFadden, and MAC, assert that the Complaint violates Rule 10(b), and state what the rule requires, but do not assert how Plaintiffs violated Rule 10(b). To the extent this paragraph was not included in error, Plaintiffs submit the Complaint clearly satisfies Rule 10(b)

## C. Plaintiffs State A Cause of Action for Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under Florida law, a complaint must allege: (1) the defendant acted recklessly or intentionally; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff's emotional distress; and (4) the plaintiff's emotional distress was severe. *See Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985).

Conduct is outrageous where "it is so extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized community." *Clemente v. Horne*, 707 So. 2d 865, 867 (Fla. Dist. Ct. App. 1998) (quoting Restatement (Second) of Torts § 46 cmt. d) (internal quotation marks omitted). A cause of action for intentional infliction of emotional distress exists where "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Clemente*, 707 So. 2d at 867 (quoting Restatement (Second) of Torts § 46 cmt. d) (internal quotation marks omitted)

Where, as is the case here, a plaintiff alleges "a pervasive pattern of constant harassment on the part of Defendants[,]" a motion to dismiss for failure to state a claim for intentional infliction of emotional distress should be denied. *Albert v. National Cash Register Co.*, 874 F.Supp 1328, 1331 (S.D. Fla 1994). Indeed, at the motion to dismiss stage, "the record is insufficiently developed to determine whether Defendants' alleged conducted amounted to extremely outrageous behavior such that Plaintiff could recover under the tort of intentional infliction of emotional distress." *Id.* (denying motion to dismiss intentional infliction of emotion distress claim because "[w]ithout the benefit of Defendants' Answers and in the absence of any record evidence, determining as a matter of law whether Defendants' alleged conduct is actionable for intentional infliction of emotional distress would be mature").

A motion to dismiss an intentional infliction of emotional distress claim should be denied where "it does not appear beyond doubt that [a] Plaintiff will be able to sustain her claim." *Martin v. Monarch Life Ins. Co.*, 1995 WL 127157 (M.D. Fla. 1995).

McFadden, and MAC, falsely allege that Plaintiffs attribute no specific conduct to McFadden, and thereby MAC. That could not be farther from the truth. The Complaint walks the Court, and the parties, through the multiple, premeditated, pervasive actions of both MAC, and McFadden, who manage the Association. Plaintiffs respectfully refer the Court to Section B of their Legal Argument for a complete description of the deplorable acts of retaliation committed against Plaintiffs, because Megan is African-American, and because David was granted a reasonable accommodation to have Zeus reside in the Unit as a service animal. These include, *inter alia*, (i) McFadden attempting to intimidate the Unit's owner into evicting David, Megan, and Zeus, for Zeus residing in the Unit when McFadden herself approved, or was intimately involved in the approval of, Zeus' occupancy as a reasonable accommodation; (ii) causing the Association's attorney to harass David, and Megan, and eventually file a lawsuit against them

because she lied about the Forged Lease being a part of the subject lease of the Unit that she received; (iii) fabricating non-existent violations of non-existent rules and regulations in an effort to get rid of David, and Megan; and (iv) engaging is a systematic, pervasive, premeditated plot of relentless harassment in an effort to kick David, Megan, and Zeus, out of the Unit.

Apparently, according to the McFadden, and MAC, participating in the fabrication of, or fabricating, a document filed with a court upon which a lawsuit is based to evict an individual because she is African-American, and an individual because he has an approved service animal and engaging in systematic, pervasive harassment of Plaintiffs for ten (10) months, is not so extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized community, and would not cause someone reading the sad tragedy to exclaim "Outrageous!"

Clearly, the MAC's, and the Association's, conduct would cause someone reading the Complaint to exclaim "outrageous!"

Consequently, the Complaint states a cause of action for intentional infliction of emotional distress.

## **CONCLUSION**

WHEREFORE, Plaintiffs respectfully request this Court enter an Order denying the Motion to Dismiss, and granting such other and further relief as this Court deems necessary and appropriate.

Dated: November 19, 2021

Respectfully submitted,

LUBLINER LAW PLLC
1645 Palm Beach Lakes Boulevard, Suite 1200
West Palm Beach, Florida 33401
Telephone: (561) 207-2018
Facsimile: (561) 584-7227
rich@lubliner-law.com
carolina@lubliner-law.com

BY:   */s/ Richard S. Lubliner*
      RICHARD S. LUBLINER, ESQ.
      FBN: 0047741