**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO.: 9:21-CV-81565-DMM**

WILLIAM DAVID WILCOX JR. a/k/a
DAVID WILCOX, an individual, and
MEGAN DANIELLE LUCHEY, and
individual,

       Plaintiffs,

v.

LA PENSEE CONDOMINIUM
ASSOCIATION, INC., a Florida Not-For-
Profit Corporation, MARY MCFADDEN, an
individual, MAC RESIDENTIAL
MANAGEMENT SERVICES, LLC, A
Florida Limited Liability Company, and
DAVID WOLFF a/k/a DAVID WOLF, an
individual,

       Defendants.

_____/

**DEFENDANTS MARY MCFADDEN AND MAC RESIDENTIAL MANAGEMENT**
**SERVICES, LLC'S MOTION TO COMPEL PRODUCTION**
**OF PSYCHOLOGICAL AND MEDICAL RECORDS**

       Defendants, MARY MCFADDEN ("McFadden") and MAC RESIDENTIAL

MANAGEMENT SERVICES, LLC ("MAC," and together with McFadden, collectively "MAC

Defendants"), by and through undersigned counsel, hereby moves to compel Plaintiffs, WILLIAM

DAVID WILCOX JR. a/k/a DAVID WILCOX, and MEGAN DANIELLE LUCHEY, to produce

psychological and medical records, and state as follows:

**BACKGROUND**

       Plaintiffs filed their Complaint on September 3, 2021, alleging (1) retaliation in violation

of the Fair Housing Act ("FHA"); (2) interference, coercion, or intimidation in violation of §

760.37 of the Florida Statutes; and (3) intentional infliction of emotional distress[1]. These allegations stem from Plaintiffs' assertion that they were being discriminated against by Defendant LA PENSEE CONDOMINIUM ASSOCIATION ("Association"), its board members (including Defendant DAVID WOLF), and the Association's property manager, MAC (owned by McFadden), because of Plaintiff Luchey's race and Plaintiff Wilcox's service dog.  Other than attorney's fees, they have stated in interrogatory answers dated March 25, 2022, that their damages are solely "severe emotional distress."

On March 30, 2022, MAC Defendants served Plaintiffs with a second request for production. In pertinent part, MAC Defendants made the following requests related to medical and psychological records:

> 2. Copies of any and all medical records, hospital records, emergency room records and records from any health care provider, including psychologists, psychiatrists, and/or mental health counsellors, pertaining to your treatment(s) for any reason since 2020 associated with the claims in this litigation.

> 3. Copies of any and all medical records, hospital records, emergency room records and records from any health care provider, including psychologists, psychiatrists, and/or mental health counsellors, pertaining to any physical or mental health treatment for the past five (5) years.

> 4. Copies of any and all medical bills and/or statements for services rendered, paid or unpaid, for treatments associated with the claims in this litigation.

*See* Exhs. A and B, MAC Defendants' Second RFP to Plaintiffs Luchey and Wilcox, ¶¶2-4.

On May 18, 2022, Plaintiffs objected to these requests:

> 2. **RESPONSE:** Responsive documents *will be produced upon the entry of an appropriate confidentiality order*.

> 3. **RESPONSE:** [Plaintiff] objects to this Document Request, as such is not relevant to any party's claim or defense and proportional needs of the case. Additionally, the Document Request is unduly burdensome, as it would

---

[1] The Court has dismissed the intentional infliction of emotional distress claim with leave to amend.

require [Plaintiff] to obtain medical records for five (5) years regarding treatment unrelated to this litigation.

4. **RESPONSE:** Responsive documents *will be produced upon the entry of an appropriate confidentiality order*.

*See* Exs. C and D, Luchey's and Wilcox's Responses to MAC Defendants' Second RFP Document Requests, ¶¶2-4 (emphasis added).

Defendants realized that, based on these objections, a confidentiality order would be required. After a fair bit of prodding, Plaintiffs' former counsel agreed to the language of a confidentiality order and an agreed joint motion regarding same, which were filed with this Court. [D.E. 76, 76-1]. On June 22, 2022, The Court granted the Motion in part. [D.E. 80]. The same day, undersigned counsel had a zoom call with Plaintiffs' counsel (among others) discussing the objections listed above and the need for psychological and medical records in a case where the sole actual damages are emotional distress damages. No resolution was reached.

On June 23, 2022, MAC's undersigned counsel emailed Plaintiffs' former counsel at least seeking for them to produce the records they agreed to produce once a confidentiality order was in place. See the email string attached hereto as Exhibit E (with hightail link disabled).[2] That email string requested that Plaintiffs each execute a HIPAA release, which were embedded in a hightail link,[3] which releases are attached hereto with the social security numbers, dates of birth redacted. The releases authorized the release of:

Any and all medical records, hospital records, emergency room records, and records from any health care provider, including psychologists, psychiatrists, and/or mental health counselors, pertaining to any physical or mental health treatment. . .since 3/30/2017 to present date.

---

[2] The Sheriff's office reports that Plaintiff Wilcox contacted Hightail directly and had the Hightail link disabled. Hence it is unnecessary to redact the link in the email which is Exhibit E.

[3] The email had been sent earlier with the releases as attachments but were blocked by undersigned counsel's firms filter due to the presence of Social Security Numbers. Hence, the need for the hightail link.

Exhs. F and G, Authorizations for Medical Records Directed to Luchey and Wilcox.

As the Court can see from Exhibit E, on June 23, 2022, Plaintiffs' former counsel refused to have Plaintiffs execute the releases.

Not only did Plaintiffs decline to execute the releases or provide any psychological or medical records, undersigned counsel was informed by a detective that Plaintiff Wilcox made a 911 call and report to the Palm Beach Sheriff's Office (Incident ID 202200581993), wherein he frivolously claimed that undersigned counsel was, in the emails attached hereto as Exhibit E, attempting to "extort" them and engage in "identity theft."

Less than 24 hours later, Plaintiffs' counsel moved to withdraw from representing these Plaintiffs [D.E. 82], which this Court immediately granted.

For the reasons explained below, Plaintiffs' objections should be overruled and Plaintiffs should be compelled to produce these records and to sign the releases attached hereto.

## **ARGUMENT**

### **A. Plaintiffs' Medical Records and Psychological Records Are Relevant and Discoverable**

Federal Rule of Civil Procedure 26(b)(1) defines the scope of discovery as the following:

> [A]ny non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering the importance of the issues at stake, the parties' relative access to relevant information, the parties' resources, the importance of the discovery, and whether the burden of the discovery outweighs the likely benefit.  It is well established that the courts must employ a liberal standard in keeping with the purpose of the discovery rules.

Fed. R. Civ. P. 26(b)(1). "The information sought need not be admissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* "Generally, in order to obtain psychiatric records, the party requesting the records must show that the plaintiff has placed her mental condition "in controversy" and there is "good cause" for

production of the records." *Ortiz-Carballo v. Ellspermann*, 5:08-CV-165-OC-10GRJ, 2009 WL 961131, at *2 (M.D. Fla. Apr. 7, 2009); *see also Ali v. Wang Laboratories. Inc.*, 162 F.R.D. 165, 168 (M.D. Fla. 1995) (allegation of severe and permanent psychological damage sufficient to place mental condition in controversy).

Here, Plaintiffs have put their mental condition in controversy by filing claims related to threats, coercion, and intimidation, which relate to Plaintiffs' emotional states. Specifically, Plaintiffs allege that they were intimidated by (1) Defendant Wolf allegedly calling Luchey the "N" word; (2) lies related to Wilcox violating rules and regulations; (3) demands from Ms. Burnett regarding Zeus's status as a service animal; (4) intimidation of Ms. Manzo to evict Luchey and Wilcox; and (5) filing of the state court case.

More importantly, in their interrogatory answers attached hereto as Exhibits H and I, other than attorney's fees, the only damages they assert is emotional distress.  For example, they both identically state in response to interrogatory #4:

> At this juncture, I cannot quantify the exact amount of my damages, as they continue to accrue, but I reasonably believe them to be $1,525,000.00. My damages include attorneys' fees, and costs, incurred as a result of the Board's institution, and prosecution, of the different iterations of the frivolous state court complaint, ***as well as damages for the severe emotional distress I have suffered as a result of Defendants' diabolical actions and harassment. …***
>
> ***The damages were based upon the severe emotional distress, and suffering, Defendants' conduct has caused me,*** as well as the attorneys' fees that I have incurred thus far, and will continue to incur, in the frivolous state court action.

*See* Exhs. H and I, Luchey's and Wilcox's Responses to MAC Defendants' Second RFP Document Requests, ¶¶4, 4a. (emphasis added).

Additionally, during Luchey's deposition[4], she mentioned that she sees a psychologist named Christa Lyn Hansen. Luchey Depo. 168/19-21. Luchey also stated that Wilcox sees a psychologist overseas, and they see a couples' psychologist together. Luchey Depo. 180/3-8,19—181/2. Therefore, Defendants should be able to discover the impact of the alleged harassment on Luchey and Wilcox through Plaintiffs' medical and psychological records, both past and present.[5]

## <u>CERTIFICATE OF GOOD-FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a)(3)(B), I hereby certify that counsel for the movant has made reasonable efforts to confer with Plaintiffs' counsel[6] and all other affected counsel via zoom conference on June 22, 2022, and subsequently via email (Exh. E hereto), in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Wherefore, Defendants, MARY MCFADDEN and MAC RESIDENTIAL MANAGEMENT SERVICES, LLC, respectfully request this Court enter an order compelling Plaintiffs to produce psychological and medical records in their custody or control, and for that purpose, to execute the releases attached hereto.

Respectfully submitted,

s/*David B. Israel*
David B. Israel
Florida Bar No.: 0984078
disrael@israellawfl.com
Eric J. Israel
Florida Bar No.: 1003655
ejisrael@israellawfl.com
israellawfl@gmail.com
**ISRAEL, ISRAEL & ASSOCIATES, P.A.**
*Attorneys for Mary McFadden & MAC*

---

[4] Plaintiff Wilcox's medical condition has repeatedly been used as an excuse to block his deposition, despite diligent efforts of Defendants. This is the subject of a separate motion to compel.

[5] One of the reasons these materials are needed is that expert psychologist, Dr. Jerome Poliacoff, who has been hired by MAC Defendants, needs them to complete the forming of his opinions.

[6] Plaintiffs' counsel has since withdrawn from the case and Plaintiffs are currently *pro se*.

*Residential Management Services, LLC*
6099 Stirling Road | Suite 211
Davie | FL 33314

*/s/ Michael D. Starks*
ANDREW KEMP-GERSTEL
Florida Bar No. 0044332
akg@lgplaw.com
MICHAEL D. STARKS
Florida Bar No. 0086584
mds2@lgplaw.com
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of June 2022, a true and correct copy of the foregoing has been forwarded via Email delivery or mail delivery to all counsel of record or pro se parties of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or by email for those parties who are not authorized to receive electronically Notices of Electronic filing in this action.

David Wilcox, *Pro se*
wdavidwilcox@gmail.com

Megan Luchey, *Pro se*
meganluchey1@gmail.com

*/s/ Michael D. Starks*
MICHAEL D. STARKS
Florida Bar No. 0086584
mds2@lgplaw.com

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:21-CV-81565-DMM

WILLIAM DAVID WILCOX JR. a/k/a
DAVID WILCOX, an individual, and
MEGAN DANIELLE LUCHEY, and
individual,

       Plaintiffs,

v.

LA       PENSEE       CONDOMINIUM
ASSOCIATION, INC., a Florida Not-For-
Profit Corporation, MARY MCFADDEN, an
individual,       MAC       RESIDENTIAL
MANAGEMENT   SERVICES,   LLC,   A
Florida Limited Liability Company, and
DAVID WOLFF a/k/a DAVID WOLF, an
individual,

       Defendants.

_____/

## DEFENDANTS MARY MCFADDEN AND MAC RESIDENTIAL MANAGEMENT SERVICES, LLC'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF MEGAN DANIELLE LUCHEY

Defendants Mary McFadden ("Defendant McFadden") and MAC Residential Management

Services, LLC ("Defendant MAC") (collectively referred to as "Defendants"), by and through their

undersigned counsel, in accordance with Rule 34 of the Federal Rules of Civil Procedure and Rule

26.1 of the Local Rules of the United States District Court for the Southern District of Florida,

hereby serve their Second Request for Production of Documents to Plaintiff Megan Danielle

Luchey (referred to herein as "Plaintiff").  Plaintiff shall produce the following documents at Israel,

Israel & Associates, P.A., 6099 Stirling Road, Suite 211, Davie, FL 33314, within 30 days as prescribed by the aforementioned Rule, and permit Defendants and their attorneys to inspect them and copy such as they may desire.

## **INSTRUCTIONS**

You shall specify which documents are produced in response to each of the numbered paragraphs. If any document herein requested was formerly in the possession, custody or control of Plaintiff and has been lost or destroyed, Plaintiff is requested to submit in lieu of each document a written statement which:

1. Describes in detail the nature of the document and its contents;
2. Identifies the person who prepared or authored the document and, if applicable, the person(s) to whom the document was sent;
3. Specifies the date on which the document was prepared or transmitted or both; and
4. Specifies, if possible, the date on which the document was lost or destroyed and, if destroyed, the conditions of, or reasons for, such destruction and the persons requesting and performing the destruction.

If any documents otherwise required to be produced by this request are withheld, Plaintiff shall identify the document by stating its date, author, recipients and the reason for withholding.

This Second Request for Production of Documents is continuing in nature and any document located subsequent to production which would have been produced had it been available or its existence known at the time is to be supplied forthwith.

This Second Request for Production of Documents encompasses periods of time beginning with the first contact between Plaintiff and Defendants through the present.

## **DEFINITIONS**

As used herein:

1.      "Contract" shall mean any agreement entered into with any party to this litigation.

2.      "Document" means any documents in your custody, possession or control, including, but not limited to, any printed, written, recorded, taped, electronic, text messages, email communications, graphic or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original, all amendments and addenda and any nonidentical copy (whether different from the original because of notes made on or attached to such copy or otherwise) of any and all writing, correspondence, letters, text messages, email communications, telegrams, telex communications, cables, notes, notations, papers, newsletters, memoranda, interoffice communication releases, agreements, contracts, licenses, permits, permit applications, agreements, ledgers, books of account, computer printouts and other computer materials, transcripts, analyses, proposals, suggestions, legal pleadings, bills of sale, security agreements, legal documents, vouchers, records of interbank transfers of funds, bank checks, cashier's checks, invoices, drafts, notebooks, calendars, appointment books, diaries, agendas, time sheets, logs, bids, job or transaction files, credit reports, notations, notes, sound records of any type, minutes of directors' or other meetings, phono records or tape recordings of other data compilations from which information can be obtained, any transcriptions thereof, bulletins, circulars, press releases, notices, instructions, advertisements, work assignments, motion picture films, videotapes, research or other articles and treatises, including all attachments thereto.

3.      "Plaintiff" shall mean Megan Danielle Luchey and her related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and

all other persons acting or purporting to act on his behalf.

4.      "Wilcox" shall mean William David Wilcox, Jr. a/k/a David Wilcox and his related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on his behalf.

5.      "Defendant McFadden" shall mean Mary McFadden and her related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on her behalf.

6.      "Defendant MAC" shall mean MAC Residential Management Services, LLC and its related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on its behalf.

7.      The "Association" shall mean La Pensee Condominium Association, Inc. and its related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on its behalf.

8.      "Manzo" shall mean Valerie S. Manzo and her related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on her behalf, including, but not limited to La Pensee 303, LLC and Tom De Marinis.

9.      "Gelber" shall mean Roy Gelber and his related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on his behalf, including, but not limited to Value Realty Associates.

10.     "Lepselter" shall mean Ed Lepselter and his related or affiliated organizations, and

their officers, directors, employees, consultants, representatives and agents, and all other persons

acting or purporting to act on his behalf, including, but not limited to ReMax Advantage Plus.

11.     "Unit Owners" shall mean any owner of a unit or member at La Pensee

Condominium Association, Inc.

## DOCUMENT REQUESTS

1.     Copies of all notices, complaints and filings of any pre-suit administrative proceedings filed with any governmental agency, including but not limited to Housing and Urban Development ("HUD"), any local agency associated with HUD and/or the Florida Commission on Human Relations or any local agency associated with the Florida Commission on Human Relations associated with the claims in this litigation.

2.     Copies of any and all medical records, hospital records, emergency room records and records from any health care provider, including psychologists, psychiatrists, and/or mental health counsellors, pertaining to your treatment(s) for any reason since 2020 associated with the claims in this litigation.

3.     Copies of any and all medical records, hospital records, emergency room records and records from any health care provider, including psychologists, psychiatrists, and/or mental health counsellors, pertaining to any psychical or mental health treatment for the past five (5) years.

4.     Copies of any and all medical bills and/or statements for services rendered, paid or unpaid, for treatments associated with the claims in this litigation.

5.     Copies of any and all bills, statements or receipts relating to any non-medical expenses claimed as damages in this lawsuit which have not been produced in response to any of the preceding requests in this request or in the First Request for Production of Documents.

6.     Any and all statements, including but not limited to, recorded telephone interviews, tapes, written statements, whether signed or unsigned, of all witnesses to the incidents relative to the subject matter of this action and/or witnesses having knowledge regarding any and all facts and issues in the instant litigation not previously disclosed in any of the preceding requests or in the First Request for Production of Documents.

7.     Any photographs, blow ups, recordings, charts, graphs, sketches and any other tangible items or documentary evidence which you intend to use during trial of this cause, and which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

8.     All statements, including, but not limited to, recorded telephone interviews, tapes, written statements, signed or unsigned of the Plaintiff or any of her agents, servants or employees relative to the claims in this action and any other issue which involves the instant litigation which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

9.     Any and all police reports and/or homicide reports related to incidents referenced in the instant litigation which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

10.    All documents, papers or evidence of losses/damages to be introduced at trial in this action which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

11.    All expert reports from any experts who will testify at trial regarding any issue of liability in this action which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

12.    All expert reports from any experts who will testify at trial regarding any issue of damages in this action which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

13.    Any and all documents pertaining to the certification or training of the dog named "Zeus," as a service animal.

14.    Any and all documents showing who purchased or adopted the dog named "Zeus," the date of purchase or adoption, and whether "Zeus" was originally purchased for the purpose of being a "service animal," as alleged in Plaintiffs' Complaint.

15.    Any and all documents pertaining to, or concerning, the dog named "Zeus".

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been forwarded via

Email delivery to All Counsel/Parties in this action on this 30th day of March 2022.

Respectfully submitted,

**ISRAEL, ISRAEL & ASSOCIATES, P.A.**
Attorneys for Defendants Mary McFadden and MAC
Residential Management Services, LLC
6099 Stirling Road | Suite 211
Davie | FL 33314

Telephone:     (954) 495-8602
Facsimile:     (954) 495-4770
www.israellawfl.com


By:     s/*David B. Israel*
        David B. Israel, Esq.
        Florida Bar No.: 0984078
        disrael@israellawfl.com
        Eric J. Israel, Esq.
        Florida Bar No.: 1003655
        ejisrael@israellawfl.com
        israellawfl@gmail.com

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:21-CV-81565-DMM

WILLIAM DAVID WILCOX JR. a/k/a
DAVID WILCOX, an individual, and
MEGAN DANIELLE LUCHEY, and
individual,

       Plaintiffs,

v.

LA PENSEE CONDOMINIUM
ASSOCIATION, INC., a Florida Not-For-
Profit Corporation, MARY MCFADDEN, an
individual, MAC RESIDENTIAL
MANAGEMENT SERVICES, LLC, A
Florida Limited Liability Company, and
DAVID WOLFF a/k/a DAVID WOLF, an
individual,

       Defendants.

_____/

## DEFENDANTS MARY MCFADDEN AND MAC RESIDENTIAL MANAGEMENT SERVICES, LLC'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF WILLIAM DAVID WILCOX JR. A/K/A DAVID WILCOX

Defendants Mary McFadden ("Defendant McFadden") and MAC Residential Management

Services, LLC ("Defendant MAC") (collectively referred to as "Defendants"), by and through their

undersigned counsel, in accordance with Rule 34 of the Federal Rules of Civil Procedure and Rule

26.1 of the Local Rules of the United States District Court for the Southern District of Florida,

hereby serve their Second Request for Production of Documents to Plaintiff William David Wilcox

Jr. a/k/a David Wilcox (referred to herein as "Plaintiff").  Plaintiff shall produce the following

documents at Israel, Israel & Associates, P.A., 6099 Stirling Road, Suite 211, Davie, FL 33314, within 30 days as prescribed by the aforementioned Rule, and permit Defendants and their attorneys to inspect them and copy such as they may desire.

## INSTRUCTIONS

You shall specify which documents are produced in response to each of the numbered paragraphs.  If any document herein requested was formerly in the possession, custody or control of Plaintiff and has been lost or destroyed, Plaintiff is requested to submit in lieu of each document a written statement which:

1. Describes in detail the nature of the document and its contents;
2. Identifies the person who prepared or authored the document and, if applicable, the person(s) to whom the document was sent;
3. Specifies the date on which the document was prepared or transmitted or both; and
4. Specifies, if possible, the date on which the document was lost or destroyed and, if destroyed, the conditions of, or reasons for, such destruction and the persons requesting and performing the destruction.

If any documents otherwise required to be produced by this request are withheld, Plaintiff shall identify the document by stating its date, author, recipients and the reason for withholding.

This Second Request for Production of Documents is continuing in nature and any document located subsequent to production which would have been produced had it been available or its existence known at the time is to be supplied forthwith.

This Second Request for Production of Documents encompasses periods of time beginning with the first contact between Plaintiff and Defendants through the present.

## DEFINITIONS

As used herein:

1.      "Contract" shall mean any agreement entered into with any party to this litigation.

2.      "Document" means any documents in your custody, possession or control, including, but not limited to, any printed, written, recorded, taped, electronic, text messages, email communications, graphic or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original, all amendments and addenda and any nonidentical copy (whether different from the original because of notes made on or attached to such copy or otherwise) of any and all writing, correspondence, letters, text messages, email communications, telegrams, telex communications, cables, notes, notations, papers, newsletters, memoranda, interoffice communication releases, agreements, contracts, licenses, permits, permit applications, agreements, ledgers, books of account, computer printouts and other computer materials, transcripts, analyses, proposals, suggestions, legal pleadings, bills of sale, security agreements, legal documents, vouchers, records of interbank transfers of funds, bank checks, cashier's checks, invoices, drafts, notebooks, calendars, appointment books, diaries, agendas, time sheets, logs, bids, job or transaction files, credit reports, notations, notes, sound records of any type, minutes of directors' or other meetings, phono records or tape recordings of other data compilations from which information can be obtained, any transcriptions thereof, bulletins, circulars, press releases, notices, instructions, advertisements, work assignments, motion picture films, videotapes, research or other articles and treatises, including all attachments thereto.

3.      "Plaintiff" shall mean William David Wilcox Jr. a/k/a David Wilcox and his related or affiliated organizations, and their officers, directors, employees, consultants, representatives

and agents, and all other persons acting or purporting to act on his behalf.

4.      "Luchey" shall mean Megan Danielle Luchey and her related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on her behalf.

5.      "Defendant McFadden" shall mean Mary McFadden and her related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on her behalf.

6.      "Defendant MAC" shall mean MAC Residential Management Services, LLC and its related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on its behalf.

7.      The "Association" shall mean La Pensee Condominium Association, Inc. and its related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on its behalf.

8.      "Manzo" shall mean Valerie S. Manzo and her related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on her behalf, including, but not limited to La Pensee 303, LLC and Tom De Marinis.

9.      "Gelber" shall mean Roy Gelber and his related or affiliated organizations, and their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on his behalf, including, but not limited to Value Realty Associates.

10.     "Lepselter" shall mean Ed Lepselter and his related or affiliated organizations, and

their officers, directors, employees, consultants, representatives and agents, and all other persons acting or purporting to act on his behalf, including, but not limited to ReMax Advantage Plus.

11.     "Unit Owners" shall mean any owner of a unit or member at La Pensee Condominium Association, Inc.

## DOCUMENT REQUESTS

1.     Copies of all notices, complaints and filings of any pre-suit administrative proceedings filed with any governmental agency, including but not limited to Housing and Urban Development ("HUD"), any local agency associated with HUD and/or the Florida Commission on Human Relations or any local agency associated with the Florida Commission on Human Relations associated with the claims in this litigation.

2.     Copies of any and all medical records, hospital records, emergency room records and records from any health care provider, including psychologists, psychiatrists, and/or mental health counsellors, pertaining to your treatment(s) for any reason since 2020 associated with the claims in this litigation.

3.     Copies of any and all medical records, hospital records, emergency room records and records from any health care provider, including psychologists, psychiatrists, and/or mental health counsellors, pertaining to any psychical or mental health treatment for the past five (5) years.

4.     Copies of any and all medical bills and/or statements for services rendered, paid or unpaid, for treatments associated with the claims in this litigation.

5.     Copies of any and all bills, statements or receipts relating to any non-medical expenses claimed as damages in this lawsuit which have not been produced in response to any of the preceding requests in this request or in the First Request for Production of Documents.

6.     Any and all statements, including but not limited to, recorded telephone interviews, tapes, written statements, whether signed or unsigned, of all witnesses to the incidents relative to the subject matter of this action and/or witnesses having knowledge regarding any and all facts and issues in the instant litigation not previously disclosed in any of the preceding requests or in the First Request for Production of Documents.

7.     Any photographs, blow ups, recordings, charts, graphs, sketches and any other tangible items or documentary evidence which you intend to use during trial of this cause, and which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

8.      All statements, including, but not limited to, recorded telephone interviews, tapes, written statements, signed or unsigned of the Plaintiff or any of her agents, servants or employees relative to the claims in this action and any other issue which involves the instant litigation which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

9.      Any and all police reports and/or homicide reports related to incidents referenced in the instant litigation which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

10.     All documents, papers or evidence of losses/damages to be introduced at trial in this action which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

11.     All expert reports from any experts who will testify at trial regarding any issue of liability in this action which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

12.     All expert reports from any experts who will testify at trial regarding any issue of damages in this action which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

13.     Any and all documents pertaining to the certification or training of the dog named "Zeus," as a service animal.

14.     Any and all documents showing who purchased or adopted the dog named "Zeus," the date of purchase or adoption, and whether "Zeus" was originally purchased for the purpose of being a "service animal," as alleged in Plaintiffs' Complaint.

15.     Any and all documents pertaining to, or concerning, the dog named "Zeus".

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been forwarded via

Email delivery to All Counsel/Parties in this action on this 30th day of March 2022.

Respectfully submitted,

**ISRAEL, ISRAEL & ASSOCIATES, P.A.**
Attorneys for Defendants Mary McFadden and MAC
Residential Management Services, LLC
6099 Stirling Road | Suite 211
Davie | FL 33314

Telephone:     (954) 495-8602
Facsimile:     (954) 495-4770
www.israellawfl.com


By:     s/*David B. Israel*
         David B. Israel, Esq.
         Florida Bar No.: 0984078
         disrael@israellawfl.com
         Eric J. Israel, Esq.
         Florida Bar No.: 1003655
         ejisrael@israellawfl.com
         israellawfl@gmail.com

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:21-CV-81565-DMM

WILLIAM DAVID WILCOX JR. a/k/a
DAVID WILCOX, an individual, and MEGAN
DANIELLE LUCHEY, an individual,

       Plaintiffs,

v.

LA PENSEE CONDOMINIUM ASSOCIATION, INC.,
a Florida Not-For- Profit Corporation,
MARY MCFADDEN, anindividual, MAC
RESIDENTIAL MANAGEMENT SERVICES, LLC,
A Florida Limited Liability Company, and
DAVID WOLFF a/k/a DAVID WOLF, an
individual,

       Defendants.

_____/

**PLAINTIFF, MEGAN LUCHEY'S RESPONSES AND OBJECTIONS TO DEFENDANTS MARY MCFADDEN AND MAC RESIDENTIAL MANAGEMENT SERVICES, LLC'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF**

       Plaintiff, MEGAN LUCHEY ("Megan"), through undersigned counsel, hereby objects and responds to Defendants, MARY MCFADDEN and MAC RESIDENTIAL MANAGEMENT SERVICES, LLC'S, Second Request for Production of Documents to Plaintiff (the "Document Request"), and state as follows:

**GENERAL OBJECTIONS**

1.      Megan objects to the Document Request to the extent it seeks documents/information not in her possession, custody or control.

2.      Megan objects to the Document Request to the extent it seeks documents/information which are publicly or otherwise available and/or uniquely or equally available from third parties, including MARY MCFADDEN and MAC RESIDENTIAL MANAGEMENT SERVICES, LLC.

3.      Megan objects to the Document Request insofar as it seeks documents/information that do not specifically refer to the events which are the subject matter of this litigation.

4.      Megan objects to the Document Request to the extent it seeks documents/information prepared in anticipation of litigation, protected by the attorney-client privilege, the work-product privilege, and any other privilege, protection, or immunity applicable under the governing law.

5.      Megan objects to the Document Request to the extent it is overly broad, unduly burdensome, oppressive, and/or seek documents/information that are not relevant to the issues in this proceeding, or reasonably calculated to lead to the discovery of admissible evidence.

6.      Megan objects to the Document Request to the extent it contains any express or implied assumptions of fact or law concerning matters at issue in this litigation.

7.      Megan does not waive their right to object, on any and all grounds, to (1) the evidentiary use of the information contained in this Response; and (2) discovery requests relating to this Response.

8.      Megan is providing this Response based upon terms as they are commonly understood, and consistent with the Federal Rules Civil Procedure. Megan objects to, and will refrain from, extending or modifying any words employed in the Document Request to comport with expanded definitions or instructions.

9.      Megan submits its responses and objections without conceding the relevancy or materiality of the subject matter of any request or of any document, or that any responsive

materials exist.

10.     The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed a waiver of any applicable privilege with respect to such document (or the contents or subject matter thereof) or with respect to any such other document or discovery now or hereafter requested or provided.

11.     This Response has been prepared on the basis of information now known to Megan, and the objections and responses contained herein are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information requested. Megan's investigation, discovery, and preparation for this proceeding are continuing, and this Response is being provided without prejudice to Megan's right to introduce or object to the discovery of any documents, facts, or information discovered after the date hereof.

12.     Megan reserves the right to supplement/amend this Response.

## DOCUMENT REQUESTS

1.     Copies of all notices, complaints and filings of any pre-suit administrative proceedings filed with any governmental agency, including but not limited to Housing and Urban Development ("HUD"), any local agency associated with HUD and/or the Florida Commission on Human Relations or any local agency associated with the Florida Commission on Human Relations associated with the claims in this litigation.

        **RESPONSE:** No such documents exist.

2.     Copies of any and all medical records, hospital records, emergency room records and records from any health care provider, including psychologists, psychiatrists, and/or mental health

counsellors, pertaining to your treatment(s) for any reason since 2020 associated with the claims in this litigation.

     **RESPONSE:** Responsive documents will be produced upon the entry of an appropriate confidentiality order.

3.     Copies of any and all medical records, hospital records, emergency room records and records from any health care provider, including psychologists, psychiatrists, and/or mental health counsellors, pertaining to any psychical or mental health treatment for the past five (5) years.

     **RESPONSE:** Megan objects to this Document Request, as such is not relevant to any party's claim or defense and proportional needs of the case.  Additionally, the Document Request is unduly burdensome, as it would require Megan to obtain medical records for five (5) years regarding treatment unrelated to this litigation.

4.     Copies of any and all medical bills and/or statements for services rendered, paid or unpaid, for treatments associated with the claims in this litigation.

     **RESPONSE:**  Responsive documents will be produced upon the entry of an appropriate confidentiality order.

5.     Copies of any and all bills, statements or receipts relating to any non-medical expenses claimed as damages in this lawsuit which have not been produced in response to any of the preceding requests in this request or in the First Request for Production of Documents.

     **RESPONSE:** Megan objects to this Document Request as it would require her to produce privileged information including, but not limited to, bills for services rendered by Megan's counsel.

6.      Any and all statements, including but not limited to, recorded telephone interviews, tapes, written statements, whether signed or unsigned, of all witnesses to the incidents relative to the subject matter of this action and/or witnesses having knowledge regarding any and all facts and issues in the instant litigation not previously disclosed in any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** Responsive documents previously produced.

7.      Any photographs, blow ups, recordings, charts, graphs, sketches and any other tangible items or documentary evidence which you intend to use during trial of this cause, and which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** Megan objects to this Document Request as premature, and would require Megan to disclose privileged work-product information.   Megan will provide documents responsive to this Document Request in compliance with all Scheduling/Trial Orders entered by the Court.

8.      All statements, including, but not limited to, recorded telephone interviews, tapes, written statements, signed or unsigned of the Plaintiff or any of her agents, servants or employees relative to the claims in this action and any other issue which involves the instant litigation which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** Responsive documents previously produced, with the exception of the enclosed video.

9.      Any and all police reports and/or homicide reports related to incidents referenced in the instant litigation which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** No such documents exist.

10.     All documents, papers or evidence of losses/damages to be introduced at trial in this action which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** Megan objects to this Document Request as premature, and would require Megan to disclose privileged work-product information.   Megan will provide documents responsive to this Document Request in compliance with all Scheduling/Trial Orders entered by the Court.

11.     All expert reports from any experts who will testify at trial regarding any issue of liability in this action which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** No such documents exist.

12.     All expert reports from any experts who will testify at trial regarding any issue of damages in this action which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** No such documents exist.

13.     Any and all documents pertaining to the certification or training of the dog named "Zeus," as a service animal.

**RESPONSE:** Responsive documents are being produced contemporaneously herewith.

14.     Any and all documents showing who purchased or adopted the dog named "Zeus," the date of purchase or adoption, and whether "Zeus" was originally purchased for the purpose of being a "service animal," as alleged in Plaintiffs' Complaint.

RESPONSE:  Responsive documents are being produced contemporaneously herewith.

15.     Any and all documents pertaining to, or concerning, the dog named "Zeus".

RESPONSE: Megan objects to this Request on the grounds that it is overly broad, and unduly burdensome.  Megan also objects as there is no duration set forth in this Document Request.  Megan further objects to this Documents Request, as such is not relevant to any party's claim or defense and proportional needs of the case.  By way of example, the Document Request would cover an email regarding whether Zeus was laying down on the couch.

Dated: May 18, 2022                         Respectfully submitted,

                                            LUBLINER LAW, PLLC
                                            1645 Palm Beach Lakes Blvd., Suite 1200
                                            West Palm Beach, Florida 33401
                                            Telephone: (561) 207-2018
                                            Facsimile: (561) 584-7227
                                            rich@lubliner-law.com
                                            carolina@lubliner-law.com

                              BY:     /s/ Richard S. Lubliner
                                            RICHARD S. LUBLINER, ESQ.
                                            FBN: 0047741

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:21-CV-81565-DMM

WILLIAM DAVID WILCOX JR. a/k/a
DAVID WILCOX, an individual, and MEGAN
DANIELLE LUCHEY, an individual,

      Plaintiffs,

v.

LA PENSEE CONDOMINIUM ASSOCIATION, INC.,
a Florida Not-For- Profit Corporation,
MARY MCFADDEN, anindividual, MAC
RESIDENTIAL MANAGEMENT SERVICES, LLC,
A Florida Limited Liability Company, and
DAVID WOLFF a/k/a DAVID WOLF, an
individual,

      Defendants.
_____/

## PLAINTIFF, DAVID WILCOX'S RESPONSES AND OBJECTIONS TO DEFENDANTS MARY MCFADDEN AND MAC RESIDENTIAL MANAGEMENTSERVICES, LLC'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF

      Plaintiff, DAVID WILCOX ("David"), through undersigned counsel, hereby objects and

responds to Defendants, MARY MCFADDEN and MAC RESIDENTIAL MANAGEMENT

SERVICES, LLC'S Second Request for Production of Documents to Plaintiff (the "Document

Request"), and state as follows:

## GENERAL OBJECTIONS

1.      David objects to the Document Request to the extent it seeks documents/information not in

Plaintiff's possession, custody or control.

2.      David objects to the Document Request to the extent it seeks documents/information which are publicly or otherwise available and/or uniquely or equally available from third parties, including MARY MCFADDEN and MAC RESIDENTIAL MANAGEMENT SERVICES, LLC.

3.      David objects to the Document Request insofar as it seeks documents/information that do not specifically refer to the events which are the subject matter of this litigation.

4.      David objects to the Document Request to the extent it seeks documents/information prepared in anticipation of litigation, protected by the attorney-client privilege, the work-product privilege, and any other privilege, protection, or immunity applicable under the governing law.

5.      David objects to the Document Request to the extent it is overly broad, unduly burdensome, oppressive, and/or seek documents/information that are not relevant to the issues in this proceeding, or reasonably calculated to lead to the discovery of admissible evidence.

6.      David objects to the Document Request to the extent it contains any express or implied assumptions of fact or law concerning matters at issue in this litigation.

7.      David does not waive their right to object, on any and all grounds, to (1) the evidentiary use of the information contained in this Response; and (2) discovery requests relating to this Response.

8.      David is providing this Response based upon terms as they are commonly understood, and consistent with the Federal Rules of Civil Procedure. David objects to, and will refrain from, extending or modifying any words employed in the Document Request to comport with expanded definitions or instructions.

9.      David submits its responses and objections without conceding the relevancy or materiality of the subject matter of any request or of any document, or that any responsive materials exist.

10.     The inadvertent production or disclosure of any privileged documents or information shall

not constitute or be deemed a waiver of any applicable privilege with respect to such document (or the contents or subject matter thereof) or with respect to any such other document or discovery now or hereafter requested or provided.

11.     This Response has been prepared on the basis of information now known to David, and the objections and responses contained herein are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information requested. David's investigation, discovery, and preparation for this proceeding are continuing, and this Response is being provided without prejudice to David's right to introduce or object to the discovery of any documents, facts, or information discovered after the date hereof.

12.     David reserves the right to supplement/amend this Response.

## DOCUMENT REQUESTS

1.     Copies of all notices, complaints and filings of any pre-suit administrative proceedings filed with any governmental agency, including but not limited to Housing and Urban Development ("HUD"), any local agency associated with HUD and/or the Florida Commission on Human Relations or any local agency associated with the Florida Commission on Human Relations associated with the claims in this litigation.

        **RESPONSE:** No such documents exist.

2.     Copies of any and all medical records, hospital records, emergency room records and records from any health care provider, including psychologists, psychiatrists, and/or mental health counsellors, pertaining to your treatment(s) for any reason since 2020 associated with the claims in this litigation.

**RESPONSE:** Responsive documents will be produced upon the entry of an appropriate confidentiality order.

3.      Copies of any and all medical records, hospital records, emergency room records and records from any health care provider, including psychologists, psychiatrists, and/or mental health counsellors, pertaining to any psychical or mental health treatment for the past five (5) years.

**RESPONSE:** David objects to this Document Request, as such is not relevant to any party's claim or defense and proportional needs of the case.  Additionally, the Document Request is unduly burdensome, as it would require David to obtain medical records for five (5) years regarding treatment unrelated to this litigation

4.      Copies of any and all medical bills and/or statements for services rendered, paid or unpaid, for treatments associated with the claims in this litigation.

**RESPONSE:** Responsive documents will be produced upon the entry of an appropriate confidentiality order.

5.      Copies of any and all bills, statements or receipts relating to any non-medical expenses claimed as damages in this lawsuit which have not been produced in response to any of the preceding requests in this request or in the First Request for Production of Documents.

**RESPONSE:** David objects to this Document Request as it would require her to produce privileged information including, but not limited to, bills for services rendered by David's counsel.

6.      Any and all statements, including but not limited to, recorded telephone interviews, tapes, written statements, whether signed or unsigned, of all witnesses to the incidents relative to the subject matter of this action and/or witnesses having knowledge regarding any and all facts and issues in the

instant litigation not previously disclosed in any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** Responsive documents previously produced.

7.      Any photographs, blow ups, recordings, charts, graphs, sketches and any other tangible items or documentary evidence which you intend to use during trial of this cause, and which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** David objects to this Document Request as premature, and would require David to disclose privileged work-product information.  David will provide documents responsive to this Document Request in compliance with all Scheduling/Trial Orders entered by the Court.

8.      All statements, including, but not limited to, recorded telephone interviews, tapes, written statements, signed or unsigned of the Plaintiff or any of her agents, servants or employees relative to the claims in this action and any other issue which involves the instant litigation which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** Responsive documents previously produced, with the exception of the enclosed video.

9.      Any and all police reports and/or homicide reports related to incidents referenced in the instant litigation which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** No such documents exist.

10.     All documents, papers or evidence of losses/damages to be introduced at trial in this action which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** David objects to this Document Request as premature, and would require David to disclose privileged work-product information.  David will provide documents responsive to this Document Request in compliance with all Scheduling/Trial Orders entered by the Court.

11.     All expert reports from any experts who will testify at trial regarding any issue of liability in this action which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** No such documents exist.

12.     All expert reports from any experts who will testify at trial regarding any issue of damages in this action which have not been produced in response to any of the preceding requests or in the First Request for Production of Documents.

**RESPONSE:** No such documents exist.

13.     Any and all documents pertaining to the certification or training of the dog named "Zeus," as a service animal.

**RESPONSE:** Responsive documents are being produced contemporaneously herewith.

14.     Any and all documents showing who purchased or adopted the dog named "Zeus," the date of purchase or adoption, and whether "Zeus" was originally purchased for the purpose of being a "service animal," as alleged in Plaintiffs' Complaint.

**RESPONSE:**  Responsive documents are being produced contemporaneously herewith.

15.     Any and all documents pertaining to, or concerning, the dog named "Zeus".

**RESPONSE:** David objects to this Request on the grounds that it is overly broad, and unduly burdensome.  David also objects as there is no duration set forth in this Document Request.  David further objects to this Documents Request, as such is not relevant to any party's claim or defense and proportional needs of the case.  By way of example, the Document Request would cover an email regarding whether Zeus was laying down on the couch.

Dated: May 18, 2022.                            Respectfully submitted,

                                                LUBLINER LAW, PLLC
                                                1645 Palm Beach Lakes Blvd., Suite 1200
                                                West Palm Beach, Florida 33401
                                                Telephone: (561) 207-2018
                                                Facsimile: (561) 584-7227
                                                rich@lubliner-law.com
                                                carolina@lubliner-law.com

                                BY:     /s/ Richard S. Lubliner
                                         RICHARD S. LUBLINER, ESQ.
                                         FBN: 0047741

1.          All non-privileged papers, documents, and/or any writing which support or contradict the positions taken in paragraph no. 91 of Plaintiff's Complaint.

**RESPONSE:** Responsive documents previously produced.

2.          All non-privileged papers, documents, and/or any writing which support or contradict the positions taken in paragraph no. 92 of Plaintiff's Complaint.

**RESPONSE:** Responsive documents previously produced.

3.          All non-privileged papers, documents, and/or any writing which support or contradict the positions taken in paragraph no. 96 of Plaintiff's Complaint.

**RESPONSE:** Responsive documents previously produced.

4.          All non-privileged papers, documents, and/or any writing which support or contradict the positions taken in paragraph no. 97 of Plaintiff's Complaint.

**RESPONSE:** Responsive documents previously produced.

5.          All non-privileged papers, documents, and/or any writing which support or contradict the positions taken in paragraph no. 99 of Plaintiff's Complaint.

**RESPONSE:** Responsive documents previously produced.

6.          All non-privileged papers, documents, and/or any writing which support or contradict the positions taken in paragraph no. 107 of Plaintiff's Complaint.

**RESPONSE:** Responsive documents previously produced.

7.          All non-privileged papers, documents, and/or any writing which support or contradict the positions taken in paragraph no. 108 of Plaintiff's Complaint.

**RESPONSE:** Responsive documents previously produced.

8.          All non-privileged papers, documents, and/or any writing which support or contradict the positions taken in paragraph no. 113 of Plaintiff's Complaint.

**RESPONSE:** Responsive documents previously produced.

9.          All non-privileged papers, documents, and/or any writing which support or contradict the positions taken in paragraph no. 114 of Plaintiff's Complaint.

**RESPONSE:** Responsive documents previously produced.

10.        All non-privileged papers, documents, and/or any writing which support or contradict the positions taken in paragraph no. 115 of Plaintiff's Complaint.

**RESPONSE:** Responsive documents previously produced.

11.        All non-privileged papers, documents, and/or any writing which support or contradict the positions taken in Plaintiff's Complaint.

**RESPONSE:** Responsive documents previously produced.

12.        All non-privileged documents associated with the rental of 4000 South Ocean Boulevard, Unit 303, South Palm Beach, FL 33480.

**RESPONSE:** Responsive documents previously produced.

# EXHIBIT E

**Samuel C. Kimble**

| | |
|---|---|
| **From:** | Michael D. Starks |
| **Sent:** | Thursday, June 23, 2022 8:18 PM |
| **To:** | Richard Lubliner |
| **Cc:** | Carolina Perales; David Israel; Elizabeth A. Henriques; Andrew Kemp-Gerstel; Marchese, Andrew J. |
| **Subject:** | RE: La Pensee Federal - MAC RESIDENTIAL  286-0260 |
| **Attachments:** | Wilcox Responses and Objections to McFadden and MAC Second RFP (5.18.22).pdf; Luchey Responses and Objections to McFadden and MAC Second RFP (5.18.22).pdf |

Rich, the agreement is in the RFP responses I attached. Look at them. You drafted them. That was the whole point of the confidentiality agreement.

As for how we got the SSNs, it's called "investigation."  It's something we do over here.

---

**From:** Richard Lubliner <rich@lubliner-law.com>
**Sent:** Thursday, June 23, 2022 8:01 PM
**To:** Michael D. Starks <mds2@lgplaw.com>
**Cc:** Carolina Perales <carolina@lubliner-law.com>; David Israel <disrael@israellawfl.com>; Elizabeth A. Henriques <eah@lgplaw.com>; Andrew Kemp-Gerstel <AKG@lgplaw.com>; Marchese, Andrew J. <AJMarchese@MDWCG.com>
**Subject:** RE: La Pensee Federal - MAC RESIDENTIAL 286-0260

Michael – your email is disingenuous, at best.  You know full well this is not what I agreed to, as set forth in the responses to the requests for production, and as discussed in our further conversations, including yesterday.  My clients will not be executing these broad, general releases that seek information that is not relevant to any party's claim or defense.  Additionally, please advise how you obtained my clients' social security numbers.



Richard Lubliner, Esq.
Phone: (561) 207-2018
Fax: (561) 584-7227
rich@lubliner-law.com

**West Palm Office:** 1645 Palm Beach Lakes Blvd., Suite 1200, West Palm Beach, FL 33401
**Boca Raton Office:** 150 E Palmetto Park Rd. #800, Boca Raton, FL 33432

---

**From:** Michael D. Starks <mds2@lgplaw.com>
**Sent:** Thursday, June 23, 2022 7:47 PM
**To:** Richard Lubliner <rich@lubliner-law.com>
**Cc:** Carolina Perales <carolina@lubliner-law.com>; David Israel <disrael@israellawfl.com>; Elizabeth A. Henriques <eah@lgplaw.com>; Andrew Kemp-Gerstel <AKG@lgplaw.com>; Marchese, Andrew J. <AJMarchese@MDWCG.com>
**Subject:** RE: La Pensee Federal - MAC RESIDENTIAL 286-0260

Rich, as you know, we have been trying to get psych and medical records or some time. In your attached responses, you agree that responsive docs will be produced with a confidentiality order. If so, we will need releases.  Also, they are required not just to produce docs in their custody, but within their control – that means medical providers.

Please have your clients execute the releases at this link https://spaces.hightail.com/receive/ujeKXvDjEQ  We had to put them in a link as they have SSNs, so as to get around the firm's filter.

Please provide same by the close of business tomorrow, or advise if they will not be executed, so we can address that with the court.



Michael D. Starks
Senior Attorney
LIEBLER, GONZALEZ & PORTUONDO

44 West Flagler Street | Courthouse Tower 25th Floor | Miami, FL 33130 | Tel: (305) 379-0400 | Fax (305) 379-9626 Email: mds2@lgplaw.com | Web: www.lgplaw.com

"Representing America's Leading Businesses"

CONFIDENTIALITY NOTICE: This e-mail contains confidential information that is legally privileged. Do Not read this e-mail if you are not the intended recipient. This e-mail transmission, and any documents files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please immediately notify us by reply e-mail, by forwarding this to itadmin@lgplaw.com or by telephone at (305) 379-0400 and destroy the original transmission and its attachments without reading or saving in any manner.

This email has been scanned for spam and viruses. Click here to report this email as spam.

# EXHIBIT F

## AUTHORIZATION FOR THE RELEASE OF MEDICAL RECORDS

**PATIENT AUTHORIZATION FOR USE AND DISCLOSURE OF PROTECTION HEALTH INFORMATION IN COMPLIANCE WITH HIPPA
(MEDICAL TREATMENT, MENTAL HEALTH AND/OR PSYCHIATRIC RECORDS)**

TO:

_____
_____
_____
_____
_____

RE:    **(Megan Danielle Luchey), DOB:** ███████        **SSN:** ███████

At my request I, **(Megan Danielle Luchey),** hereby authorize the release and making of copies of : **Any and all medical records, hospital records, emergency room records and records from any health care provider, including psychologists, psychiatrists, and/or mental health counselors, pertaining to any physical or mental health treatment**, regarding **(Megan Danielle Luchey)**, DOB:███████, SSN:███████, since 3/30/2017 to present date.

This protected health information is to be used to evaluate a potential claim of emotional distress.

### Required Disclosure [45 CFR 164.508(c)]

A.  This protected health information is to be used for the following purpose: A civil legal claim or proceeding.
B.  This authorization may be revoked by a signed and properly dated written revocation, delivered to the healthcare provider named above, provided that this release cannot be revoked as to protected health information that had been previously released in reliance on this document.
C.  The undersigned acknowledges that a refusal to sign this form will not result in a denial of healthcare by the hospital or by another health care provider and that this release has not been coerced by any health care entity or its business associates.
D.  The undersigned understands that once the above-referenced private health information is disclosed pursuant to this authorization, it may be re-disclosed to entities which are not required or not subject to comply with Federal and State privacy standards and regulations, such as expert witnesses, litigants, insurance companies, and even may become public record if filed with the court of law.
E.  This authorization will expire twelve (12) months after the date executed, unless earlier revoked in writing.

This authorization was created and executed in compliance with the Health Insurance Portability and Accountability Act of 1996 and 45 C.F.R. Parts 160 and 164.

DATED this _____ day of _____, 2022.


_____
                                    Name

STATE OF _____ )
COUNTY OF _____ )

 The foregoing instrument was acknowledged before me this _____ day of _____, 2022, by _____, who being duly sworn, deposes and says that the foregoing is true and correct to the best of his/her knowledge and belief, and that he/she has executed the same for the purposes therein expressed and who is (personally known to me) (or who has produced _____, as identification and who (did/did not) take an oath.


_____
NOTARY PUBLIC
Print Name: _____
My Commission Expires: _____

# EXHIBIT G

## <u>AUTHORIZATION FOR THE RELEASE OF MEDICAL RECORDS</u>

**PATIENT AUTHORIZATION FOR USE AND DISCLOSURE OF PROTECTION HEALTH INFORMATION IN COMPLIANCE WITH HIPPA**
**(MEDICAL TREATMENT, MENTAL HEALTH AND/OR PSYCHIATRIC RECORDS)**

TO:

    _____
    _____
    _____
    _____
    _____

**RE:**    **(William David Wilcox), DOB:** ███████    **SSN:** ███████_____

At my request I, **(William David Wilcox),** hereby authorize the release and making of copies of: **Any and all medical records, hospital records, emergency room records and records from any health care provider, including psychologists, psychiatrists, and/or mental health counselors, pertaining to any physical or mental health treatment**, regarding **(William David Wilcox)**, DOB:███████, SSN:███████, since 3/30/2017 to present date.

This protected health information is to be used to evaluate a potential claim of emotional distress.

### <u>Required Disclosure [45 CFR 164.508(c)]</u>

A.  This protected health information is to be used for the following purpose: A civil legal claim or proceeding.

B.  This authorization may be revoked by a signed and properly dated written revocation, delivered to the healthcare provider named above, provided that this release cannot be revoked as to protected health information that had been previously released in reliance on this document.

C.  The undersigned acknowledges that a refusal to sign this form will not result in a denial of healthcare by the hospital or by another health care provider and that this release has not been coerced by any health care entity or its business associates.

D.  The undersigned understands that once the above-referenced private health information is disclosed pursuant to this authorization, it may be re-disclosed to entities which are not required or not subject to comply with Federal and State privacy standards and regulations, such as expert witnesses, litigants, insurance companies, and even may become public record if filed with the court of law.

E.  This authorization will expire twelve (12) months after the date executed, unless earlier revoked in writing.

This authorization was created and executed in compliance with the Health Insurance Portability and Accountability Act of 1996 and 45 C.F.R. Parts 160 and 164.

DATED this _____ day of _____, 2022.

    _____
                   Name

STATE OF _____ )
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this _____ day of _____, 2022, by _____, who being duly sworn, deposes and says that the foregoing is true and correct to the best of his/her knowledge and belief, and that he/she has executed the same for the purposes therein expressed and who is (personally known to me) (or who has produced _____, as identification and who (did/did not) take an oath.

    _____
    NOTARY PUBLIC
    Print Name: _____
    My Commission Expires: _____

# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:21-CV-81565-DMM

WILLIAM DAVID WILCOX JR. a/k/a
DAVID   WILCOX,   an   individual,   and
MEGAN   DANIELLE   LUCHEY,   and
individual,

       Plaintiffs,

v.

LA       PENSEE       CONDOMINIUM
ASSOCIATION, INC., a Florida Not-For-
Profit Corporation, MARY MCFADDEN, an
individual,       MAC       RESIDENTIAL
MANAGEMENT   SERVICES,   LLC,   A
Florida Limited Liability Company, and
DAVID WOLFF a/k/a DAVID WOLF, an
individual,

       Defendants.

_____/

**PLAINTIFF, MEGAN LUCHEY'S RESPONSES AND OBJECTIONS TO
DEFENDANTS MARY MCFADDEN AND MAC RESIDENTIAL MANAGEMENT
SERVICES, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF**

Plaintiff, MEGAN LUCHEY ("Megan"), through undersigned counsel, hereby objects and

responds (the "Response") to Defendants Mary McFadden and MAC Residential Management

Services, LLC's First Set of Interrogatories (the "Interrogatories"), and states as follows:

**GENERAL OBJECTIONS**

1.     Megan objects to the Interrogatories to the extent they seek documents/information

not in Plaintiffs' possession, custody, or control.

2.     Megan objects to the Interrogatories to the extent they seek documents/information

which are publicly or otherwise available and/or uniquely or equally available from third parties.

3.      Megan objects to the Interrogatories insofar as they seek documents/information that do not specifically refer to the events which are the subject matter of this litigation.

4.      Megan objects to the Interrogatories to the extent that they seek documents/information prepared in anticipation of litigation, protected by the attorney-client privilege, the work-product privilege, and any other privilege, protection, or immunity applicable under the governing law.

5.      Megan objects to the Interrogatories to the extent they are overly broad, unduly burdensome, oppressive, and/or seek documents/information that are not relevant to the issues in this proceeding, or reasonably calculated to lead to the discovery of admissible evidence.

6.      Megan objects to the Interrogatories to the extent they contain any express of implied assumptions of fact or law concerning matters at issue in this litigation.

7.      Megan does not waive her right to object, on any and all grounds, to (1) the evidentiary use of the information contained in this Response; and (2) discovery requests relating to this Response.

8.      Megan is providing this Response based upon terms as they are commonly understood, and consistent with the Florida Rules of Civil Procedure.  Megan objects to, and will refrain from, extending or modifying any words employed in the Interrogatories to comport with expanded definitions or instructions.

9.      Megan submits his responses and objections without conceding the relevancy or materiality of the subject matter of any request or of any document, or that any responsive materials exist.

10.     The inadvertent production or disclosure of any privileged documents or information shall not constitute or be deemed a waiver of any applicable privilege with respect to such document

(or the contents or subject matter thereof) or with respect to any such other document or discovery now or hereafter requested or provided.

11.    This Response has been prepared on the basis of information now known to Megan, and the objections and responses contained herein are made without waiving any further objections to, or admitting the relevancy or materiality of, any of the information requested.   Megan's investigation, discovery, and preparation for this proceeding are continuing, and this Response is being provided without prejudice to Megan's right to introduce or object to the discovery of any documents, facts, or information discovered after the date hereof.

12.    Megan reserves the right to supplement/amend this Response.

## OBJECTIONS AND REPONSES

1.    State the name(s), address(es) and phone number(s) of each person answering or assisting in the answering of these Interrogatories.

**RESPONSE:**

Megan Luchey c/o Richard S. Lubliner, Esq., Lubliner Law PLLC, 1645 Palm Beach Lakes Blvd., Suite 1200, West Palm Beach, FL, 33401, with the assistance of counsel

2.    List the names and addresses of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which that person(s) has knowledge.

**RESPONSE:**

JoAnn Nesta Burnett, Esq., and additional as yet to be identified employees and/or independent contractors of Becker and Poliakoff, counsel for La Pensee Condominium Association, Inc. (the "Association") - Becker & Poliakoff, 1 East Broward Blvd., Suite 1800, Fort Lauderdale, FL 33301.  Burnett has knowledge of all the allegations set forth in the subject complaint, including, but not limited to why (i) on July 14, 2021, she sent a letter on behalf of the Association to David requesting certain unlawful information from David regarding a service animal named Zeus that resides in the subject unit (the "Unit"), and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service

animal; (ii) on July 20, 2021, Burnett sent a letter to, among others, La Pensee 303 LLC ("303 LLC"), David, and myself, alleging that the subject lease agreement (the "Lease") was for six (6) months based on leases forged by, or at the behest of, or with the knowledge of, the Association and its Board of Directors (the "Board"), and an alleged conversation between the Association's former property manager, Mary McFadden ("McFadden"), and Valerie Manzo ("Ms. Manzo"), that never occurred (the "Invented Conversation"), as evidenced by, among other things, the Association's admission in the Second Amended Complaint filed in the subject state court proceeding. Indeed, there was no "confusion" that the lease term was not for six (6) months, as falsely alleged by the Association in the Second Amended Complaint in an obvious attempt to attempt to circumvent the fact that it was caught forging documents, and lying, in pleadings filed with the Court; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds that (a) the Lease expired on July 24, 2021, based upon a forged lease attached thereto at Exhibit "A" (the "First Forged Lease"), a forged lease attached thereto at Exhibit "B" (the "Second Forged Lease" and together with the First Forged Lease, the "Forged Leases"), and the Invented Conversation; and (b) the Association's, the Board's, and McFadden's premeditated, diabolical plot to invent purported violations of the Association's governing documents on the part of David in attempt to intimidate 303 LLC into evicting him, and I, because he has a service animal, and because I am African-American (the "Invented Allegations"); (iv) on August 18, 2021, Burnett filed an amended complaint in the subject state court proceeding against 303 LLC, David, and myself, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invented Allegations; and (b) myself because I was an alleged "guest," despite the fact that the Association approved me as a resident of the Unit, as evidenced by the $150.00 check from me cashed by the Association, and the approval of my application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint in the subject state court proceeding against 303 LLC, David, and I, lying that the prior iterations of the complaint alleged that the Lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's, and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Burnett also has knowledge of the facts and circumstances regarding Wolf getting in my face and yelling "niggers don't belong here!" Burnett also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the subject building (the "Building"), and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Mary McFadden, in her individual capacity, and her corporate capacity as principal of MAC Residential Management Services, LLC ("MAC"), c/o Israel, Israel & Associates, P.A., 6099 Stirling Road, Suite 211, David, FL 33314. McFadden has knowledge of all the allegations set forth in the subject complaint, including, but not

limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and I alleging that the Lease was for six (6) months based on the Forged Leases, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint in the subject state court proceeding against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed an amended complaint in the subject state court proceeding against 303 LLC, David, and myself, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) myself because I was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from me cashed by the Association, and the approval of my application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint in the subject state court proceeding against 303 LLC, David, and I, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. McFadden also has knowledge of the facts and circumstances regarding David Wolf ("Wolf") getting in my face and alleging "niggers don't belong here!"  McFadden also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the subject building (the "Building"), and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Robert Rosati ("Rosati"), c/o Andrew Simon, Esq., Cole Scott & Kissane P.A., 9150 South Dadeland Blvd., Suite 1400, Miami, FL 33156. Rosati is a member of the Board, and the Association's Treasurer. Rosati has knowledge of all the allegations set forth in the subject complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in the Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and I alleging that the Lease was for

six (6) months based on the Forged Lease, the Invented Conversation, and the
Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint in the subject
state court proceeding against 303 LLC, and David, seeking to force 303 LLC to
evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon
the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations;
(iv) on August 18, 2021, Burnett filed a second amended complaint in the subject
state court proceeding against 303 LLC, David, and I, seeking to force 303 LLC to
evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based
upon the Forged Leases, and the Invented Conversation; and (ii)  the Invested
Allegations; and (b) myself because I was an alleged "guest," despite the fact that
the Association approved her as a resident of the Unit, as evidenced by the $150.00
check from me cashed by the Association, and the approval of my application
submitted in connection with same; and (v) on November 19, 2021, Burnett filed a
second amended complaint in the subject state court proceeding against 303 LLC,
David, and I, lying that the prior iterations of the complaint alleged that the subject
lease was for six (6) months due to "confusion," when such was really alleged in an
surreptitious attempt to cover up the Association's, McFadden's and the Board's,
nefarious conduct in creating, causing to be created, or knowing the falsity of, the
Forged Leases, inventing the Invented Conversation, and engaging in a premeditated
campaign to create the Invented Allegations. McFadden also has knowledge of the
facts and circumstances regarding Wolf getting in my face, and yelling "niggers
don't belong here[,]" as well as the interview of David, and myself, Rosati conducted
after which he advised them that David's two (2) year lease was approved, and that
Zeus was approved to reside in the Unit as a service animal. Rosati also has
knowledge that there are multiple instances of more than one (1) pet residing in one
(1) unit in the Building, and that that many dogs residing in units located in the
Building are in excess of 20 lbs.

Nora Andraos, c/o Andrew Simon, Esq., Cole Scott & Kissane P.A., 9150 South
Dadeland Blvd., Suite 1400, Miami, FL 33156. Andraos is a former member of the
Board.  Andraos has knowledge of all the allegations set forth in the Third-Party
Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a
letter on behalf of the Association to David, requesting certain unlawful information
from David regarding a service animal named Zeus that resides in Unit, and advising
David that the Association was "unable to approve the requested reasonable
accommodation at this time because it requires information from your medical
professional[,]" despite the fact that the Association had previously approved Zeus
to reside in the Unit as a service animal, as evidenced by, among other things,
multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to,
among others, 303 LLC, David, and I alleging that the Lease was for six (6) months
based on the Forged Lease, the Invented Conversation, and the Invented Allegations;
(iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking
to force 303 LLC to evict David on the grounds (a) that the Lease expired on July
24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the
Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended
complaint against 303 LLC, David, and myself, seeking to force 303 LLC to evict

(a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) myself, because I was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from me cashed by the Association, and the approval of my application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Andraos also has knowledge of the facts and circumstances regarding Wolf getting in my face, and yelling "niggers don't belong here[,]" as well Rosati's interview of David, and myself, after which he advised them that that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Androas also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Laurie Marchel, c/o Andrew Simon, Esq., Cole Scott & Kissane P.A., 9150 South Dadeland Blvd., Suite 1400, Miami, FL 33156. Marchel is a member of the Board, and the Vice President of the Association.  Marchel has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and I alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) myself, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from me cashed by the Association, and the approval of my application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, lying that the prior iterations of the complaint alleged that the subject

lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Marchel also has knowledge of the facts and circumstances regarding Wolf getting in my face, and alleging "niggers don't belong here[,]" as well Rosati's interview of David, and myself, after which he advised them that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Marchel also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

David Wolf, c/o Andrew Simon, Esq., Cole Scott & Kissane P.A., 9150 South Dadeland Blvd., Suite 1400, Miami, FL 33156. Wolf is a member of the Board, and the Secretary of the Association.  Wolf has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and I alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) myself, because I was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from me cashed by the Association, and the approval of my application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Wolf also has knowledge of the facts and circumstances regarding his getting in my face, and yelling "niggers don't belong here[,]" as well Rosati's interview of David, and I, after which he advised them that

David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Wolf also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

John Lawson, c/o Andrew Simon, Esq., Cole Scott & Kissane P.A., 9150 South Dadeland Blvd., Suite 1400, Miami, FL 33156.  Lawson is a member of the Board, and the President of the Association.  Lawson has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and I alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) myself, because I was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from me cashed by the Association, and the approval of my application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Lawson also has knowledge of the facts and circumstances regarding Wolf getting in my face, and alleging "niggers don't belong here[,]" as well Rosati's interview of David, and I, after which he advised them that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Lawson also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs. Finally, Lawson has knowledge of Wolf's admission to him that he yelled at me that "niggers don't' belong here!"

Todd Davis, 2000 N Congress Ave # 262, West Palm Beach, FL, 33409.  Upon information and belief, Davis is employed by the Association as its maintenance man.  Davis has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease; (ii) approved me as a resident and provided her with a parking pass as a result of same; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invented Conversation; and (v) invented the Invented Allegations. Davis also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Benjamin Ripstein, 4000 South Ocean Blvd # 101, South Palm Beach, FL 334805.  Ripstein is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident and provided her with a parking pass as result of same; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invented Conversation; and (v) invented the Invented Allegations.  Ripstein also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.  Ripstein also has knowledge that David sent a letter to the members of the Association regarding Ripstein's criminal conviction in response to a letter sent by Ripstein's attorney to David threatening to sue David for allegedly lying about Ripstein's conviction, when such was absolutely true.

Joanna Ripstein, 4000 South Ocean Blvd # 101, South Palm Beach, FL 334805.  Ripstein is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident and provided her with a parking pass as result of same; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Ripstein also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs. Ripstein also has knowledge that David sent a letter to the members of the Association in response to a letter sent by Mr. Ripstein's attorney to David threatening to sue David for allegedly lying about Mr. Ripstein's conviction, when such was absolutely true.

Gary Larson, 117 12th Avenue NW, Wesca, MN 56093.  Mr. Larson is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invented Conversation; and (v) invented the Invented Allegations.  Larson also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Jeanie Larson, 117 12th Avenue NW, Wesca, MN 56093. Larson is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Larson also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Liza Dunn, 4000 South Ocean Blvd # 103, South Palm Beach, FL 33480.  Dunn is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.   Dunn also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Valentina Kraver, 4000 South Ocean Blvd # 10, South Palm Beach, FL 33480. Kraver is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Kraver also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Richard Berstein, 4000 South Ocean Blvd # 201, South Palm Beach, FL 33480. Bernstein is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Bernstein also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Meryl Berstein, 4000 South Ocean Blvd # 201, South Palm Beach, FL 33480. Bernstein is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Bernstein also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Sandeep Mayer, 4000 South Ocean Blvd # 202, South Palm Beach, FL 33480. Mayer is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Mayer also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Helen Vlachos, 4000 South Ocean Blvd # 202, South Palm Beach, FL 33480.  Ms. Vlachos is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Vlachos also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Marie Rosati, 4000 South Ocean Blvd., #203, South Palm Beach, FL 33480.  Rosati has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and I alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii)  the Invested Allegations; and (b) myself, because I was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from me cashed by the Association, and the approval of my application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in

a premeditated campaign to create the Invented Allegations. Rosati also has knowledge of the facts and circumstances regarding Wolf getting in my face, and alleging "niggers don't belong here[,]" as well as the interview of David, and I, Mr. Rosati conducted after which he advised them that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Rosati also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Arthur Bellin, 4000 South Ocean Blvd # 204, South Palm Beach, FL 33480.  Bellin is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Bellin also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Sandra Bellin, 4000 South Ocean Blvd # 204, South Palm Beach, FL 33480.  Bellin is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.   Bellin also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Martina Sherbomb, 4000 South Ocean Blvd # 301, South Palm Beach, FL 33480. Sherbomb is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Sherbomb also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

John Rahal, 12826 Topping Manor Drive, St. Louis, MO 63131.  Rahal has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC,

David, and I alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii)  the Invested Allegations; and (b) myself, because I was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from me cashed by the Association, and the approval of my application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. McFadden also has knowledge of the facts and circumstances regarding Wolf getting in my face, and alleging "niggers don't belong here[,]" as well as the interview of David, and I, Rosati conducted after which he advised that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Mr. Rahal also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Valerie Manzo, c/o Richard S. Lubliner, Esq., Lubliner Law, PLLC, 1645 Palm Beach Lakes Blvd., Suite 1200, West Palm Beach, FL, 33401.  Ms. Manzo, the principal of 303 LLC, has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to (i) that on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) that on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and I alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) that on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24,

2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) myself, because I was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from me cashed by the Association, and the approval of my application submitted in connection with same; and (v) that on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Ms. Manzo also has knowledge of the facts and circumstances regarding Wolf getting in my face, and alleging "niggers don't belong here[,]" as well as the interview of David, and I, Rosati conducted after which he advised that that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Ms. Manzo also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

David Wilcox, c/o Richard S. Lubliner, Esq., Lubliner Law, PLLC, 1645 Palm Beach Lakes Blvd., Suite 1200, West Palm Beach, FL, 33401. David has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to (i) that on July 14, 2021, Burnett sent a letter on behalf of the Association to David requesting certain unlawful information from him regarding a service animal named Zeus that resides in Unit, and advising him that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) that on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and I alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) that on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) myself, because I was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from me cashed by the Association, and the approval of my application submitted in connection with same; and (v) that on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt

to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations.  David also has knowledge of the facts and circumstances regarding Wolf getting in my face, and alleging "niggers don't belong here[,]" as well as the interview of David, and I, Rosati conducted after which he advised them that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. David also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs. Finally, David has knowledge of Wolf's admission to Lawson that he yelled at me that "niggers don't' belong here!"


Thomas DeMarinis, c/o Richard S. Lubliner, Esq., Lubliner Law, PLLC, 1645 Palm Beach Lakes Blvd., Suite 1200, West Palm Beach, FL, 33401.  Mr. DeMarinis is Ms. Manzo's husband, and has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to (i) that on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) that on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and I alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) that on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) myself, because I was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from me cashed by the Association, and the approval of my application submitted in connection with same; and (v) that on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Ms. Manzo also has knowledge of the facts and circumstances regarding Wolf getting in my face, and alleging "niggers don't belong

here[,]" as well as the interview of David, and I, Rosati conducted after which he advised that that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Mr. DeMarinis also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Elias Halvatzis, 4000 South Ocean Blvd # 401, South Palm Beach, FL 33480.  Mr. Halvatzis is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Mr. Halvatzis also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Terry Halvatzis, 4000 South Ocean Blvd # 401, South Palm Beach, FL 33480.  Ms. Halvatzis is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Ms. Halvatzis also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Michael Rivero, 9191 Chianti Court, Boynton Beach, FL 33471.  Rivero is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Rivero also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Myra Rivero, 9191 Chianti Court, Boynton Beach, FL 33471.  Rivero is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Rivero also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Norman Meier, 515 Via Villagio, Hypoluxo, FL 33461.  Meier is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as

a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Meier also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Christopher Tursky, 88 Lake Breeze Drive, Jackson, TN 38305.  Tursky is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter;  (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Tursky also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Debra Tursky, 88 Lake Breeze Drive, Jackson, TN 38305.  Tursky is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter;  (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Tursky also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Steven Smith, 4000 South Ocean Blvd # 502, South Palm Beach, FL 33480.  Smith is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Mr. Smith also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Pamela Smith, 4000 South Ocean Blvd # 502, South Palm Beach, FL 33480.  Smith is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Smith also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Steven Sapletal, 1760 Concordia Street, Wayzata, MN 55391. Sapletal is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested

Conversation; and (v) invented the Invented Allegations. Sapletal also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Stacy Sapletal, 1760 Concordia Street, Wayzata, MN 55391. Sapletal is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Sapletal also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Peter Goldring, 131 Lions Court, Freehold, NJ 07728. Goldring is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Goldring also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Tara Goldring, 131 Lions Court, Freehold, NJ 07728. Goldring is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Goldring also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Robyn Lawson, 4000 South Ocean Blvd., #601, South Palm Beach, FL 33480. Lawson has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and I alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based

upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) myself, because I was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from me cashed by the Association, and the approval of my application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and I, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. McFadden also has knowledge of the facts and circumstances regarding Wolf getting in my face, and yelling "niggers don't belong here[,]" as well as the interview of David, and I, Mr. Rosati conducted after which he advised that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Ms. Lawson also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Robin Wheelock, 710 West Brow Road, Lookout Mountain, TN 37350. Wheelock is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Wheelock also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Argil Wheelock, 710 West Brow Road, Lookout Mountain, TN 37350. Wheelock is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Wheelock also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Sabrina Benjamin, 206 Lynam Road, Stanford, CT 06903. Benjamin is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Benjamin also has

knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Daniel Benjamin, 206 Lynam Road, Stanford, CT 06903.  Benjamin is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved me as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Benjamin also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Edward Lepselter, c/o Christopher S. Salivar, Esq., Christopher S. Salivar P.L.L.C, 6576 Whispering Wind Way Delray Beach, FL 33484.  Mr. Lepselter has knowledge that the Lease was a two (2) year lease, that Zeus was approved to reside in the Unit as a service animal, and that the Forged Leases were not submitted by 303 LLC, Ms. Manzo, David, myself, or Roy Gelber.

Roy Gelber, 1111 NW 74th Terrace, Plantation, FL 33313.  Mr. Gelber has knowledge that the Lease was a two (2) year lease, that Zeus was approved to reside in the Unit as a service animal, and that the Forged Leases were not submitted by 303 LLC, Ms. Manzo, David, myself, or Edward Lepselter.

Donna Childrey, 2300 W. Sample Rd. #310, Pompano Beach, FL 33073.  Childrey is the Association's property manager.  She has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

3.     Have you heard or do you know about any statement or remark made by or on behalf of any party or non-party to this lawsuit other than yourself, concerning any issue in this lawsuit? If so, state the name(s) and address(es) of each person who made the statement or statements, the name(s) and address(es) of each person who heard it, and the date, time, place and substance of each statement.

**RESPONSE:**

Wolf got in my face and yelled "niggers don't belong here!"

I, and David, heard Lawson tell us that Wolf admitted to him that he yelled at me "niggers don't belong here[,]" and excused such because, according to Lawson, Wolf was old.

David, and Davis, heard McFadden yell at Davis "[w]e are fucked Todd...how did he get that video? We are trying to get him out!"

Gelber heard McFadden tell him that the Board was trying to evict me in July 2021, because I was running around the Building waiving a gun.

4.      Identify in explicit detail each and every element of monetary damages which you
        contend you sustained as a direct and proximate legal cause of the said allegations
        to which reference is made in Plaintiff's Complaint or any amendments thereto,
        including in your response to this Interrogatory.

        **RESPONSE:**

        At this juncture, I cannot quantify the exact amount of my damages, as they continue
        to accrue, but I reasonably believe them to be $1,525,000.00.  My damages include
        attorneys' fees, and costs, incurred as a result of the Board's institution, and
        prosecution, of the different iterations of the frivolous state court complaint, as well
        as damages for the severe emotional distress I have suffered as a result of Defendants'
        diabolical actions and harassment.

a.      The name(s) and business address(es) of each and every person who participated in
        the calculation of any such damages.

        **RESPONSE:**

        Myself and David, whose addresses are set forth above.

b.      The methodology which was used and/or otherwise relied upon in determining the
        said amount of damages referenced in response to this Interrogatory.

        **RESPONSE:**

        The damages were based upon the severe emotional distress, and suffering,
        Defendants' conduct has caused me, as well as the attorneys' fees that I have
        incurred thus far, and will continue to incur, in the frivolous state court action.

c.      Identify and/or describe each and every document and/or other tangible material
        which was relied upon in determining the said amount of damages referenced in
        response to this Interrogatory.

        **RESPONSE:**

        The documents relied upon have been previously provided.

5.      Explain in detail all actions, if any, that you have taken to mitigate your alleged damages herein?

        **RESPONSE:**

        I could not take any actions to mitigate my damages, nor do I believe I had a duty to do so.

6.      If the answer to Interrogatory No. 5 is "none", explain in detail why such action(s) were not/have not been undertaken to date?

        **RESPONSE:**

        There could be no mitigation, as unfortunately I am unable to travel back in time and alter the Defendants' reprehensible, retaliatory conduct directed towards me. Moreover, such conduct continues as of the date hereof.

7.      State in specific detail all facts which support your claims in the Complaint herein against Defendants Mary McFadden and MAC Residential Management Services, LLC.

        **RESPONSE:**

        I objects to this Request as overly broad and unduly burdensome, as the facts supporting the claims in the Complaint are set forth therein.

8.      State in specific detail all facts which support your claims in paragraph 9 of Plaintiff's Complaint which states "... McFadden violated the FHA (defined below) because McFadden personally implemented and enforced the Association's retaliatory conduct towards Plaintiffs".

        **RESPONSE:**

        McFadden, in her capacity as the Property Manager for the Association, participated in the forgery of at least one lease by, among other things, altering, causing to be altered, or having knowledge of the altering of, the lease(s) for the Unit.  Indeed, according to Burnett, McFadden is the individual who provided her with at least 1 version of the forged lease.  McFadden went so far as to even lie and state that she had a conversation with Manzo during which time she wrote the purported lease term on a forged version of the lease, which the Association has admitted in the state court complaint never occurred.  Additionally, McFadden harassed me with invented allegations of purported violations of Rules and Regulations that never occurred.  Also, as set forth in multiple documents produced in this litigation, and the state court litigation, McFadden herself was the individual

that conveyed the Association's approval of Zeus as a service animal, yet she authorized, or had knowledge of, Burnett's sending me the July 14, 2021, email which in an of itself violated the FHA, because the Association already approved Zeus as a service animal.

9.   State in specific detail all facts which support your claims in paragraph 21 of Plaintiff's Complaint which states "Unfortunately for Defendants, while it may appear to be 1956 in the fiefdom that is the association they govern, and operate, it is 2021, and the deplorable acts of the Defendants, acting in concert, with the sole and exclusive purpose of ousting David, and Megan, from their home, is not tolerated under the law".

**RESPONSE:**

The Defendants conspired to oust David, because they did not want Zeus to continue to reside in the building despite the fact that the Association already approved him as a service animal, and myself, because I am African-American. The laws the Defendants violated, and the retaliatory conduct complaint of in this proceeding, were unfortunately more generally accepted in the 1950's than they are today, as evidenced by the fact that the FHA itself exists.   The Defendants' deplorable acts include Wolf yelling a racial slur at me.

10.   State in specific detail all facts which support your claims in paragraph 55 of Plaintiff's Complaint which states "When Dunn noticed that Megan was African-American, she told her mother "well that ain't going to work," as Dunn had previous knowledge of the Association's prior discrimination, including harassing a lesbian couple that resided in the Unit before David, Megan, and Zeus, as well as making racial slurs".

**RESPONSE:**

Ms. Dunn advised the statement was made.

11.   State in specific detail all facts which support your claims in paragraph 56 of Plaintiff's Complaint which states "Dunn's words would prove to be prophetic, as the Defendants were about to embark on a premeditated slash and burn campaign against David, Megan, and Zeus".

**RESPONSE:**

See responses to Interrogatory Nos. 2, 3, 8, 9, and 10.

12.   State in specific detail all facts which support your claims in paragraph 67 of Plaintiff's Complaint which states "Remarkably, McFadden, doing the Defendants'

bidding, was attempting to intimidate Manzo into getting rid of David, Megan, and Zeus, because Zeus was a Dobermann, a fact that was disclosed to the Association, Rosati, and McFadden, in the Service Animal Application, the identification pictures, and the vaccination records, that David provided to McFadden, and in the interview with Rosati".

**RESPONSE:**

Please see the document attached hereto at Exhibit "A," and the additional correspondence previously produced evidencing same.

13.   State in specific detail all facts which support your claims in paragraph 71 of Plaintiff's Complaint which states "David reiterated to McFadden, who was aware of the racist remarks made to Megan, that "[t]he racist shit is being stopped as well and I am getting the police involved. Megan is fearing for her life.""

**RESPONSE:**

Please see document attached hereto at Exhibit "B."

14.   State in specific detail all facts which support your claims in paragraph 79 of Plaintiff's Complaint which states "The harassment continued. The Defendants were fabricating arguments against David, and Zeus, a protected service animal, while ignoring the fact that the barking was emanating from a unit on the same floor as the Unit that is owned by Laurie Marchel ("Marchel"), a member of the Board, and the Vice President of the Association".

**RESPONSE:**

Please see document attached hereto at Exhibit "C."

15.   State in specific detail all facts which support your claims in paragraph 91 of Plaintiff's Complaint which states "The Forged Lease was not a part of the Lease, and was not prepared by Manzo, Lepselter, Gelber, or Manzo".

**RESPONSE:**

Please see document attached hereto at Exhibit "D."   I also refer you to the deposition testimony of Ed Lepselter, and Roy Gelber.

16.   State in specific detail all facts which support your claims in paragraph 92 of Plaintiff's Complaint which states "Rather, it was prepared by, or at the behest of, one, or more, of the Defendants, in an attempt to get rid of David, Megan, and

Zeus".

**RESPONSE:**

Other than myself (possibly), Lepselter, Gelber, and Manzo, all of whom have denied forging the subject lease, these are the only individuals that were in possession of a copy of the Word version of a template utilized to formulate a portion of the subject lease.  This appears to be the document from which page 2 was removed and utilized as part of the forged lease.  See document attached hereto at Exhibit "E."

17.    State in specific detail all facts which support your claims in paragraph 96 of Plaintiff's Complaint which states "The State Court is predicated on the Forged Lease, and alleges that the Lease Term is only for 6 months, and therefore, David, and Megan, are not authorized to reside in the Unit".

**RESPONSE:**

The state court complaint speaks for itself, and attaches the Forged Lease as an exhibit.  Additionally, as set forth in greater detail herein, and as admitted by Nora Andraos at her deposition, the subject lease was not for 6 months.  Indeed, after being cornered, the Association admitted that the subject lease was not for a 6 month term, as set forth in the Second Amended Complaint filed in the state court proceeding.

18.    State in specific detail all facts which support your claims in paragraph 97 of Plaintiff's Complaint which states "The Amended Complaint is replete with lies, and based upon a document that was created by, or at the best of, one or more of the Defendants".

**RESPONSE:**

Please see responses to Interrogatory Nos. 2, 3, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17.

19.    State in specific detail all facts which support your claims in paragraph 99 of Plaintiff's Complaint which states "To the contrary, McFadden, like all of the Defendants, were well aware that the Lease Term was 2 years, as evidenced by the above, and the exhibits attached hereto".

**RESPONSE:**

McFadden was aware that the Association approved a two (2) year lease term as a result of, among other things, Rosati's approval of such after he interviewed myself

and David via Zoom.

20.    State in specific detail all facts which support your claims in paragraph 107 of
       Plaintiff's Complaint which states "As enumerated in detail above, and confirmed
       by McFadden when she yelled at Davis on July 15, 2021, Defendants have engaged
       in multiple, despicable, acts of retaliatory conduct against Plaintiffs including,
       among other things:

       • Wolff yelling at Megan "niggers don't belong here!"
       • Making up lies about David violating non-existent rules and regulations of the
       Association
       • Causing Ms. Burnett to demand information from David regarding Zeus in order
       for him to be approved by the Association as a service animal, when he was already
       approved approximately 6 months earlier
       • Trying to intimidate Manzo into causing 303 to evict David, and Megan
       • Filing the State Court Case

       **RESPONSE:**

       The deplorable conduct enumerated above are the facts which support the claims.

21.    State in specific detail all facts which support your claims in paragraph 108 of
       Plaintiff's Complaint which states "Defendants' flagrant acts of intimidation,
       threats, and interference with David's, and Megan's, exercise of their fair housing
       rights constitutes a violation of the Fair Housing Act".

       **RESPONSE:**

       Please see response to Interrogatory Nos. 2, 3, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17,
       18, 19, and 20.

22.    State in specific detail all facts which support your claims in paragraph 113 of
       Plaintiff's Complaint which states "Defendants acted recklessly or intentionally".

       **RESPONSE:**

       Defendants knew that the lease was a 2 year lease, that Zeus was approved as a
       service animal, and that Wolf racially accosted me.  Yet they purposefully, and
       willfully, engaged in retaliatory conduct against me, because I am African-
       American, and David, because Zeus was living with me as a service animal.

23.    State in specific detail all facts which support your claims in paragraph 114 of
       Plaintiff's Complaint which states "The conduct complained of herein was
       outrageous, and went beyond all bounds of decency, and is regarded as odious and
       utterly intolerable in a civilized community".

**RESPONSE:**

I challenge anyone to state that the retaliatory conduct exhibited by the Defendants against myself, and David, including the use of the word nigger, was not such.

24.   State in specific detail all facts which support your claims in paragraph 115 of Plaintiff's Complaint which states "The conduct caused Plaintiffs severe emotional distress".

**RESPONSE:**

I am forced to live like a prisoner in my own home.  In addition to the multiple, nefarious, retaliatory conduct exhibited towards me, I feel like a prisoner in my own home.   Defendants have installed cameras to watch me, and hired private investigators to follow me.  All of this has caused me to suffer severe distress, as it would cause any individual to do so.

## ANSWERS TO INTERROGATORIES

I HEREBY ACKNOWLEDGE that the Answers to the foregoing Interrogatories are true and correct to the best of my knowledge and belief.

Signed this 25th day of March 2022.

Plaintiff Megan Danielle Luchey

By: _____

Name: Megan Danielle Luchey

As Its: _____

Date: 03/25/22

## ACKNOWLEDGMENT

Before me, the undersigned authority, on this day, appeared Megan Danielle Luchey, personally known to me or otherwise identified as indicated below, and who, upon oath did state she executed and/or attested to the accuracy and truthfulness of the foregoing answers to the Interrogatories and the information contained in said answers is true and correct.

STATE OF FLORIDA )
COUNTY OF PALM BEACH )

Sworn and subscribed to on this 25th day of March 2022.

_____
Notary Public in and For The State of Florida

Personally known to me

Identified by presentation of identification Drivers License

CAROLINA NATALIA PERALES
Notary Public - State of Florida
Commission # HH 069155
My Comm. Expires Dec 25, 2024
Bonded through National Notary Assn.

# EXHIBIT I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:21-CV-81565-DMM

WILLIAM DAVID WILCOX JR. a/k/a
DAVID WILCOX, an individual, and
MEGAN DANIELLE LUCHEY, and
individual,

       Plaintiffs,

v.

LA      PENSEE     CONDOMINIUM
ASSOCIATION, INC., a Florida Not-For-
Profit Corporation, MARY MCFADDEN, an
individual,    MAC    RESIDENTIAL
MANAGEMENT SERVICES, LLC, A
Florida Limited Liability Company, and
DAVID WOLFF a/k/a DAVID WOLF, an
individual,

       Defendants.
_____/

**PLAINTIFF, DAVID WILCOX'S RESPONSES AND OBJECTIONS TO
DEFENDANTS MARY MCFADDEN AND MAC RESIDENTIAL MANAGEMENT
SERVICES, LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF**

      Plaintiff, David Wilcox ("David"), through undersigned counsel, hereby objects and responds

(the "Response") to Defendants Mary McFadden and MAC Residential Management Services,

LLC's First Set of Interrogatories (the "Interrogatories"), and states as follows:

**OBJECTIONS AND REPONSES**

1.    State the name(s), address(es) and phone number(s) of each person answering or
assisting in the answering of these Interrogatories.

**RESPONSE:**

William David Wilcox, Jr., c/o Richard S. Lubliner, Esq., Lubliner Law PLLC, 1645
Palm Beach Lakes Blvd., Suite 1200, West Palm Beach, FL, 33401, with the

assistance of counsel.

2.   List the names and addresses of all persons who are believed or known by you, your agents, or your attorneys to have any knowledge concerning any of the issues in this lawsuit; and specify the subject matter about which that person(s) has knowledge.

**RESPONSE:**

JoAnn Nesta Burnett, Esq., and additional as yet to be identified employees and/or independent contractors of Becker and Poliakoff, counsel for La Pensee Condominium Association, Inc. (the "Association") - Becker & Poliakoff, 1 East Broward Blvd., Suite 1800, Fort Lauderdale, FL 33301.  Burnett has knowledge of all the allegations set forth in the subject complaint, including, but not limited to why (i) on July 14, 2021, she sent a letter on behalf of the Association to David requesting certain unlawful information from David regarding a service animal named Zeus that resides in the subject unit (the "Unit"), and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal; (ii) on July 20, 2021, Burnett sent a letter to, among others, La Pensee 303 LLC ("303 LLC"), David, and Megan Luchey ("Megan"), alleging that the subject lease agreement (the "Lease") was for six (6) months based on leases forged by, or at the behest of, or with the knowledge of, the Association and its Board of Directors (the "Board"), and an alleged conversation between the Association's former property manager, Mary McFadden ("McFadden"), and Valerie Manzo ("Ms. Manzo"), that never occurred (the "Invented Conversation"), as evidenced by, among other things, the Association's admission in the Second Amended Complaint filed in the subject state court proceeding.  Indeed, there was no "confusion" that the lease term was not for six (6) months, as falsely alleged by the Association in the Second Amended Complaint in an obvious attempt to attempt to circumvent the fact that it was caught forging documents, and lying, in pleadings filed with the Court; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds that (a) the Lease expired on July 24, 2021, based upon a forged lease attached thereto at Exhibit "A" (the "First Forged Lease"), a forged lease attached thereto at Exhibit "B" (the "Second Forged Lease" and together with the First Forged Lease, the "Forged Leases"), and the Invented Conversation; and (b) the Association's, the Board's, and McFadden's premeditated, diabolical plot to invent purported violations of the Association's governing documents on the part of David in attempt to intimidate 303 LLC into evicting him, and Megan, because he has a service animal, and because Megan is African-American (the "Invented Allegations"); (iv) on August 18, 2021, Burnett filed an amended complaint in the subject state court proceeding against 303 LLC, David, and Megan, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invented Allegations; and (b) Megan, because

she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint in the subject state court proceeding against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the Lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's, and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Burnett also has knowledge of the facts and circumstances regarding Wolf getting in Megan's face and yelling "niggers don't belong here!" Burnett also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the subject building (the "Building"), and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Mary McFadden, in her individual capacity, and her corporate capacity as principal of MAC Residential Management Services, LLC ("MAC"), c/o Israel, Israel & Associates, P.A., 6099 Stirling Road, Suite 211, David, FL 33314.  McFadden has knowledge of all the allegations set forth in the subject complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and Megan alleging that the Lease was for six (6) months based on the Forged Leases, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint in the subject state court proceeding against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed an amended complaint in the subject state court proceeding against 303 LLC, David, and Megan, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) Megan, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint in the subject state court proceeding against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating,

causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. McFadden also has knowledge of the facts and circumstances regarding David Wolf ("Wolf") getting in Megan's face and alleging "niggers don't belong here!"  McFadden also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the subject building (the "Building"), and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Robert Rosati ("Rosati"), c/o Andrew Simon, Esq., Cole Scott & Kissane P.A., 9150 South Dadeland Blvd., Suite 1400, Miami, FL 33156. Rosati is a member of the Board, and the Association's Treasurer. Rosati has knowledge of all the allegations set forth in the subject complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in the Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and Megan alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint in the subject state court proceeding against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint in the subject state court proceeding against 303 LLC, David, and Megan, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invented Allegations; and (b) Megan, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint in the subject state court proceeding against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. McFadden also has knowledge of the facts and circumstances regarding Wolf getting in Megan's face, and yelling "niggers don't belong here[,]" as well as the interview of David, and Megan, Rosati conducted after which he advised them that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Rosati also has knowledge that there are multiple instances of

more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Nora Andraos, c/o Andrew Simon, Esq., Cole Scott & Kissane P.A., 9150 South Dadeland Blvd., Suite 1400, Miami, FL 33156. Andraos is a former member of the Board.  Andraos has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in the Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and Megan alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) Megan, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Andraos also has knowledge of the facts and circumstances regarding Wolf getting in Megan's face, and yelling "niggers don't belong here[,]" as well Rosati's interview of David, and Megan, after which he advised them that that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Androas also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Laurie Marchel, c/o Andrew Simon, Esq., Cole Scott & Kissane P.A., 9150 South Dadeland Blvd., Suite 1400, Miami, FL 33156. Marchel is a member of the Board, and the Vice President of the Association.  Marchel has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why

(i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and Megan alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) Megan, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Marchel also has knowledge of the facts and circumstances regarding Wolf getting in Megan's face, and alleging "niggers don't belong here[,]" as well Rosati's interview of David, and Megan, after which he advised them that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Marchel also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

David Wolf, c/o Andrew Simon, Esq., Cole Scott & Kissane P.A., 9150 South Dadeland Blvd., Suite 1400, Miami, FL 33156. Wolf is a member of the Board, and the Secretary of the Association.  Wolf has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett

sent a letter to, among others, 303 LLC, David, and Megan alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) Megan, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Wolf also has knowledge of the facts and circumstances regarding his getting in Megan's face, and yelling "niggers don't belong here[,]" as well Rosati's interview of David, and Megan, after which he advised them that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Wolf also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

John Lawson, c/o Andrew Simon, Esq., Cole Scott & Kissane P.A., 9150 South Dadeland Blvd., Suite 1400, Miami, FL 33156.  Lawson is a member of the Board, and the President of the Association.  Lawson has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and Megan alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan,

seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) Megan, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Lawson also has knowledge of the facts and circumstances regarding Wolf getting in Megan's face, and alleging "niggers don't belong here[,]" as well Rosati's interview of David, and Megan, after which he advised them that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Lawson also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.   Finally, Lawson has knowledge of Wolf's admission to him that he yelled at Megan that "niggers don't' belong here!"

Todd Davis, 2000 N Congress Ave # 262, West Palm Beach, FL, 33409.  Upon information and belief, Davis is employed by the Association as its maintenance man.  Davis has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease; (ii) approved Megan as a resident and provided her with a parking pass as a result of same; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invented Conversation; and (v) invented the Invented Allegations. Davis also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Benjamin Ripstein, 4000 South Ocean Blvd # 101, South Palm Beach, FL 334805. Ripstein is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident and provided her with a parking pass as result of same; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invented Conversation; and (v) invented the Invented Allegations.  Ripstein also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.  Ripstein also has knowledge that David sent a letter to the members of the Association regarding Ripstein's criminal conviction in response to a letter sent by Ripstein's attorney to David threatening to sue David for allegedly lying about Ripstein's conviction, when such was absolutely true.

Joanna Ripstein, 4000 South Ocean Blvd # 101, South Palm Beach, FL 334805. Ripstein is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident and provided her with a parking pass as result of same; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Ripstein also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs. Ripstein also has knowledge that David sent a letter to the members of the Association in response to a letter sent by Mr. Ripstein's attorney to David threatening to sue David for allegedly lying about Mr. Ripstein's conviction, when such was absolutely true.

Gary Larson, 117 12th Avenue NW, Wesca, MN 56093.  Mr. Larson is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invented Conversation; and (v) invented the Invented Allegations.  Larson also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Jeanie Larson, 117 12th Avenue NW, Wesca, MN 56093. Larson is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Larson also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Liza Dunn, 4000 South Ocean Blvd # 103, South Palm Beach, FL 33480.  Dunn is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Dunn also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Valentina Kraver, 4000 South Ocean Blvd # 10, South Palm Beach, FL 33480. Kraver is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Kraver also has knowledge that there are multiple instances of more than one (1) pet

residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Richard Berstein, 4000 South Ocean Blvd # 201, South Palm Beach, FL 33480. Bernstein is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Bernstein also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Meryl Berstein, 4000 South Ocean Blvd # 201, South Palm Beach, FL 33480. Bernstein is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Bernstein also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Sandeep Mayer, 4000 South Ocean Blvd # 202, South Palm Beach, FL 33480. Mayer is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Mayer also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Helen Vlachos, 4000 South Ocean Blvd # 202, South Palm Beach, FL 33480. Ms. Vlachos is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Vlachos also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Marie Rosati, 4000 South Ocean Blvd., #203, South Palm Beach, FL 33480. Rosati has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite

the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and Megan alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii)  the Invested Allegations; and (b) Megan, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Rosati also has knowledge of the facts and circumstances regarding Wolf getting in Megan's face, and alleging "niggers don't belong here[,]" as well as the interview of David, and Megan, Mr. Rosati conducted after which he advised them that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Rosati also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Arthur Bellin, 4000 South Ocean Blvd # 204, South Palm Beach, FL 33480.  Bellin is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Bellin also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Sandra Bellin, 4000 South Ocean Blvd # 204, South Palm Beach, FL 33480.  Bellin is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.   Bellin also has knowledge that there are multiple instances of more than one (1) pet residing in

one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Martina Sherbomb, 4000 South Ocean Blvd # 301, South Palm Beach, FL 33480. Sherbomb is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Sherbomb also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

John Rahal, 12826 Topping Manor Drive, St. Louis, MO 63131.  Rahal has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and Megan alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii)  the Invested Allegations; and (b) Megan, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. McFadden also has knowledge of the facts and circumstances regarding Wolf getting in Megan's face, and alleging "niggers don't belong here[,]" as well as the interview of David, and Megan, Rosati conducted after which he advised that that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Mr. Rahal also has knowledge that

there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Valerie Manzo, c/o Richard S. Lubliner, Esq., Lubliner Law, PLLC, 1645 Palm Beach Lakes Blvd., Suite 1200, West Palm Beach, FL, 33401.  Ms. Manzo, the principal of 303 LLC, has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to (i) that on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) that on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and Megan alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) that on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) Megan, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) that on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Ms. Manzo also has knowledge of the facts and circumstances regarding Wolf getting in Megan's face, and alleging "niggers don't belong here[,]" as well as the interview of David, and Megan, Rosati conducted after which he advised that that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Ms. Manzo also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Megan Danielle Luchey, c/o Richard S. Lubliner, Esq., Lubliner Law, PLLC, 1645 Palm Beach Lakes Blvd., Suite 1200, West Palm Beach, FL, 33401.  Ms. Luchey has knowledge of all the allegations set forth in the Third-Party Complaint, including,

but not limited to (i) that on July 14, 2021, Burnett sent a letter on behalf of the Association to David requesting certain unlawful information from him regarding a service animal named Zeus that resides in Unit, and advising him that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) that on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and Megan alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) that on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) Megan, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) that on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations.  Megan also has knowledge of the facts and circumstances regarding Wolf getting in Megan's face, and alleging "niggers don't belong here[,]" as well as the interview of David, and Megan, Rosati conducted after which he advised them that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Megan also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs. Finally, Megan has knowledge of Wolf's admission to Lawson that he yelled at Megan that "niggers don't' belong here!"

Thomas DeMarinis, c/o Richard S. Lubliner, Esq., Lubliner Law, PLLC, 1645 Palm Beach Lakes Blvd., Suite 1200, West Palm Beach, FL, 33401. Mr. DeMarinis is Ms. Manzo's husband, and has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to (i) that on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your

medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) that on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and Megan alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) that on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii) the Invested Allegations; and (b) Megan, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) that on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. Ms. Manzo also has knowledge of the facts and circumstances regarding Wolf getting in Megan's face, and alleging "niggers don't belong here[,]" as well as the interview of David, and Megan, Rosati conducted after which he advised that that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Mr. DeMarinis also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Elias Halvatzis, 4000 South Ocean Blvd # 401, South Palm Beach, FL 33480. Mr. Halvatzis is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Mr. Halvatzis also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Terry Halvatzis, 4000 South Ocean Blvd # 401, South Palm Beach, FL 33480. Ms. Halvatzis is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Ms. Halvatzis also has knowledge that there are multiple instances of more than one (1)

pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Michael Rivero, 9191 Chianti Court, Boynton Beach, FL 33471. Rivero is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Rivero also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Myra Rivero, 9191 Chianti Court, Boynton Beach, FL 33471. Rivero is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Rivero also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Norman Meier, 515 Via Villagio, Hypoluxo, FL 33461. Meier is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Meier also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Christopher Tursky, 88 Lake Breeze Drive, Jackson, TN 38305. Tursky is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Tursky also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Debra Tursky, 88 Lake Breeze Drive, Jackson, TN 38305. Tursky is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Tursky also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in

the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Steven Smith, 4000 South Ocean Blvd # 502, South Palm Beach, FL 33480.  Smith is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Mr. Smith also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Pamela Smith, 4000 South Ocean Blvd # 502, South Palm Beach, FL 33480.  Smith is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Smith also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Steven Sapletal, 1760 Concordia Street, Wayzata, MN 55391. Sapletal is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Sapletal also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Stacy Sapletal, 1760 Concordia Street, Wayzata, MN 55391. Sapletal is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Sapletal also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Peter Goldring, 131 Lions Court, Freehold, NJ 07728.  Goldring is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Goldring also has knowledge that there are multiple instances of more than one (1) pet residing in one

(1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Tara Goldring, 131 Lions Court, Freehold, NJ 07728.  Goldring is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations.  Goldring also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Robyn Lawson, 4000 South Ocean Blvd., #601, South Palm Beach, FL 33480. Lawson has knowledge of all the allegations set forth in the Third-Party Complaint, including, but not limited to why (i) on July 14, 2021, Burnett sent a letter on behalf of the Association to David, requesting certain unlawful information from David regarding a service animal named Zeus that resides in Unit, and advising David that the Association was "unable to approve the requested reasonable accommodation at this time because it requires information from your medical professional[,]" despite the fact that the Association had previously approved Zeus to reside in the Unit as a service animal, as evidenced by, among other things, multiple emails sent by McFadden; (ii) on July 20, 2021, Burnett sent a letter to, among others, 303 LLC, David, and Megan alleging that the Lease was for six (6) months based on the Forged Lease, the Invented Conversation, and the Invented Allegations; (iii) on July 30, 2021, Burnett filed a complaint against 303 LLC, and David, seeking to force 303 LLC to evict David on the grounds (a) that the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (b) the Invented Allegations; (iv) on August 18, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, seeking to force 303 LLC to evict (a) David on the grounds that (i) the Lease expired on July 24, 2021, based upon the Forged Leases, and the Invented Conversation; and (ii)  the Invested Allegations; and (b) Megan, because she was an alleged "guest," despite the fact that the Association approved her as a resident of the Unit, as evidenced by the $150.00 check from Megan cashed by the Association, and the approval of Megan's application submitted in connection with same; and (v) on November 19, 2021, Burnett filed a second amended complaint against 303 LLC, David, and Megan, lying that the prior iterations of the complaint alleged that the subject lease was for six (6) months due to "confusion," when such was really alleged in an surreptitious attempt to cover up the Association's, McFadden's and the Board's, nefarious conduct in creating, causing to be created, or knowing the falsity of, the Forged Leases, inventing the Invented Conversation, and engaging in a premeditated campaign to create the Invented Allegations. McFadden also has knowledge of the facts and circumstances regarding Wolf getting in Megan's face, and yelling "niggers don't belong here[,]" as well as the interview of David, and Megan, Mr. Rosati conducted after which he advised that that David's two (2) year lease was approved, and that Zeus was approved to reside in the Unit as a service animal. Ms. Lawson also has knowledge

that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Robin Wheelock, 710 West Brow Road, Lookout Mountain, TN 37350. Wheelock is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Wheelock also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Argil Wheelock, 710 West Brow Road, Lookout Mountain, TN 37350. Wheelock is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Wheelock also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Sabrina Benjamin, 206 Lynam Road, Stanford, CT 06903. Benjamin is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Benjamin also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Daniel Benjamin, 206 Lynam Road, Stanford, CT 06903. Benjamin is a member of the Association, and has knowledge of the fact that the Association (i) approved the Lease as a two (2) year Lease (ii) approved Megan as a resident; (iii) approved Zeus as a service animal prior to Burnett's initial letter; (iv) invented the Invested Conversation; and (v) invented the Invented Allegations. Benjamin also has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

Edward Lepselter, c/o Christopher S. Salivar, Esq., Christopher S. Salivar P.L.L.C, 6576 Whispering Wind Way Delray Beach, FL 33484. Mr. Lepselter has knowledge that the Lease was a two (2) year lease, that Zeus was approved to reside in the Unit as a service animal, and that the Forged Leases were not submitted by 303 LLC, Ms. Manzo, David, Megan, or Roy Gelber.

Roy Gelber, 1111 NW 74th Terrace, Plantation, FL 33313. Mr. Gelber has knowledge that the Lease was a two (2) year lease, that Zeus was approved to reside in the Unit as a service animal, and that the Forged Leases were not submitted by 303 LLC, Ms. Manzo, David, Megan, or Edward Lepselter.

Donna Childrey, 2300 W. Sample Rd. #310, Pompano Beach, FL 33073. Childrey is the Association's property manager. She has knowledge that there are multiple instances of more than one (1) pet residing in one (1) unit in the Building, and that that many dogs residing in units located in the Building are in excess of 20 lbs.

3.      Have you heard or do you know about any statement or remark made by or on behalf of any party or non-party to this lawsuit other than yourself, concerning any issue in this lawsuit? If so, state the name(s) and address(es) of each person who made the statement or statements, the name(s) and address(es) of each person who heard it, and the date, time, place and substance of each statement.

**RESPONSE:**

Megan heard Wolf get in her face and yell "niggers don't belong here!"

I, and Megan, heard Lawson tell us that Wolf admitted to him that he yelled at Megan "niggers don't belong here[,]" and excused such because, according to Lawson, Wolf was old.

I, and Davis, heard McFadden yell at Davis "[w]e are fucked Todd…how did he get that video? We are trying to get him out!"

Roy Gelber Gelber heard McFadden tell him that the Board was trying to evict me in July 2021, because I was running around the Building waiving a gun.

4.      Identify in explicit detail each and every element of monetary damages which you contend you sustained as a direct and proximate legal cause of the said allegations to which reference is made in Plaintiff's Complaint or any amendments thereto, including in your response to this Interrogatory.

**RESPONSE:**

At this juncture, I cannot quantify the exact amount of my damages, as they continue to accrue, but I reasonably believe them to be $1,525,000.00. My damages include attorneys' fees, and costs, incurred as a result of the Board's institution, and prosecution, of the different iterations of the frivolous state court complaint, as well as damages for the severe emotional distress I have suffered as a result of Defendants' diabolical actions and harassment.

a.      The name(s) and business address(es) of each and every person who participated in the calculation of any such damages.

**RESPONSE:**  Myself and Megan, whose addresses are set forth above.

b.    The methodology which was used and/or otherwise relied upon in determining the said amount of damages referenced in response to this Interrogatory.

**RESPONSE:**  The damages were based upon the severe emotional distress, and suffering, Defendants' conduct has caused me, as well as the attorneys' fees that I have incurred thus far, and will continue to incur, in the frivolous state court action.

c.    Identify and/or describe each and every document and/or other tangible material which was relied upon in determining the said amount of damages referenced in response to this Interrogatory.

**RESPONSE:**  The documents relied upon have been previously provided.

5.    Explain in detail all actions, if any, that you have taken to mitigate your alleged damages herein?

**RESPONSE:**   I could not take any actions to mitigate my damages, nor do I believe I had a duty to do so.

6.    If the answer to Interrogatory No. 5 is "none", explain in detail why such action(s) were not/have not been undertaken to date?

**RESPONSE:**  There could be no mitigation, as unfortunately I am unable to travel back in time and alter the Defendants' reprehensible, retaliatory conduct directed towards me.  Moreover, such conduct continues as of the date hereof.

7.    State in specific detail all facts which support your claims in the Complaint herein against Defendants Mary McFadden and MAC Residential Management Services, LLC.

**RESPONSE:**   David objects to this Request as overly broad and unduly burdensome, as the facts supporting the claims in the Complaint are set forth therein.

8.    State in specific detail all facts which support your claims in paragraph 9 of Plaintiff's Complaint which states "... McFadden violated the FHA (defined below) because McFadden personally implemented and enforced the Association's retaliatory conduct towards Plaintiffs".

**RESPONSE:**   McFadden, in her capacity as the Property Manager for the Association, participated in the forgery of at least one lease by, among other things, altering, causing to be altered, or having knowledge of the altering of, the lease(s) for the Unit.  Indeed, according to Burnett, McFadden is the individual who provided her with at least 1 version of the forged lease.  McFadden went so far as

to even lie and state that she had a conversation with Manzo during which time she wrote the purported lease term on a forged version of the lease, which the Association has admitted in the state court complaint never occurred. Additionally, McFadden harassed me with invented allegations of purported violations of Rules and Regulations that never occurred. Also, as set forth in multiple documents produced in this litigation, and the state court litigation, McFadden herself was the individual that conveyed the Association's approval of Zeus as a service animal, yet she authorized, or had knowledge of, Burnett's sending me the July 14, 2021, email which in an of itself violated the FHA, because the Association already approved Zeus as a service animal.

9.   State in specific detail all facts which support your claims in paragraph 21 of Plaintiff's Complaint which states "Unfortunately for Defendants, while it may appear to be 1956 in the fiefdom that is the association they govern, and operate, it is 2021, and the deplorable acts of the Defendants, acting in concert, with the sole and exclusive purpose of ousting David, and Megan, from their home, is not tolerated under the law".

**RESPONSE:**  The Defendants conspired to oust myself, because they did not want Zeus to continue to reside in the building despite the fact that the Association already approved him as a service animal, and Megan, because she is African-American. The laws the Defendants violated, and the retaliatory conduct complaint of in this proceeding, were unfortunately more generally accepted in the 1950's than they are today, as evidenced by the fact that the FHA itself exists. The Defendants' deplorable acts include Wolf yelling a racial slur at Megan.

10.   State in specific detail all facts which support your claims in paragraph 55 of Plaintiff's Complaint which states "When Dunn noticed that Megan was African-American, she told her mother "well that ain't going to work," as Dunn had previous knowledge of the Association's prior discrimination, including harassing a lesbian couple that resided in the Unit before David, Megan, and Zeus, as well as making racial slurs".

**RESPONSE:** Ms. Dunn advised the statement was made.

11.   State in specific detail all facts which support your claims in paragraph 56 of Plaintiff's Complaint which states "Dunn's words would prove to be prophetic, as the Defendants were about to embark on a premeditated slash and burn campaign against David, Megan, and Zeus".

**RESPONSE:**  See responses to Interrogatory Nos. 2, 3, 8, 9, and 10.

12.   State in specific detail all facts which support your claims in paragraph 67 of Plaintiff's Complaint which states "Remarkably, McFadden, doing the Defendants' bidding, was attempting to intimidate Manzo into getting rid of David, Megan, and

Zeus, because Zeus was a Dobermann, a fact that was disclosed to the Association, Rosati, and McFadden, in the Service Animal Application, the identification pictures, and the vaccination records, that David provided to McFadden, and in the interview with Rosati".

**RESPONSE:**  Please see the document attached hereto at Exhibit "A," and the additional correspondence previously produced evidencing same.

13.    State in specific detail all facts which support your claims in paragraph 71 of Plaintiff's Complaint which states "David reiterated to McFadden, who was aware of the racist remarks made to Megan, that "[t]he racist shit is being stopped as well and I am getting the police involved. Megan is fearing for her life.""

**RESPONSE:**  Please see document attached hereto at Exhibit "B."

14.    State in specific detail all facts which support your claims in paragraph 79 of Plaintiff's Complaint which states "The harassment continued. The Defendants were fabricating arguments against David, and Zeus, a protected service animal, while ignoring the fact that the barking was emanating from a unit on the same floor as the Unit that is owned by Laurie Marchel ("Marchel"), a member of the Board, and the Vice President of the Association".

**RESPONSE:**  Please see document attached hereto at Exhibit "C."

15.    State in specific detail all facts which support your claims in paragraph 91 of Plaintiff's Complaint which states "The Forged Lease was not a part of the Lease, and was not prepared by Manzo, Lepselter, Gelber, or Manzo.

**RESPONSE:**  Please see document attached hereto at Exhibit "D."  I also refer you to my deposition testimony, as well as the deposition testimony of Ed Lepselter, and Roy Gelber.

16.    State in specific detail all facts which support your claims in paragraph 92 of Plaintiff's Complaint which states "Rather, it was prepared by, or at the behest of, one, or more, of the Defendants, in an attempt to get rid of David, Megan, and Zeus".

**RESPONSE:**  Other than myself (possibly), Lepselter, Gelber, and Manzo, all of whom have denied forging the subject lease, these are the only individuals that were in possession of a copy of the Word version of a template utilized to formulate a portion of the subject lease.  This appears to be the document from which page 2 was removed and utilized as part of the forged lease.  See document attached hereto at Exhibit "E."

17.    State in specific detail all facts which support your claims in paragraph 96 of

Plaintiff's Complaint which states "The State Court is predicated on the Forged Lease, and alleges that the Lease Term is only for 6 months, and therefore, David, and Megan, are not authorized to reside in the Unit".

**RESPONSE:** The state court complaint speaks for itself, and attaches the Forged Lease as an exhibit. Additionally, as set forth in greater detail herein, and as admitted by Nora Andoras at her deposition, the subject lease was not for 6 months. Indeed, after being cornered, the Association admitted that the subject lease was not for a 6 month term, as set forth in the Second Amended Complaint filed in the state court proceeding.

18.   State in specific detail all facts which support your claims in paragraph 97 of Plaintiff's Complaint which states "The Amended Complaint is replete with lies, and based upon a document that was created by, or at the best of, one or more of the Defendants".

**RESPONSE:** Please see responses to Interrogatory Nos. 2, 3, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17.

19.   State in specific detail all facts which support your claims in paragraph 99 of Plaintiff's Complaint which states "To the contrary, McFadden, like all of the Defendants, were well aware that the Lease Term was 2 years, as evidenced by the above, and the exhibits attached hereto".

**RESPONSE:** McFadden was aware that the Association approved a two (2) year lease term as a result of, among other things, Rosati's approval of such after he interviewed Megan and I via Zoom.

20.   State in specific detail all facts which support your claims in paragraph 107 of Plaintiff's Complaint which states "As enumerated in detail above, and confirmed by McFadden when she yelled at Davis on July 15, 2021, Defendants have engaged in multiple, despicable, acts of retaliatory conduct against Plaintiffs including, among other things:

• Wolff yelling at Megan "niggers don't belong here!"
• Making up lies about David violating non-existent rules and regulations of the Association
• Causing Ms. Burnett to demand information from David regarding Zeus in order for him to be approved by the Association as a service animal, when he was already approved approximately 6 months earlier
• Trying to intimidate Manzo into causing 303 to evict David, and Megan
•      • Filing the State Court Case

**RESPONSE:** The deplorable conduct enumerated above are the facts which support the claims.

21.     State in specific detail all facts which support your claims in paragraph 108 of Plaintiff's Complaint which states "Defendants' flagrant acts of intimidation, threats, and interference with David's, and Megan's, exercise of their fair housing rights constitutes a violation of the Fair Housing Act".

**RESPONSE:** Please see response to Interrogatory Nos. 2, 3, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20.

22.     State in specific detail all facts which support your claims in paragraph 113 of Plaintiff's Complaint which states "Defendants acted recklessly or intentionally".

**RESPONSE:** Defendants knew that the lease was a 2 year lease, that Zeus was approved as a service animal, and that Wolf racially accosted Megan. Yet they purposefully, and willfully, engaged in retaliatory conduct against Megan, because she is African-American, and myself, because Zeus was living with me as a service animal.

23.     State in specific detail all facts which support your claims in paragraph 114 of Plaintiff's Complaint which states "The conduct complained of herein was outrageous, and went beyond all bounds of decency, and is regarded as odious and utterly intolerable in a civilized community".

**RESPONSE:** I challenge anyone to state that the retaliatory conduct exhibited by the Defendants against myself, and Megan, including the use of the word nigger, was not such.

24.     State in specific detail all facts which support your claims in paragraph 115 of Plaintiff's Complaint which states "The conduct caused Plaintiffs severe emotional distress".

**RESPONSE:** I am forced to live like a prisoner in my own home. In addition to the multiple, nefarious, retaliatory conduct exhibited towards me, I feel like a prisoner in my own home. Defendants have installed cameras to watch me, and hired private investigators to follow me. All of this has caused me to suffer severe distress, as it would cause any individual to do so.

## ANSWERS TO INTERROGATORIES

I HEREBY ACKNOWLEDGE that the Answers to the foregoing Interrogatories are true and correct to the best of my knowledge and belief.

Signed this _25th_ day of _MARCH_ 2022.

Plaintiff William David Wilcox, Jr a/k/a David Wilcox

By: _[signature]_
Name: _William David Wilcox JR_
As Its:
Date: _25th MAR 2022_

## ACKNOWLEDGMENT

Before me, the undersigned authority, on this day, appeared William David Wilcox a/k/a David Wilcox, personally known to me or otherwise identified as indicated below, and who, upon oath did state she executed and/or attested to the accuracy and truthfulness of the foregoing answers to the Interrogatories and the information contained in said answers is true and correct.

STATE OF FLORIDA            )
COUNTY OF PALM BEACH        )

Sworn and subscribed to on this _25th_ day of _March_ 2022.

_____
Notary Public In and For The State of Florida

**CAROLINA NATALIA PERALES**
Notary Public - State of Florida
Commission # HH 069155
My Comm. Expires Dec 25, 2024
Bonded through National Notary Assn.

Personally known to me

Identified by presentation of identification _DRIVERS LICENSE_