UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE No.: 9:21-CV-81565-DMM

---

WILLIAM DAVID WILCOX JR. a/k/a DAVID WILCOX, an individual, and MEGAN DANIELLE LUCHEY, an individual,

        Plaintiffs,

v.

LA PENSEE CONDOMINIUM ASSOCIATION, INC., a Florida Not-For-Profit Corporation; MARY MCFADDEN, an individual; MAC RESIDENTIAL MANAGEMENT SERVICES, LLC, a Florida Limited Liability Company; and DAVID WOLFF a/k/a DAVID WOLF, an individual,

        Defendants.

---

REMOTE VIDEOTAPED DEPOSITION

OF

WILLIAM DAVID WILCOX, JR.

Taken on behalf of the Defendants

Date Taken: August 8, 2022
Time:       9:31 a.m.

Examination of the witness taken via Zoom before:

Emily Scott, stenographic reporter
United Reporting, Inc.
1218 SE 3rd Avenue
Fort Lauderdale, Florida 33316

United Reporting, Inc.
(954) 525-2221

```
 1      A.   Yeah.  I mean, we are on the road a lot; but
 2 when I need to work, I've got a trading setup at my
 3 home, yes.
 4      Q.   So there -- there is no physical office for me
 5 to go visit Evolution Metals, if I wanted to?
 6      A.   If you want to go to London, I guess.  There
 7 is not one in Florida.
 8      Q.   There is not in Florida, but there is one in
 9 London?
10      A.   Yeah, you could go to London, if you wanted
11 to.
12      Q.   Can you tell me, what is your current address
13 where you reside?
14      A.   Where I reside, 4000 South Ocean Boulevard,
15 Unit 303, South Palm Beach, Florida 33480.
16      Q.   Is that the address reflected on your driver's
17 license?
18      A.   No.  I think it's 516 South Dixie Highway.
19      Q.   Where did you live before La Pensee?
20      A.   A few places.  I've lived -- I've lived in
21 London enough of a stint; in Montreal, Montreal, New
22 York, Knoxville, Memphis, Palm Beach, I guess.
23      Q.   Do you have another residence in Palm Beach?
24      A.   No.
25      Q.   Have you been involved in other lawsuits,
```

1 other than this one, in the past --
2    A.   Personally?
3    Q.   Yes, personally, in the past five years.
4    A.   No.
5    Q.   Nobody has filed a lawsuit against you, other
6 than the state court proceeding, and you haven't filed
7 any lawsuits against anybody, other than this federal
8 lawsuit; is that correct?
9    A.   On a personal basis, no.
10   Q.   Okay.
11   A.   Not that I know of.
12   Q.   Now, let's talk about the lease at La Pensee.
13        When did you start residing at La Pensee
14 Condominium?
15   A.   January 25th, 20- -- 2021, I received the keys
16 and did the walk-through with Val Manzo, who is the unit
17 owner, through her LLC, his name is Ed Lepselter, on
18 January 24th, which was a Sunday.
19   Q.   And how long was your lease supposed to --
20 what was the length of your lease?
21   A.   It was two years.
22   Q.   Two years.
23        And then your position is that that was a
24 two-year lease that you entered into with La Pensee 303,
25 LLC?

1    A.   I've read it.
2    Q.   **So your position here is that the association**
3 **acted against you because you had a service animal by**
4 **the name of Zeus and Ms. Luchey was African American,**
5 **correct -- or is African American?**
6    A.   She asserted -- she asserted her claim; I
7 asserted my claim, correct.
8    Q.   **So your claim is that they tried to remove**
9 **Zeus, your service dog; that's your claim?**
10   A.   Correct.
11   Q.   **Okay.  And Ms. Luchey's claim is that they**
12 **retaliated against her because she is African American,**
13 **correct?**
14   A.   That's her claim.  That's what it states, but
15 that's her claim.  I'm not to comment on that.
16   Q.   **I'm just trying to understand, your claim is**
17 **solely the service dog, that they tried to remove the**
18 **service dog?**
19        MR. TYGAR:  Objection, it calls for a legal
20     conclusion.
21        Obviously he was being thrown out because she
22     was African American, as well, and that's inherent
23     in the claim.
24        MR. ISRAEL:  Mr. Tygar, speaking objections
25     are improper.  Okay.  I don't want to play this

```
 1  word to her, correct?
 2       A.   Correct.
 3       Q.   Okay.  Were you in the elevator with
 4  Ms. Luchey at the time that this took place?
 5       A.   No.  It says it right there, number 58.
 6       Q.   It was just -- it was just Ms. Luchey and
 7  Mr. Wolf allegedly, correct?
 8       A.   That's what it says.
 9       Q.   Right.  So my statement is correct:  It was
10  just Ms. Luchey and Mr. Wolf, correct?
11       A.   Well, which statement are you referring to?
12       Q.   Okay.  Who was in the elevator when the --
13  when Mr. Wolf, allegedly, stated to Ms. Luchey this
14  derogatory remark, the "N" word?
15       A.   Wolf and Luchey.
16       Q.   Okay.  You were not --
17       A.   It says it right there.
18       Q.   Yeah, that's all I'm asking; you were not
19  there?
20       A.   Right.
21       Q.   Ms. McFadden was not there?
22       A.   I don't think so, no.  She didn't -- Megan
23  didn't tell me that.
24       Q.   Okay.  And nobody from MAC Residential
25  Services was there, correct?
```

Page 102

1  neighbor, Valentina Kraver, has four dogs and a cat that
2  lives there.
3       And then, you know, guys like David Wolf have
4  nuisance dogs that bark all the time.  They haven't had
5  any issues with Megan's dog or emotional support animal.
6       Q.   Bear with me for a second.
7       A.   No problem.
8       Q.   Let me share a document.
9            Do you see the document that's on the screen,
10 Mr. Wilcox?
11      A.   Yes.
12      Q.   Okay.  Are you familiar with this document?
13           Take your time.  Take a look at it.  Let me
14 know if you need it bigger or smaller.
15      A.   Yeah, I'm familiar with it.
16      Q.   Okay.  This is a police report dated
17 February 24th, 2021, in which you called the police to
18 report the claimed incident between Ms. Luchey and
19 Mr. Wolf, correct, that we've discussed prior to the
20 break?
21      A.   No, I don't think so.
22      Q.   No?  Okay.
23           So it's -- it says here that 2/24/2021, at
24 approximately 1334 hours, I was dispatched to a
25 complaint of neighbor troubles at 4000 South Ocean

United Reporting, Inc.
(954) 525-2221

Page 103

1  Boulevard, South Palm Beach, Palm Beach County, Florida,
2  33480.
3          That's the address for La Pensee Condominium
4  Association, correct?
5      A.  Correct.
6      Q.  The complainant, David William -- I'm sorry,
7  the complainant, William Wilcox, stated he wished to
8  speak to a deputy regarding racial slurs made by other
9  residents towards him.
10         Is that what it says?
11     A.  Correct.
12     Q.  Okay.  Who made racial slurs towards you?
13     A.  I don't know how that's written that way.  I
14 didn't have a racial slur made towards me.
15     Q.  Okay.  Nobody ever made a racial slur towards
16 you, right?
17     A.  No.  They were made towards Megan Luchey, who
18 informed me of them, for her being African American.
19     Q.  Okay.  So upon arrival, Sergeant Garrison and
20 I made contact with Wilcox at his apartment, number 303.
21 Wilcox was identified by Florida driver's license and
22 was asked to explain what had occurred.  Wilcox stated
23 that the incident he was calling about occurred
24 approximately two weeks ago, and at that time, another
25 resident who told his girlfriend, not present at the

United Reporting, Inc.
(954) 525-2221

1  time of this call, that -- and I'm not going to repeat
2  what it says; the document speaks for itself, but it
3  uses the "N" word, and it's in quotes.
4         So you were calling on behalf of Ms. Luchey to
5  report the incident that allegedly took place between
6  Ms. Luchey and Mr. Wolf, correct?
7     A.   No.
8     Q.   You were not.  Okay.  So tell me what -- what
9  is in -- what I'm getting that is incorrect here about
10 what's stated in this report.
11    A.   Ms. Luchey called and bridged me onto the
12 phone, and I was the one in the unit when the police
13 came out.  And we called Ms. Luchey from the dining room
14 table with the Deputy Hul and I believe the sergeant,
15 some sort; it was two police officers, that said, you
16 know, although this is terrible, blah, blah, blah, you
17 know, we can't really do anything about it, first
18 amendment rights or some -- something like that, and
19 said, the owner --
20         Now, this was Megan saying, actually:  The
21 owner said we needed to document it with the police, and
22 that's what we were doing.
23    Q.   Okay.  So what I'm getting wrong, according to
24 you, is that it wasn't you, the one that called; it was
25 Ms. Luchey, allegedly, the one that called, correct?

1    A.   Correct.

2    Q.   Okay.  And she happened to be out of the
3 apartment at the time the police arrived, but you were
4 there?

5    A.   Correct.  She had gone to -- I think she had
6 gone to work, I think, so I was the one that was there.
7 It was a nonemergency type, one of those situations.  I
8 think it was a couple hours or something before they
9 came.

10   Q.   And you guys got her on the phone.  You and
11 the police officer got her on the phone to discuss the
12 incident?

13   A.   Yes, sir.

14   Q.   Okay.

15   A.   Correct.

16   Q.   Okay.  And you stated, as it says on page two,
17 that it was explained that the alleged statement was
18 maybe offensive, but it did not constitute a criminal
19 act, correct?

20   A.   What it says.

21   Q.   Okay.  And further down, the -- I'd say the
22 second-to-last paragraph, because the last paragraph is
23 just a sentence, it states that they spoke to Mr. Wolf
24 and he was concerned about escalation of harassment or
25 confrontations with you.

Page 162

1  just being abused, and also someone attempting to steal
2  $25,000 from you, which was Laurie Marchel, because I
3  prepaid the first year's rent, I mean, anybody should
4  just leave, right?  They should just take it on the chin
5  and walk away.
6      Q.  **When you say they abused your legal rights,**
7  **you're referring to trying to remove, allegedly, Zeus**
8  **from the unit?**
9      A.  Again, it's not alleged, so that's an
10 inaccurate statement.  It's fact.  It's documented by
11 Becker & Poliakoff, on behalf of the association, that,
12 yes, they were trying to remove me, because Megan was
13 African American, who would be considered a dependent, a
14 girlfriend of mine; and because of my service animal,
15 Zeus.
16          And the service animal is documented.  It's
17 from Becker & Poliakoff, 5 months and 20 days or 21 days
18 into it, claiming I have ten days to rectify the
19 situation or remove an animal from the property.
20      Q.  **Okay.  Zeus has been with you since**
21 **January 2021 at unit 303 at La Pensee Condominium,**
22 **correct?**
23      A.  Correct.
24      Q.  **Okay.  You've never been without Zeus at unit**
25 **303 at La Pensee Condominium?**

Page 163

1    A.    Correct.
2    **Q.    The association did not remove Zeus from unit**
3 **303 at La Pensee Condominium, correct?**
4    A.    Well, you can't just -- they attempted to, but
5 I didn't comply with their demands of --
6    **Q.    Yeah, but --**
7    A.    -- federal law in attempting to remove him,
8 Megan, myself, and some unknown person.
9    **Q.    The dog is still there, living with you?**
10    A.    Not there right now, but he is still there,
11 correct --
12    **Q.    Right.**
13    A.    -- and so am I.
14    **Q.    Right.  Okay.  The dog is there with you?**
15    A.    They filed a lawsuit and retaliated,
16 Mr. Israel.  You know what they did.  I mean, you can
17 dance around the answer --
18    **Q.    That's not what I'm asking.  I understand.**
19    A.    -- but we know what happened.
20    **Q.    But the dog is there with you; that's a fact?**
21    A.    That's a fact, and I am there, and that's a
22 fact; and Megan Luchey was there up until approximately
23 two weeks ago, and that's a fact.
24         MR. ISRAEL:  Okay.  Let's take five minutes,
25     if people don't mind, and we'll be right back.

United Reporting, Inc.
(954) 525-2221