Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE No.: 9:21-CV-81565-DMM

_____

WILLIAM DAVID WILCOX JR. a/k/a DAVID WILCOX, an individual, and MEGAN DANIELLE LUCHEY, an individual,

    Plaintiffs,

v.

LA PENSEE CONDOMINIUM ASSOCIATION, INC., a Florida Not-For-Profit Corporation; MARY MCFADDEN, an individual; MAC RESIDENTIAL MANAGEMENT SERVICES, LLC, a Florida Limited Liability Company; and DAVID WOLFF a/k/a DAVID WOLF, an individual,

    Defendants.
_____

REMOTE DEPOSITION

OF

MEGAN LUCHEY

Taken on behalf of the Defendants

Date Taken:  May 4, 2022
Time:        9:30 a.m.

Examination of the witness taken via Zoom before:

Emily Scott, stenographic reporter
United Reporting, Inc.
1218 SE 3rd Avenue
Fort Lauderdale, Florida 33316

United Reporting, Inc.
(954) 525-2221

```
 1     A.   No.
 2     Q.   You've never sued anybody?
 3     A.   In state court.
 4     Q.   Okay.  Do you know how many lawsuits in state
 5 court you have filed?
 6     A.   No.
 7     Q.   Was it more than one?
 8     A.   Probably.
 9     Q.   More than three?
10     A.   I'm not sure.
11     Q.   Okay.  Have you ever filed a domestic violence
12 complaint against anybody?
13     A.   No.
14     Q.   So your testimony is you've never filed a
15 domestic violence complaint against Mr. Wilcox?
16     A.   I have not.
17          On March 31st, someone, using my identity,
18 filed a civil petition for an injunction for protection
19 against dating violence with the Palm Beach County Court
20 against David Wilcox.  This was not me.
21          David Wilcox was served with that fraudulent
22 petition on April 5th, 2022, at our home.
23          I referred the matter for criminal
24 investigation.  I have never been a victim of any
25 violence by David Wilcox, nor have I made any statements
```

Page 14

1  of the same; and, again, the statements and allegations
2  contained in that petition are not mine.
3           Per the advice of counsel, I will not be
4  commenting on -- any further on that matter.
5           MR. STARKS:  Mr. Israel, this is Michael
6      Starks.
7           MR. ISRAEL:  Yeah.
8           MR. STARKS:  I move to strike that answer.
9      She is clearly reading from another screen.
10          MR. ISRAEL:  Correct.
11          That's a prepared answer, and I fully agree.
12     I wanted her to finish her answer.
13          I am entitled to ask you about that filing.
14     If your counsel wants to object, then so be it.
15 BY MR. ISRAEL:
16     Q.   **So did your counsel prepare that statement for**
17 **you?**
18     A.   I have --
19          MR. LUBLINER:  Hold on.
20          I'm going to object and instruct her not to
21     answer.
22          MR. ISRAEL:  You have --
23          MR. MARCHESE:  Hang on.
24          This is Andrew Marchese for the association.
25          On what basis are you instructing her not to

Page 185

```
 1      A.   Two.
 2      Q.   Do you know how much the dogs weigh?
 3      A.   No, you would have to ask him; but, I mean, I
 4  would say about 40 pounds.
 5      Q.   Together or each?
 6      A.   Each.
 7      Q.   And how big is Zeus?
 8      A.   You have the video, about 70 pounds.
 9      Q.   Okay.
10      A.   Two 40-pound aggressive dogs.
11           When an animal is aggressive, weight doesn't
12  matter as much.  Zeus was scared.
13      Q.   Okay.  Did they do anything to Zeus?
14      A.   They attempted to.  David was able to get in
15  the middle in time.
16      Q.   I see.
17           They didn't touch Zeus, correct?
18      A.   Correct.
19      Q.   Did they bite Mr. Wilcox?
20      A.   No.
21      Q.   Is this an incident where Mr. Wilcox was
22  waiting with Zeus at the elevator, and the door opened,
23  and the dog came out?  Is that the incident you are
24  referring to, or is this another incident?
25      A.   No, this is the incident when the dogs lunged
```

United Reporting, Inc.
(954) 525-2221