IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT,
IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO. 50-2021-CA-009343-XXXX-MB

LA PENSEE CONDOMINIUM
ASSOCIATION, INC., a Florida
not-for-profit corporation,

      Plaintiff,

v.

LE PENSEE 303, LLC, a New York Limited
Liability Company, WILLIAM DAVID WILCOX,
Individually, and
MEGAN DANIELLE LUCHEY,

      Defendants.

_____/

## SECOND AMENDED COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, LA PENSEE CONDOMINIUM ASSOCIATION, INC., a Florida not-for-profit corporation, (hereinafter "ASSOCIATION"), hereby sues Defendants, LA PENSEE 303, LLC, (hereinafter "OWNER") WILLIAM DAVID WILCOX, Individually as ILLEGAL OCCUPANT ("ILLEGAL OCCUPANT 1"), and MEGAN DANIELLE LUCHEY, ("ILLEGAL OCCUPANT 2") (collectively "ILLEGAL OCCUPANTS") and states as follows:

1.     This is an action for injunctive relief and other equitable relief pursuant to Section 718.303 of the Florida Statutes, seeking the immediate and permanent removal of ILLEGAL OCCUPANTS, from 4000 South Ocean Boulevard, Unit 303, South Palm Beach, Florida, 33480, requiring OWNER to permanently remove the ILLEGAL OCCUPANTS and prevent any further improper occupancy of the Unit in contravention of the ASSOCIATION's governing documents, and to comply with the ASSOCIATION's governing documents in all respects.

## I.     The Parties

2.      Plaintiff ASSOCIATION is a Florida not-for-profit corporation, and a condominium association, organized and operating pursuant to Chapter 718 of the Florida Statutes and its governing documents.  The ASSOCIATION is the entity responsible for the operation, administration and management of the property known as La Pensee, Condominium.

3.      LA PENSEE 303, LLC is the record title OWNER of the real property located at 4000 South Ocean Boulevard, Unit 303, South Palm Beach, Florida, 33480 ("the property").  The Member of OWNER is Valerie Manzo.

4.      Defendant, WILLIAM DAVID WILCOX, ILLEGAL OCCUPANT 1 is a tenant whose lease was believed to have expired on July 24, 2021,[1] due to OWNER's prior practice of entering into six (6) month leases, and the fact that the lease terms (page 2 of the Lease Agreement) were not provided to the Association, and is otherwise sui juris.

5.      Defendant, MEGAN DANIELLE LUCHEY, ILLEGAL OCCUPANT 2, is a guest or occupant of the property and is otherwise sui juris.

6.      The property is located in Palm Beach County, Florida and therefore, venue is proper in Palm Beach County, Circuit Court.

7.      This Court has subject matter jurisdiction over the property and the Defendants as all are located in Palm Beach County, Florida.

8.      All conditions precedent to filing this Amended Complaint have been satisfied.

---

[1] Although the Association believed the Lease Agreement was for a six (6) month term, upon reviewing the Lease Agreement sent on January 7, 2021 from Edward Lepsleter to Roy Gebler, and then from Roy Gebler to the Association's Manager, the Security and Full Rental Fee Deposit indicates "a 12 month lease" between La Pensee 303, LLC and William David Wilcox.  Page 2 of the Lease Agreement, which contained the lease term, was blank causing the confusion in the actual lease term. Based on what was provided to the Association prior to approving the Lease Application, it appears the lease term was 12 months and that is what was approved.

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

9.      The Association has retained the undersigned to represent it in this matter and is obligated to pay its attorney's fees and costs incurred in this matter.

## II. Factual Allegations

10.      ILLEGAL OCCUPANT 1 entered into a Lease Agreement with La Pensee 303, LLC to lease the property.  A copy of the Lease Agreement was provided to the Association, through its Manager, Mary McFadden, on January 7, 2021 at 9:22 p.m. from  Roy Gelber at Value Realty Associates, LLC.  The Lease Agreement is attached hereto as Exhibit "A".

11.      The email referenced above is titled "LaPensee Standard Lease Agreement" and contains an email from Edward Lepselter to Roy Gelber forwarding the Lease Agreement referenced above.  The email thread dated January 7, 2021 is attached hereto as Exhibit "B".

12.      Edward Lepselter was the realtor for OWNER and Roy Gelber was the realtor for ILLEGAL OCCUPANT(S).

13.      The Lease Agreement is 10 pages and attaches a "Security and Full Rental Fee Deposit Receipt" (2 pages) stating that the lease is for "a 12 month lease term" for the property. Page 2 of the Lease Agreement is blank.  That page should have contained the duration of the lease term.  The Lease Agreement also contained a blank "Move-In Checklist" (6 pages).  Each of the eighteen (18) pages of the Lease Agreement and attachments are consecutively numbered pages 1 – 18 with the exception of page 2 which is blank.  Each page was initialed by OWNER and ILLEGAL OCCUPANT 1.

14.      The Association continued to request a copy of "Page 2" of the Lease Agreement from OWNER, Manzo, the real estate agents and the brokers, to no avail.

15.      On July 1, 2021, Gelber provided a copy of an unsigned lease agreement to McFaddon.  A Copy of the unsigned lease agreement is attached as Exhibit "C".

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

16.     Finally, in response to numerous requests for page 2 of the Lease Agreement, on or about July 8, 2021, a second version of the Lease Agreement was provided to the ASSOCIATION's Manager.  A copy is attached as Exhibit "D".

17.     This version of the Lease Agreement contained a "Page 2" which was clearly not part of the original Lease Agreement.  Page 2 is a completely different font, ends mid-sentence and does not dovetail into Page 3.  Also, every page of the original Lease Agreement, was initialed by all parties.  This version of "Page 2" was not initialed by anyone.

18.     While ILLEGAL OCCUPANT attempts to muddy the waters and claims the Association "forged" these leases, these allegations are false and disingenuous, at best.  These leases were provided by OWNER, ILLEGAL OCCUPANT 1, or their agents, including their realtors and brokers.

19.     Based upon the Association demanding the removal of the ILLEGAL OCCUPANT due to the belief that the lease expired on July 24, 2021, and based upon the nuisance conduct and health and safety issues created by ILLEGL OCCUPANT 1, and despite OWNER's and Manzo's statements that "she was not involved in the application process", Manzo provided a Lease Agreement with a different "Page 2", along with the "Security and Full Rental Fee Deposit Slip" on July 20, 2021 via email.  A copy of the third version of the Lease Agreement is attached as Exhibit "E", along with Manzo's email.

20.     The third version of the Lease Agreement contains a "Page 2" which purportedly changed the lease term from one year to two years with an expiration date of January 24, 2023. Oddly, the third Lease Agreement, which purportedly changes the lease term to two years, does not even mention the payment of rent for the second year.  Instead, it only addresses payment of

one year of lease payments.  Further, the Association does not permit two-year lease terms so the Association did NOT, nor could it have, approved this version of the Lease Agreement.

21.     Accordingly, the Association could not have approved a two year lease term. This is further bolstered by the fact that the Association was never provided a copy of this version of the purported Lease Agreement until July 21, 2021.

22.     The ASSOCIATION has not approved, nor will it, any further or continued leases to ILLEGAL OCCUPANTS.

23.     Despite the one year Lease Agreement, which theoretically should terminate on January 24, 2022, ILLEGAL OCCUPANT 1 must be removed from the property based upon his improper, nuisance, threatening and harassing conduct toward other residents, the Board, Management and staff.  ILLEGAL OCCUPANT 2 is not a party to the Lease Agreement and therefore, must also be removed.

24.     Article IX of the ASSOCIATION's Amended and Restated Declaration of Condominium ("Declaration") states, in relevant part:

> Every owner of a condominium unit whether he/she has acquired title by purchase from the Developer, the Developer's grantee, successor or assigns, or by gift, conveyance, or by operation of law, is bound to and hereby agrees that he/she shall accept membership in the Condominium Association described in Article VII hereinabove, and does hereby agree to be bound by The Condominium Act, Chapter 718, Florida Statutes, this Declaration, the Articles of Incorporation of the Association, the By-Laws of the Association and the Rules and Regulations enacted pursuant thereto and any amendments thereto.  Membership is automatic upon acquisition of the ownership of a condominium unit and may not be transferred apart and separate from a transfer of the ownership of the unit. Membership shall likewise automatically terminate upon sale or transfer of the unit, whether voluntary or involuntary.

A copy of Article IX of the Association's Declaration is attached as Exhibit "F".

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

25.     Section 5.2.5 of the ASSOCIATION's Amended and Restated Bylaws provides the

Board with the power to:

> 5.2.5   To perform any other act necessary or proper to carry out the provisions of this Declaration, the Articles or By-Laws as expressed or implied therein, or any other thing reasonably necessary to promote the common health, safety, recreation or welfare of the Owners, family members, residents, guests, visitors and invitees.

A copy of Section 5.2.5 of the Amended and restated Bylaws is attached as Exhibit "G".

26.     Article XI (c) of the Declaration  provides:

> . C.   **Rental or Lease of Apartment** - Apartments can only be rented or leased one time in any twelve (12) month period.   A $100.00 non-refundable processing charge is to be attached to all rental/purchase applications, which must be approved by a majority vote of the Board of Directors prior to the tenant taking possession.
>
> In addition to any and all provisions contained elsewhere governing the leasing/rental of units in La Pensee, the following apply:
>
> 1.   Unit owner must provide any member of the Board with written request to lease/rent the subject unit.   Each request must reflect the term of the lease and name(s) of potential tenant.
>
> 2.   Any member of the Board will schedule an interview with the potential tenant.   All such interviews including requested information will be the same as conducted for potential owners as in the case of the sale of a unit. A minimum of two directors will conduct the interview.
>
> 3.   At the scheduled interview, the Board members will review all rules and regulations with the potential tenant and require the potential tenant to sign an acknowledgement that they agree to be subject to all La Pensee rules and regulations and to abide by same.
>
> 4.   The Board will notify the unit owner of its decision.
>
> 5.   The unit owner bears all responsibility for any problem encountered with any tenant and the Association may enforce this Declaration against the unit owner and the Lessee.

A copy of Article XI(c) of the Association's Declaration is attached as Exhibit "H".

27.     Article XI(A)(a)(7) of the Declaration of Condominium, provides:

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

7.   **Noise**

No apartment owner shall make or permit to be made any disturbing noise in his apartment or the common areas, which will interfere with the rights and reasonable comfort and convenience of other owners. No disturbing work should begin in anyone's apartment until 9:00 a.m. and work must cease by 5:00 p.m. No work by a contractor is permitted on Sundays or Holidays.

A true copy of Article XI(a)(a)(7) of the Declaration is attached hereto as Exhibit "I".

28.     OWNER is improperly permitting ILLEGAL OCCUPANTS to occupy the property despite notification that ILLEGAL OCCUPANT 1 is creating a nuisance and health and safety risk to the residents, Board of Directors, Management and staff, within the community.

29.     ILLEGAL OCCUPANT 1 has tormented an entire community for nearly a year.  ILLEGAL OCCUPANT 1 is aggressive, threatening and harassing to other residents, board members and staff.  His conduct interferes with the operations of the condominium.  He has chased Board Members on the property, as well as residents.  He uses foul language and is abusive to the residents, the Board of Directors, the manager and staff of the Association.  He demands items he is not entitled to as a tenant.  For example, he demanded that a staff member provide copies of camera video, despite the fact that he is not entitled to it.  The staff member felt threatened as ILLEGAL OCCUPANT 1 berated him and threatened him if it was not provided.

30.     This is further evidenced by the Police Reports attached hereto as Composite Exhibit "J".

31.     The first Police Report, dated February 24, 2021, stems from a call ILLEGAL OCCUPANT 1 placed to the police regarding a racial slur allegedly made two weeks prior. ILLEGAL OCCUPANT 1 advised the police that a Board Member made a racial slur directed at

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

his ILLEAGAL OCCUPANT 2. The Board Member denied making any such comment and the police found there was no crime. ILLEGAL OCCUPANTS waited two weeks to call the police and report this false statement because earlier that day, ILLEGAL OCCUPANT 1 ran into the Board Member in the elevator and decided to chase him off the elevator while screaming and threatening him. Likely incited by the Board Member's refusal to engage in this threatening and harassing dialogue, ILLEGAL OCCUPANT 1 called the police to again cause a rift in the community and to attempt to disparage someone he dislikes.

32.     The Police Report dated February 24, 2021, states:

> UPON ARRIVAL SGT GARRISON (ID#35918) AND I MADE CONTACT WITH WILCOX AT HIS APARTMENT, #303. WILCOX WAS IDENTIFIED BY FLORIDA DRIVERS LICENSE, AND WAS ASK TO EXPLAIN WHAT HAD OCCURRED. WILCOX STATED THE INCIDENT HE WAS CALLING ABOUT OCCURRED APPROXIMATELY TWO WEEKS AGO, AND AT THAT TIME ANOTHER RESIDENT HAD TOLD HIS GIRLFRIEND (NOT PRESENT AT THE TIME OF THIS CALL) THAT "NIGGERS DON'T BELONG HERE." WILCOX STATED HE KNEW THE RESIDENT WHO MADE THE STATEMENTS AS DAVID WOLF WHO RESIDED IN APARTMENT #604. WILCOX FURTHER STATED HE WAS

33.     ILLEGAL OCCUPANT alleged to the Police that two weeks prior, another resident told his girlfriend (ILLEGAL OCCUPANT 2) that a racial slur was made. The girlfriend was not present to corroborate the alleged story.

34.     Interestingly, ILLEGAL OCCUPANT 1's recitation of this encounter to the Police differs from the allegations now contained in various pleadings filed in this case and in the Southern District of Florida. Specifically, paragraph 53 of ILLEGAL OCCUPANTS counterclaim states:

> 53.     On or about February 10, 2021, as Megan was exiting the Building's elevator, Wolff got in Megan's face, and yelled "niggers don't belong here!"

35.     Obviously, ILEGAL OCCUPANTS have fraudulently misrepresented the alleged

racial slur incident to the Police and/or to the Courts or both.

36.     The second Police Report, dated April 8, 2021, arose out of a phone call ILLEGAL OCCUPANT 1 again made to the police alleging that two of his neighbors were "snorting" cocaine on their balcony. As evidenced by the report, when the police arrived, they found nothing to support this allegation.  The police questioned ILLEGAL OCCUPANT 1 about why he suspected cocaine use.  According to the report, ILLEGAL OCCUPANT 1 advised the Deputies that his dog can sniff cocaine and is a certified drug dog.  The police found no probable cause to believe any illegal drug use occurred and advised IILEGAL OCCUPANT that nothing further could be done.

37.     The report states:

```
        I INFORMED WILCOX I DIDN'T OBSERVE ANY SUSPICIOUS ACTIVITY ONLY TWO
SUBJECTS SITTING ON THEIR BALCONY. I ASKED WILCOX IF HE HAD ANY PRIOR NEIGHBOR
ISSUES WITH THE PEOPLE ON THE BALCONY AND HE TOLD ME HE HAD SOME PRIOR VERBAL
ALTERCATIONS WITH THEM BEFORE. WILCOX ALSO HAD A THIRD INCIDENT WITH ANOTHER
NEIGHBOR ON THE SIX FLOOR. ( CASE # 21-038898 )
        I REFEREED WILCOX TO FOLLOW UP WITH HIS HOA AND HIS RESPONSE WAS THEY
NEVER DO ANYTHING. D/S ALEXANDRE TOLD HIM THERE IS NOTHING FURTHER THAT CAN BE
DONE AT THIS TIME. WILCOX BECAME AGITATED BECAUSE ALEXANDRE TOLD HIM NOTHING
ELSE COULD BE DONE. HE DEMANDED TO SPEAK WITH ME AWAY FROM D/S ALEXANDRE. I
SPOKE WITH HIM PRIVATELY AS HE ALSO BECAME UPSET WITH ME AND REQUESTED TO
SPEAK WITH A SUPERVISOR. I INFORMED WILCOX A SGT. WAS EN ROUTE.  D/S ALEXANDRE
AND I STOOD AWAY FROM WILCOX TO DE-ESCALATE ANY FURTHER SITUATION UNTIL SGT.
SPERBECK AND SGT. STUBBLEBINE'S ARRIVAL. WILCOX BECAME UPSET WITH ME FOR
WALKING AWAY FROM HIM AND DEMANDED I COME BACK. I INFORMED HIM I WAS STANDING
BY WITH MY PARTER UNTIL A SUPERVISOR ARRIVED.
        SERGEANT SPERBECK GAVE WILCOX A SWORN STATEMENT WHICH HE COMPLETED. WHILE
READING OVER THE SWORN STATEMENT I OBSERVED INCONSISTENCIES. WILCOX WROTE HE
SMELLED A STRONG ODOR OF MARIJUANA COMING FROM THE 2ND FLOOR UNIT #203.
HOWEVER, HE STATED TO D/S ALEXANDRE AND I THE NEIGHBORS APPEARED TO BE
SNORTING COCAINE. IT WAS ALSO DOCUMENTED WITH COMMUNICATION IN CAD HE COULD
SEE THE SUBJECTS SNORTING DRUGS FROM THE ROADWAY.
        THIS REPORT IS FOR INFORMATIONAL PURPOSES ONLY.
```

38.     The report details ILLEGAL OCCUPANT 1's conduct and concluded he became agitated and upset and requested to speak with a supervisor.  The Deputies moved to a separate location to "de-escalate" the situation.  ILLEGAL OCCUPANT then demanded that one Deputy

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

stand with him which the Deputy refused to do.  ILLEGAL OCCUPANT prepared a sworn statement in which the Deputies noticed inconsistencies.  ILLEGAL OCCUPANT now alleged there was a strong odor of marijuana coming from the unit but he told the Deputies, as evidenced in CAD, that second floor occupants were snorting cocaine.  Again, ILLEGAL OCCUPANT 1 is found to have provided inconsistent statements about what allegedly occurred.

39.     Even more telling is that ILLEGL OCCUPANT 1 admitted that he had previously had some "prior verbal altercations" with the second floor occupants.  This likely resulted in ILLEGAL OCCUPANT 1 filing another false complaint with police.

40.     The third Police Report, dated July 15, 2021, stems from ILLEGAL OCCUPANT 1 again contacting the police alleging another dog attacked his "service dog".  Upon reviewing the footage, the Deputy concluded that there was no contact made between the dogs or their owners and again, no crime was committed.

41.     The report also reflects the staff member's fear of ILLEGAL OCCPANT 1 based on prior interactions.

42.     ILLEGAL OCCUPANT 1 threatens anyone who challenges him.  He has started baseless rumors and defamed others.  He had a party and one of his intoxicated guests vomited off the balcony – hitting each balcony below.  In ILLEGAL OCCUPANT 1's Counterclaim, he alleges that Liza Dunn, a Unit Owner below, stated there was no vomit, but rather, it was "unprocessed food" that was leftover from a Board Meeting that fell from some other unit.  The Board of Directors do not hold Board Meetings in Units within the Association.  In fact, Liza Dunn is the Unit Owner that reported the vomit to the Association and demanded that it be cleaned.  This is

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

yet another inconsistency in ILLEGAL OCCUPANT 1's allegations.

43.     ILLEGAL OCCUPANT 1 makes it known to everyone that he has a concealed-weapons permit and is carrying a gun at all times to threaten and frighten the community, which he has successfully accomplished.  He has infested the unit with moths and has placed moth balls throughout the apartment.  The smell is so pungent that it has seeped into the third floor hallway and down to the lobby.  ILLEGAL OCCUPANT 1 was advised that moths are brought into a unit or home on a person or in luggage.  He was also advised to have the moth problem treated which he and OWNER have failed to do.  Instead, the building smells like moth balls because of one tenant.  OWNER was notified and refused to remedy the violation.

44.     ILLEGAL OCCUPANT 1 recently sent every resident of the community a document reflecting another resident's prior arrest eleven (11) years prior for the sole purpose of harassing and embarrassing the resident.

45.     Recently, ILLEGAL OCCUPANT 1 provided a delivery driver with the access code to the gate so a package could be delivered. That is not permitted and has put the safety of the residents in jeopardy.  The code is required to be kept confidential for the safety and protection of the residents.  It is not to be given out for a package delivery because a resident does not wish to pick up a package at the proper drop-off location.

46.     On September 6, 2021, ILLEGAL OCCUPANT 1 chased the Board President on South Ocean Boulevard while each were walking their dogs.  ILLEGAL OCCUPANT 1 screamed profanities at the President, threatened him physically, and harassed him to the point that a Unit Owner in another community contacted an Owner in La Pensee to aid the President.  This was

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

witnessed by others, as well.   The Police were called and when questioned, ILLEGAL OCCUPANT 1 advised that he had not threatened anyone and of the Police Officer had any other questions, he could contact his lawyer.  See Police Report attached hereto as Exhibit "K".  There was an additional, very recent, altercation in which Wilcox screamed at the Board President and threatened, harassed and intimidated while walking their dogs.

47.     ILLEGAL OCCUPANT 1's conduct interferes with other owners and occupants' ability to fully use and enjoy their property. ILLEGAL OCCUPANT 1 harasses and intimidates other residents, especially Board Members, by refusing to move out of the way to allow people to safely exit the elevator, all while ensuring that his large dog blocks the elevator doors, as well.

48.     ILLEGAL OCCUPANT's conduct interferes with the ASSOCIATION's ability to operate and manage the condominium.

49.     ILLEGAL OCCUPANT's conduct has terrorized a community and will not be tolerated.

50.     As a courtesy, the Association, through counsel, sent OWNER correspondence advising that ILLEGAL OCCUPANTS must be permanently removed from the property or a lawsuit would be filed.  ILEGAL OCCUPANTS remain in the Unit.

## COUNT I – INJUNCTIVE RELIEF

51.     Plaintiff incorporates by reference paragraphs 1 – 50 as if fully set forth herein.

52.     DEFENDANTS have violated the Association's governing documents and therefore, the Association has a clear legal right to an injunction.

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

53.     ASSOCIATION, and members of the ASSOCIATION (other home owners in the community), are suffering irreparable harm and have no adequate remedy at law.  The flagrant violations of the Association's documents undermine the ASSOCIATION's ability to operate and maintain the Association's property.  Other Residents are fearful of coming in contact with ILLEGAL OCCUPANT 1 because of his threatening and abusive conduct.  Residents are unable to use and enjoy their units and the common elements.  Moreover, where a violation of the governing documents occurs, irreparable harm is presumed.

54.     When a party seeks an injunction to prevent a violation of a restrictive covenant, the party establishes a prima facie case by presenting evidence showing the violation. *Killearn Acres Homeowners Assn v Keever*, 595 So.2d 1018 (1st DCA 1992). Irreparable injury is not required to be shown to enjoin a violation of a restrictive covenant affecting property. *Blue Reef Holding Corp., Inc. v. Coyne*, 645 So.2d 1053 (4th DCA 1994).

55.     The injury and potential harm caused by OWNER's and ILLEGAL OCCUPANTS', collectively, refusal to comply with the Association's documents outweighs the harm, if any, that an injunction would have on them.

56.     All conditions precedent to filing suit have been satisfied or waived.

57.     Plaintiff, ASSOCIATION, is entitled to an injunction requiring all Defendants to comply with the governing documents and the immediate and permanent removal of ILLEGAL OCCUPANTS from Unit 303.

58.     Plaintiff, ASSOCIATION, has retained the undersigned law firm to represent it in this matter and is obligated to pay said counsel a reasonable fee, and is entitled to recover said reasonable attorney's fees and costs from OWNER and ILLEGL OCCUPANTS, collectively, in

accordance with Section 718.303, Florida Statutes, as well as the Association's governing documents.

WHEREFORE, Plaintiff, ASSOCIATION respectfully requests this Court to enter an Order granting a permanent injunction as follows:

A.      Directing OWNER, LA PENSEE 3030, LLC through its sole Member, VALERIE MANZO to immediately and permanently remove ILLEGAL OCCUPANT, WILLIAM DAVID WILCOX, and ILLEGAL OCCUPANT, MEGAN DANIELLE LUCHEY, from the property;

B.      Directing all Defendants to immediately and permanently abide by the Association's governing documents, in all respects;

C.      Award Plaintiff, ASSOCIATION, its reasonable attorney's fees and costs against OWNER and ILLEGAL OCCUPANTS for pursuing this action, the Association's right to which, is more fully detailed above; and

D.      Grant such other and further relief as this court may deem just and equitable.

## <u>COUNT II - DECLARATORY RELIEF</u>

59.     Plaintiff incorporates by reference paragraphs 1 – 22 and 24 – 25, as if fully set forth herein.

60.     This is an action for declaratory relief, concerning the term of the Lease Agreement between La Pensee 303, LLC and ILLEGAL OCCUPANT 1.

61.     Based upon the allegations set forth herein, the Association is in doubt as to its legal rights, and is entitled to a declaratory judgment finding that the Lease Agreement term is one year and anything exceeding one year would violate the Governing Documents.

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

62.     The issues set forth in this action are real, not theoretical, and the parties have an actual, present, and practical need for a declaration of their rights and responsibilities regarding the actual term of the Lease Agreement, as discussed above.

63.     Specifically, the Association has taken action and continues to take action to assert its rights to enforce the terms of the Governing Documents related to leases of a Unit in this Association, while Defendants have refused to comply with the one year restriction on all leases.

64.     The relief sought is based on ascertainable facts, and no advisory opinion is sought.

65.     There exists a substantial, immediate, justiciable controversy between the parties hereto.

66.     The parties have *bona fide* adverse and antagonistic legal interests entitling them to a declaration of their legal rights by this Court.

67.     All parties with interests in such declaration are before the Court.

68.     The Association has no adequate remedy at law for the damages resulting directly and proximately from the Defendants' ongoing breach of the Governing Documents.

**WHEREFORE,** the Association asks the Court to enter a Declaratory Judgment, determining that the term of the Lease Agreement between La Pensee 303, LLC and ILLEGAL OCCUPANT 1 is for 12 months, beginning January 25, 2021 and ending on January 24, 2021, and requiring all Defendants to comply with the terms of the Governing Documents, awarding the

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

Association its reasonable attorneys' fees and costs of suit herein, and providing such other and further relief as the Court may deem appropriate.

> BECKER & POLIAKOFF, P.A.
> *Attorneys for Plaintiff*
> 1 East Broward Blvd., Suite 1800
> Fort Lauderdale, FL 33301
> Telephone: (954) 985-4192
> Facsimile:  (954) 985-4176
> Primary jburnett@beckerlawyers.com
> Secondary kmanning@beckerlawyers.com
>
> By: _____
>       JOANN NESTA BURNETT
>       Florida Bar No. 128600

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that pursuant to Fla. R. Jud. Admin. 2.516(b)(1), a true and correct copy of the foregoing was electronically filed with the Clerk of Court via the Florida Courts E-Filing Portal on November 19, 2021, which sends a copy via email to all counsel of record in the above-captioned matter identified on the attached Service List.

> BECKER & POLIAKOFF, P.A.
> *Attorneys for Plaintiff*
> 1 East Broward Blvd., Suite 1800
> Fort Lauderdale, FL 33301
> Telephone: (954) 985-4192
> Facsimile:  (954) 985-4176
> Primary jburnett@beckerlawyers.com
> Secondary kmanning@beckerlawyers.com
>
> By: _____
>       JOANN NESTA BURNETT
>       Florida Bar No. 128600

## SERVICE LIST

Richard S. Lubliner, Esquire
LUBLINER LAW PLLC
1645 Palm Beach Lakes Blvd., Suite 1200
West Palm Beach, Florida 33401
Phone: 561-207-2018
Fax: 561-584-7227
Email: rich@lubliner-law.com
Email: carolina@lubliner-law.com
*Attorney for Defendants Le Pensee 303,*
*William David Wilcox and*
*Megan Danielle Luchey*

Cody German, Esquire
Andrew G. Simon, Esquire
COLE, SCOTT & KISSANE, P.A.
Cole, Scott & Kissane Building
9150 South Dadeland Boulevard, Suite 1400
P.O. Box 569015
Miami, Florida 33256
Phone: (786) 268-6415
Fax: (305) 373-2294
Email:  cody.german@csklegal.com
Email:  andrew.simon@csklegal.com
Alternate Email: magaly.triana@csklegal.com
Alternate e-mail: lisa.butts@csklegal.com
*Attorney for Third Party Defendants*
*John Lawson, Robert Rosati, Nermin Andraos*
*And Laurie Marchel*

LAW OFFICES
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD. • SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

15885003v.1

# EXHIBIT A

# STANDARD LEASE AGREEMENT

(FIRST AMENDMENT ATTACHED)

**FOR LEASE BEGINNING JANUARY 25, 2021**

*NOTE:  THIS AGREEMENT HAS A CHECKLIST AT THE END. TENANT AND REALTOR MUST FILL IT OUT TOGETHER UPON WALK-THROUGH AT RECEIPT OF THE KEYS.  PHOTOS NEEDED.*

This Agreement, dated *January 5, 2021,* by and between a business entity as follows: *VALERIE S. MANZO, MEMBER, LA PENSEE 303, LLC,* with a mailing address of 16 DE MONT STREET, SMITHTOWN, New York, 11787-1906, hereinafter known as the **"Landlord",**

AND

*WILLIAM DAVID WILCOX, JR.,* currently of West Palm Beach, Fla, and *MEGAN DANIELLE LUCHEY,* 371 Winters St. WPB,Fl. 33406, each hereinafter known as the "Tenant", agree to the following:

**OCCUPANT(S):** The Premises is to be occupied strictly as a residential dwelling with only the Tenants mentioned above as the Occupants.

**OFFER TO RENT:** The Landlord hereby rents to the Tenant, subject to the following terms and conditions of this Agreement, and a First Amendment, a condominium with the address of *4000 SOUTH OCEAN BOULEVARD, APARTMENT 303, SOUTH PALM BEACH, Florida, 33480,* consisting of 3.5 bathroom(s) and 3 bedroom(s) hereinafter known as the "Premises". The Landlord may also use the address for notices sent to the Tenant.

**PURPOSE:** The Tenant may only use the Premises as a **residential dwelling**. It may not be used for storage, manufacturing of any type of food or product, professional service(s), or for any commercial use unless otherwise stated in this Agreement.  NOTE THE CONDOMINIUM MAY HAVE ADDITIONAL RULES, WHICH WILL BE PROVIDED BY CONDOMINIUM MANAGEMENT, MARY MC FADDEN, LA PENSEE OFFICE MANAGER, PRIOR TO ACCEPTANCE OF APPLICATION TO RESIDE IN THE CONDOMINIUM, LA PENSEE, BY TENANT.

**FURNISHINGS:** The Premises is not furnished.

**APPLIANCES:** The Landlord shall provide the following appliances:  Dishwasher, Dryer (for Laundry), Fan(s), Hot Water Heater, HVAC, Microwave, Oven(s), Radiator(s), Refrigerator, Stove(s), Washer (for Laundry), and all other appliances to be provided by the Tenant(s). Any damage to the Landlord's appliances shall be the liability of the Tenant(s), reasonable wear-and-tear excepted, to be billed directly or subtracted from the Security Deposit.   There is also Central Air Conditioning and heat provided by Landlord, but paid for by Tenant.

Page 1

15 days after this Agreement has terminated if there are no deductions. If there are deductions to the Security Deposit the balance shall be returned within 30 days from termination of this Agreement. Should there be any dispute over said Security, there may be further delay but unless litigation is commenced, it shall not extend beyond 90 days from termination.

**The Security Deposit shall not be credited towards rent ~~unless the Landlord gives written consent.~~**

**POSSESSION**: Tenant(s) has examined the condition of the Premises and by taking possession acknowledges that they have accepted the Premises in good order and in its current condition except as herein otherwise stated. Failure of the Landlord to deliver possession of the Premises at the start of the Lease Term to the Tenant(s) shall terminate this Agreement at the option of the Tenant(s). Furthermore, under such failure to deliver possession by the Landlord, and if the Tenant(s) cancels this Agreement, the Security Deposit (if any) shall be returned to the Tenant(s) along with any other pre-paid rent, fees, including if the Tenant(s) paid a fee during the application process before the execution of this Agreement.

*NOTE TO REALTORS:* **AT TURNOVER OF THE APARTMENT AND THE KEYS, TENANT AND REALTOR WILL TAKE PHOTOGRAPHS OF THE CONDITION OF PREMISES. IT MUST BE RETURNED IN THE SAME ORDER AND REPAIR, LESS REASONABLE WEAR AND TEAR. REALTOR AND TENANT SHALL fill out the CHECKLIST AT THE END OF THIS AGREEMENT.**

**ACCESS**: Upon approval by the Board and receipt and clearance of check and Lease, plus Amendments, Landlord agrees to give access to the Tenant(s) in the form of keys, fobs, cards, or any type of keyless security entry as needed to enter the common areas and the Premises. Duplicate copies of the access provided may only be authorized under the consent of the Landlord and, if any replacements are needed, the Landlord will provide them for a fee. At the end of this Agreement all access provided to the Tenant(s) shall be returned to the Landlord or a fee will be charged to the Tenant(s) or subtracted from the Security Deposit.

**MOVE-IN INSPECTION**: Before, at the time of the Tenant(s) accepting possession, or shortly thereafter, the Landlord and Tenant(s) shall perform an inspection documenting the present condition of all appliances, fixtures, furniture, and any existing damage within the Premises. If Landlord cannot be present on that date, property manager on site and/or realtor shall be present on the move-in date, to confirm condition.

**SUBLETTING**: The Tenant(s) shall not have the right to sub-let the Premises or any part thereof.

**ABANDONMENT**: If the Tenant(s) vacates or abandons the property for a time-period that is the minimum set by State law or seven (7) days, whichever is less, the Landlord shall have the right to terminate this Agreement immediately and remove all belongings including any personal property off of the Premises. If the Tenant(s) vacates or abandons the property, the Landlord shall immediately have the right to terminate this Agreement.

Page 3

**ASSIGNMENT:** Tenant(s) shall not assign this Lease without the prior written consent of the Landlord. The consent by the Landlord to one assignment shall not be deemed to be consent to any subsequent assignment.

**PARKING:** The Landlord shall provide the Tenant(s) 2 Parking Spaces.  (one is below the building in a garage, one is across the street). The Landlord shall not charge a fee for the 2 Parking Spaces. The Parking Space(s) can be described as: (see Addendum)

**RIGHT OF ENTRY:** The Landlord shall have the right to enter the Premises during normal working hours by providing notice in accordance with the minimum State requirement in order for inspection, make necessary repairs, alterations or improvements, to supply services as agreed or for any reasonable purpose. ~~The Landlord may exhibit the Premises to prospective purchasers, mortgagees, or lessees upon reasonable notice.~~   TENANT MAY NOT CHANGE LOCKS OR ADD ADDITIONAL LOCKS ON DOORS.

**UTILITIES:** The Landlord agrees to pay for the following utilities and services:   Basic Cable, Lawn Care, Trash Removal, Water, (via the La Pensee Condominium), with all other utilities and services to be the responsibility of the Tenant(s).  CABLE IS AS PROVIDED BY LA PENSEE. TENANT MUST PICK UP THE CABLE BOX. ANY ADDITIONAL CABLE SERVICE, INCLUDING TELEPHONE AND DATA, IS AT TENANT'S OPTION AND EXPENSE.

**MAINTENANCE, REPAIRS, OR ALTERATIONS:** The Tenant(s) shall, at their own expense and at all times, maintain premises in a clean and sanitary manner, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. The Tenant(s) may not make any alterations to the leased premises without the consent in writing of the Landlord. The Landlord shall be responsible for repairs to the interior and exterior of the building.

ALL APPLIANCES WILL BE MAINTAINED BY TENANT IN GOOD ORDER. ANY DAMAGE TO SAME IS TENANT'S RESPONSIBILITY BUT IF APPLIANCES, HEAT OR A/C FAIL, DUE TO NORMAL WEAR AND TEAR, LANDLORD WILL ASSUME COST OF REPAIR, PROVIDED TENANT ARRANGES FOR SERVICEPERSON TO RENDER THE APPLIANCE OR SERVICE USABLE. IN NO EVENT WILL FEE TO REPAIR PERSON BE DEDUCTED FROM RENT by Tenant. LANDLORD WILL MAKE ARRANGEMENTS FOR PAYMENT TO SERVICEPESON, DIRECTLY BETWEEN LANDLORD OR LANDLORD'S PROPERTY MANAGER, PRIOR TO ARRIVAL OF SERVICEPERSON.

**SMOKE DETECTORS:**  The Landlord will place fresh batteries in all battery-operated smoke detectors when the Tenant(s) moves into the premises. After the initial placement of the fresh batteries, it is the responsibility of the Tenant(s) to replace batteries when needed. A monthly "cursory" inspection may be required for all fire extinguishers to make sure they are fully charged.

**EARLY TERMINATION:** The Tenant(s) may not be able to cancel this Agreement, pursuant to terms of all Agreements herein, except that a Tenant who is a victim of Domestic Violence may be able to lawfully terminate, as provided by US, Florida and Palm

*[Handwritten left margin: WSM — Proof of negative CoViD test within 72 hours required]*

Page 4

Beach County Laws and Regulations. In such case, the Tenant may be able to cancel in accordance with any local, state, or federal laws.

*PETS/SERVICE DOG*: The Tenant(s) shall be allowed to have:  One (1*) pet* on the Premises consisting of Cats, Dogs, Fish, with no other types of Pet(s) being allowed on the Premises or common areas, hereinafter known as the "Pet(s)". The Tenant(s) shall NOT be required to pay a "pet SECURITY fee", typically in this region in the amount of $500 (refundable at the end of the Lease Term if there is no damage to the Premises that is caused by the Pet(s), in this case.  **INASMUCH AS TENANT HAS A *SERVICE ANIMAL* (A DOG), DOCUMENTARY PROOF OF STATUS AS A SERVICE ANIMAL IS REQUIRED FOR LANDLORD AND LA PENSEE CONDOMINIUM TO WAIVE ITS CUSTOMARY PET RESTRICTIONS, AND FOR LANDLORD TO WAIVE CUSTOMARY ADDITIONAL *PET SECURITY* FEES.** However, it remains Tenant responsibility to repair any and all damage that any SERVICE ANIMAL may cause, regardless of ownership of said SERVICE ANIMAL, and TENANT agrees to restore the property to its original condition at TENANT expense. There shall be a limit on the weight of any of the individual pet of 20 pounds (lbs.), unless it is a SERVICE ANIMAL.

**AT TIME OF SIGNING LEASE TENANT HAS THE FOLLOWING PETS:  one _____ (type of animal) WEIGHING:  _____.**

**NOISE/WASTE**: The Tenant(s) agrees not to commit waste on the premises, maintain, or permit to be maintained, a nuisance thereon, or use, or permit the premises to be used, in an unlawful manner. The Tenant(s) further agrees to abide by any and all local, county, and State noise ordinances.

**GUESTS**: There shall be no other persons living on the Premises other than the Tenant(s) and any Occupant(s). Guests of the Tenant(s) are allowed for periods not lasting for more than 2 WEEKS unless otherwise approved by the Landlord.    THIS IS A RULE OF LA PENSEE.

**SMOKING POLICY**: Smoking on the Premises is prohibited on the entire LA PENSEE property, including individual units, common areas, every building and adjoining properties.

**COMPLIANCE WITH LAW**: The Tenant(s) agrees that during the term of the Agreement, to promptly comply with any present and future laws, ordinances, orders, rules, regulations, and requirements of the Federal, State, County, City, and Municipal government or any of their departments, bureaus, boards, commissions and officials thereof with respect to the premises, or the use or occupancy thereof, whether said compliance shall be ordered or directed to or against the Tenant(s), the Landlord, or both.

**DEFAULT**: If the Tenant(s) fails to comply with any of the financial or material provisions of this Agreement, or of any present rules and regulations or any that may be hereafter prescribed by the Landlord, or materially fails to comply with any duties imposed on the Tenant(s) by statute or State laws, within the time period after delivery of written notice by the Landlord specifying the non-compliance and indicating the intention of the Landlord to terminate the Agreement by reason thereof, the Landlord may terminate this Agreement. If the Tenant(s) fails to pay rent when due and the default continues for the time-period

Page 5

specified in the written notice thereafter, the Landlord may, at their option, declare the entire balance (compiling all months applicable to this Agreement) of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to the Landlord at law or in equity and may immediately terminate this Agreement.

The Tenant(s) will be in default if: (a) Tenant(s) does not pay rent or other amounts that are owed in accordance with respective State laws; (b) Tenant(s), their guests, or the Occupant(s) violate this Agreement, rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (c) Tenant(s) abandons the Premises; (d) Tenant(s) gives incorrect or false information in the rental application; (e) Tenant(s), or any Occupant(s) is arrested, convicted, or given deferred adjudication for a criminal offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (f) any illegal drugs or paraphernalia are found in the Premises or on the person of the Tenant(s), guests, or Occupant(s) while on the Premises and/or; (g) as otherwise allowed by law.

**MULTIPLE TENANT(S) OR OCCUPANT(S):** Each individual that is considered a Tenant(s) is jointly and individually liable for all of this Agreement's obligations, including but not limited to rent monies. If any Tenant(s), guest, or Occupant(s) violates this Agreement, the Tenant(s) is considered to have violated this Agreement. Landlord's requests and notices to the Tenant(s) or any of the Occupant(s) of legal age constitutes notice to the Tenant(s). Notices and requests from the Tenant(s) or any one of the Occupant(s) (including repair requests and entry permissions) constitutes notice from the Tenant(s). In eviction suits, the Tenant(s) is considered the agent of the Premise for the service of process.

**DISPUTES:** If a dispute arises during or after the term of this Agreement between the Landlord and Tenant(s), they shall agree to hold negotiations amongst themselves, in "good faith", before any litigation.

**SEVERABILITY:** If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**SHOWING PREMISES TO PROSPECTIVE NEW TENANTS:** Tenant agrees to permit showing of Premises within *45 days of Lease Termination*, upon 24 hours' notice by Realtor to Tenants, and in presence of Tenants.

**SURRENDER OF PREMISES:** The Tenant(s) has surrendered the Premises when (a) the move-out date has passed and no one is living in the Premise within the Landlord's reasonable judgment; or (b) Access to the Premise have been turned in to Landlord – whichever comes first. Upon the expiration of the term hereof, the Tenant(s) shall surrender the Premise in better or equal condition as it were at the commencement of this

Page 6

Agreement, reasonable use, wear and tear thereof, and damages by the elements excepted.

**RETALIATION**: The Landlord is prohibited from making any type of retaliatory acts against the Tenant(s) including but not limited to restricting access to the Premises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures, or any other type of act that could be considered unjustified.

**WAIVER:** A Waiver by the Landlord for a breach of any covenant or duty by the Tenant(s), under this Agreement is not a waiver for a breach of any other covenant or duty by the Tenant(s), or of any subsequent breach of the same covenant or duty. No provision of this Agreement shall be considered waived unless such a waiver shall be expressed in writing as a formal amendment to this Agreement and executed by the Tenant(s) and Landlord.

**EQUAL HOUSING**: If the Tenant(s) possess (es) any mental or physical impairment, the Landlord shall provide reasonable modifications to the Premises unless the modifications would be too difficult or expensive for the Landlord to provide. Any impairment of the Tenant(s) is/are encouraged to be provided and presented to the Landlord in writing in order to seek the most appropriate route for providing the modifications to the Premises.

**HAZARDOUS MATERIALS**: The Tenant(s) agrees to not possess any type of personal property that could be considered a fire hazard such as a substance having flammable or explosive characteristics on the Premises. Items that are prohibited to be brought into the Premises, other than for everyday cooking or the need of an appliance, includes but is not limited to gas (compressed), gasoline, fuel, propane, kerosene, motor oil, fireworks, or any other related content in the form of a liquid, solid, or gas.

**WATERBEDS**: The Tenant(s) is not permitted to furnish the Premises with waterbeds.

**INDEMNIFICATION**: The Landlord shall not be liable for any damage or injury to the Tenant(s), or any other person, or to any property, occurring on the Premises, or any part thereof, or in common areas thereof, and the Tenant(s) agrees to hold the Landlord harmless from any claims for damages unless caused solely by the Landlord's negligence. It is recommended that renter's insurance be purchased at the Tenant(s)'s expense.

**COVENANTS:** The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this Agreement.

NOTICES: Any notice to be sent by the Landlord or the Tenant(s) to each other shall use the following mailing addresses:

Landlord's/Agent's Mailing Address

VALERIE MANZO, Member, LA PENSEE 303, LLC; 16 DE MONT STREET, SMITHTOWN, New York, 11787-1906

Page 7

Tenant(s)'s CURRENT Mailing Address (FILL IN)

_____

**AGENT/MANAGER**: The Landlord's husband, **THOMAS A. DE MARINIS, cell @ 631-942-7109, TDEMARINIS2@OPTONLINE.NET,** of the same address as Landlord, is the Property Manager. All contact or complaint regarding repair, maintenance, or any other matter needing Landlord attention, must go through the Landlord's Property Manager, as follows (emails shall be sent to Landlord as well):

**Landlord's Phone Number: CELL: (516) 456-4672 or office: 631-366-6361; Landlord's Email: VALMANZO@AOL.COM.**

EMERGENCIES ON PREMISES:  TENANT MAY CALL BUILDING (PHYSICAL PLANT) MANAGER:  **TODD DAVIS: 561-951-3145 (HE HAS KEYS AND IS ON LA PENSEE PREMISES).**

BUILDING ASSOCIATION OFFICE MANAGER (OFF-SITE) **MARY MC FADDEN** (SHE HAS RULES AND REGULATIONS, APPLICATION, AND ARRANGES NEEDED APPROVAL OF TENANCY BY THE BOARD OF DIRECTORS OF LA PENSEE, INCLUDING INTERVIEW BY BOARD MEMBER OF TENANTS.

**MARY MC FADDEN WILL, PER LA PENSEE RULES, SUBMIT ~~MEDICAL~~ RECORDS PROVIDED BY TENANT ESTABLISHING NEED FOR ~~THIS ANIMAL TO BE A SERVICE~~ ANIMAL TO A LAWYER HIRED BY THE BOARD, FOR CONFIRMATION OF SAME.**

*[handwritten: Service Animal VdM]*

**PREMISES DEEMED UNINHABITABLE**: If the Property is deemed uninhabitable due to damage beyond reasonable repair the Tenant(s) will be able to terminate this Agreement by written notice to the Landlord. If said damage was due to the negligence of the Tenant(s), the Tenant(s) shall be liable to the Landlord for all repairs and for the loss of income due to restoring the Premises back to a livable condition in addition to any other losses that can be proved by the Landlord.

**ACCESS BY LANDLORD**: The Landlord must provide at least twelve (12) hours notice to the Tenant(s) before entering the Premises for any non-emergency reason. *[handwritten: VdM CadD Yes, 72 hours]*

**RADON GAS**: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

**SECURITY DEPOSIT DISCLOSURE**: YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. ~~THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOU NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF THE LANDLORD'S INTENT TO IMPOSE A CLAIM AGAINST THE DEPOSIT.  IF YOU~~

Page 8

DO NOT REPLY TO THE LANDLORD STATING YOUR OBJECTION TO THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF ANY.  IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE, THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER FILE A LAWSUIT CLAIMING A REFUND.  YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY THE LOSING PARTY. THIS DISCLOSURE IS BASIC, PLEASE REFER TO PART II OF CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR LEGAL RIGHTS AND OBLIGATIONS.

**SERVICEMEMBERS CIVIL RELIEF ACT**: In the event the Tenant(s) is or hereafter becomes, a member of the United States Armed Forces on extended active duty and hereafter the Tenant(s) receives permanent change of station (PCS) orders to depart from the area where the Premises are located, or is relieved from active duty, retires or separates from the military, is ordered into military housing, or receives deployment orders, then in any of these events, the Tenant may terminate this lease upon giving thirty (30) days written notice to the Landlord. The Tenant shall also provide to the Landlord a copy of the official orders or a letter signed by the Tenant's commanding officer, reflecting the change which warrants termination under this clause. The Tenant will pay prorated rent for any days which he/she occupies the dwelling past the beginning of the rental period.

The damage/security deposit will be promptly returned to Tenant, provided there are no damages to the Premises.

**LEAD PAINT**: The Premises was not constructed before 1978 and therefore does not contain lead-based paint.

**GOVERNING LAW**: This Agreement is to be governed under the laws located in the State of Florida.

**APPLICATION**: Tenants shall comply with all rules and regulations, and requirements of LA PENSEE CONDOMINIUM ASSOCIATION AND ITS BOARD OF DIRECTORS, including completion of an application, submission of all document required by said Association, fees needed, including but not limited to service animal proofs, and examination the Board's lawyer of the same, and any and all additional requirements. Tenants shall pay an **application fee of $150.**00 per person, and fill out two (2) separate applications (one each), and pay a **LA PENSEE (separate) security deposit of $250.00.**

**ADDITIONAL TERMS AND CONDITIONS**: In addition to the above stated terms and conditions of this Agreement, the Landlord and Tenant agree to the following: **ALL RULES & REGULATIONS OF LA PENSEE CONDOMINIUM, TO BE PROVIDED BY MARY MC**

Page 9

**FADDEN OR VAL MANZO, ALONG WITH THE FIRST AMENDMENT WHICH IS ATTACHED HERETO AND MADE PART HEREOF.**

**ENTIRE AGREEMENT**: This Agreement contains all the terms agreed to by the parties relating to its subject matter and replaces all previous discussions, understandings, and oral agreements. The Landlord and Tenant(s) agree to the terms and conditions and shall be bound until the end of the Lease Term.

The parties have agreed and executed this agreement on _____, 20___.

LANDLORD(S) SIGNATURE

Landlord's Signature _____

VALERIE MANZO, MEMBER, LA PENSEE 303, LLC

Date: _____

TENANT(S) SIGNATURE

Tenant Signature _____

Print name: _____

Tenant signature _____

Print name: _____

Date: _____

Page 10

*To be signed by landlord when bank check received & key given (1.25.21).*

Security and full rental fee

Deposit Receipt

Date: _Jan 25, 2021_

*[$ 48,600 RENT 3900 Security Deposit]  USM*

THIS DOCUMENT ACKNOWLEDGES RECEIPT OF THE $50,700 FOR THIS 12 MONTH LEASE TERM FOR 4000 SOUTH OCEAN BLVD, SOUTH PALM BEACH, FLA 33480, by the owner, VALERIE S. MANZO, MEMBER, LA PENSEE 303, LLC.

The Landlord shall hold the entire fund, including the $3900 the Security Deposit in a separate account at THE BANK OF AMERICA, located at 30 ROUTE 111, SMITHTOWN, NY 11787 [Street Address] in the TOWN OF SMITHTOWN, State of NEW YORK.

The Security Deposit in the amount of $3900 (US Dollars) and the full one-year rental fee per the Lease Agreement, has been deposited in AN ACCOUNT TITLED **LA PENSEE 303. LLC**, which has as signatory the LLC MEMBER, **VALERIE S. MANZO.**

Thus, Landlord warrants that the full $50,700 shall be held, payable to Landlord for each month of Tenant's residence, for the full performance of Tenant's obligation to pay RENT during the term of the Lease, which Lease Agreement and Amendment has been fully executed by both TENANT AND LANDLORD,

on the _____ day of _____, 2021

Landlord's Signature _____

Tenant Signature _____

Page 11

Tenant Signature: _____

AMOUNT ($) DUE AT SIGNING ~~ENTER~~ *Jan 25, 2021*

Security Deposit: $3900.00 plus 12 months' rent:  $46,800.00

TOTAL:  $50,700.00

Page 12

Move-in Checklist

Property Address: 4000 SOUTH OCEAN BOULEVARD, APARTMENT 303,

SOUTH PALM BEACH, Florida, 33480

Unit Size: 3 Bedroom(s)

Move-in Inspection Date: _____

Move-out Inspection Date: _____

Write the condition of the space along with any specific damage or repairs needed. Be sure to write any repair needed such as paint chipping, wall damage, or any lessened area that could be considered maintenance needed at the end of the lease, and therefore, be deducted at the end of the Lease Term.

**Living Room**

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**Dining Room**

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Page 13

**Kitchen Area**

Stove/Oven Condition _____ Specific Damage_____

Refrigerator Condition _____ Specific Damage_____

Sink/Faucets Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Cabinets Condition _____ Specific Damage_____

Closets Condition _____ Specific Damage_____

Exhaust Fan Condition _____ Specific Damage_____

Fire Alarms Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**Bedroom(s)**

(1)

Doors/Locks Condition _____ Specific Damage_____

Closets Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Page 14

Other Condition _____ Specific Damage_____

#2

Doors/Locks Condition _____ Specific Damage_____

Closets Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

#3

Doors/Locks Condition _____ Specific Damage_____

Closets Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**Bathroom(s)**

**In bedroom #1**

Sink/Faucets Condition _____ Specific Damage_____

Shower/Tub Condition _____ Specific Damage_____

Curtain/Door Condition _____ Specific Damage_____

Towel Rack Condition _____ Specific Damage_____

Toilet Condition _____ Specific Damage_____

Doors/Locks Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific
Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

In bedroom #2

Sink/Faucets Condition _____ Specific Damage_____

Shower/Tub Condition _____ Specific Damage_____

Curtain/Door Condition _____ Specific Damage_____

Towel Rack Condition _____ Specific Damage_____

Toilet Condition _____ Specific Damage_____

Doors/Locks Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

In bedroom #3

Sink/Faucets Condition _____ Specific Damage_____

Shower/Tub Condition _____ Specific Damage_____

Curtain/Door Condition _____ Specific Damage_____

Towel Rack Condition _____ Specific Damage_____

Toilet Condition _____ Specific Damage_____

Doors/Locks Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

IN POWDER ROOM:

Sink/Faucets Condition _____ Specific Damage_____

Shower/Tub Condition _____ Specific Damage_____

Curtain/Door Condition _____ Specific Damage_____

Towel Rack Condition _____ Specific Damage_____

Toilet Condition _____ Specific Damage_____

Doors/Locks Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Page 17

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**GENERAL PREMISE INSPECTION/CONDITION:**

Heating Condition _____ Specific Damage_____

AC Unit(s) Condition _____ Specific Damage_____

Hot Water Heater Condition _____ Specific Damage_____

Smoke Alarm(s) Condition _____ Specific Damage_____

Door Bell Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**I, Tenant on this Lease, have sufficiently inspected the Premises and confirm above-stated information. (only 1 Tenant required)**

**Tenant's Signature** _____ Jan. 25-2021

**I, the Landlord on this Lease, have sufficiently inspected the Premises and confirm above-stated information.**

**Landlord's Signature** _____

Page 18

# EXHIBIT B

.

---------- Forwarded message ---------
From: **Roy Gelber** <roy.gelber@valuerealtyassociates.com>
Date: Thu, Jan 7, 2021 at 9:22 PM
Subject: Fwd: LaPensee Standard Lease Agreement
To: <mmcfadden112909@gmail.com>

---------- Forwarded message ---------
From: <elelep@aol.com>
Date: Thu, Jan 7, 2021 at 5:41 PM
Subject: LaPensee Standard Lease Agreement
To: Roy Gelber <roy.gelber@valuerealtyassociates.com>

Ed Lepselter Remax Advantage Plus
  Boca Raton, Florida
    561-302-9374

--
Regards,

**Roy Gelber** | **Value Realty Associates**®

1

Lic. Real Estate Broker
954.608.1581 /cel
954.323.7885 /tel
954.482.4229 /fax

CONFIDENTIALITY NOTICE: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, the information contained in this e-mail message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the receiver of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited and may violate the legal rights of the others. If you have received this message in error, please immediately notify the sender by replying to this e-mail message and deleting the message and any attachments from your system.

 Virus-free. [www.avg.com](www.avg.com)

# EXHIBIT C

# STANDARD LEASE AGREEMENT

(FIRST AMENDMENT ATTACHED)

**FOR LEASE BEGINNING JANUARY 25, 2021**

*NOTE:  THIS AGREEMENT HAS A CHECKLIST AT THE END. TENANT AND REALTOR MUST FILL IT OUT TOGETHER UPON WALK-THROUGH AT RECEIPT OF THE KEYS.  PHOTOS NEEDED.*

This Agreement, dated ***January 5, 2021***, by and between a business entity as follows**:  *VALERIE S. MANZO, MEMBER, LA PENSEE 303, LLC***, with a mailing address of 16 DE MONT STREET, SMITHTOWN, New York, 11787-1906, hereinafter known as the **"Landlord",**

AND

***WILLIAM DAVID WILCOX, JR.,*** currently of West Palm Beach, Fla, and ***MEGAN DANIELLE LUCHEY***, 371 Winters St. WPB,Fl. 33406, each hereinafter known as the "Tenant", agree to the following:

**OCCUPANT(S):** The Premises is to be occupied strictly as a <u>residential dwelling</u> with only the Tenants mentioned above as the Occupants.

**OFFER TO RENT**: The Landlord hereby rents to the Tenant, subject to the following terms and conditions of this Agreement, and a First Amendment, a condominium with the address of ***4000 SOUTH OCEAN BOULEVARD, APARTMENT 303, SOUTH PALM BEACH, Florida, 33480,*** consisting of 3.5 bathroom(s) and 3 bedroom(s) hereinafter known as the "Premises". The Landlord may also use the address for notices sent to the Tenant.

**PURPOSE**: The Tenant may only use the Premises as a **residential dwelling**. It may not be used for storage, manufacturing of any type of food or product, professional service(s), or for any commercial use unless otherwise stated in this Agreement.   NOTE THE CONDOMINIUM MAY HAVE ADDITIONAL RULES, WHICH WILL BE PROVIDED BY CONDOMINIUM MANAGEMENT, MARY MC FADDEN, LA PENSEE OFFICE MANAGER, PRIOR TO ACCEPTANCE OF APPLICATION TO RESIDE IN THE CONDOMINIUM, LA PENSEE, BY TENANT.

**FURNISHINGS:** The Premises is not furnished.

**APPLIANCES:** The Landlord shall provide the following appliances:  Dishwasher, Dryer (for Laundry), Fan(s), Hot Water Heater, HVAC, Microwave, Oven(s), Radiator(s), Refrigerator, Stove(s), Washer (for Laundry), and all other appliances to be provided by the Tenant(s). Any damage to the Landlord's appliances shall be the liability of the Tenant(s), reasonable wear-and-tear excepted, to be billed

directly or subtracted from the Security Deposit.    There is also Central Air Conditioning and heat provided by Landlord, but paid for by Tenant.

**LEASE TERM**: This Agreement shall be a fixed-period arrangement beginning JANUARY 25TH, 2021 and ending on JANUARY 24TH, 2022, with an option to renew to be **mutually exercised** by LANDLORD and TENANT, should both be in agreement, said option, if exercised by BOTH, to extend one year from termination of this Lease term.   Tenant(s) are required to move out at the end of the Lease Term if a new Lease Agreement or option to extend is not authorized by the parties. The parties hereby acknowledge that there will only be an extension of this LEASE AGREEMENT, if acknowledged IN WRITING by both parties, upon a mutually agreed-upon Rent, which may be increased during the optional extension contemplated herein. Such agreement to extend shall be known as the "Lease Term" (should it be exercised by both) and shall be agreed to in writing by both Landlord and Tenant.

**RENT:** Tenant(s) shall pay the Landlord in the lump sum of ***$46,800***, a total of the 12 monthly payments for the INITIAL lease term. This shall be known as the "Rent". In addition, the Tenants shall give the landlord **$3900** in **security**. FULL ANNUAL RENT SHALL BE PAID IN ADVANCE OF THE START OF THE INITIAL TERM, by **JANUARY 15TH, 2021**, which shall be held pending approval by the La Pensee Board, and returned should this not be forthcoming.

The rental fee is $3900 per month if the full annual fee is paid "up front" and if monthly payments should be made during the Lease extension period, the full monthly rental fee may be more than $4000 per month, and no less than $4000 per month, and shall remain due on or before the 25th of each month covering the 25th to the 24th of each month.  RENTAL FEES shall be drawn to and mailed to the Landlord: ***Valerie S. Manzo, Member, La Pensee 303, LLC,*** at Landlord's address: 16 De Mont St., Smithtown, NY 11787-1906. All rent shall be paid by a check drawn on a US bank, mailed to the address in this paragraph (not ACH). At Tenant's option, rental fees may be automated, via bank or brokerage, and a paper check shall be sent.

**REALTOR FEES**:  The Landlord will pay realtors' fees, as follows, $1,950 to ReMax/Advantage Plus and $1,950 to Value Realty Associates.

**NON-SUFFICIENT FUNDS (NSF CHECKS**): If the Tenant(s) attempts to pay the rent with a check that is not honored or an electronic transaction (ACH) due to insufficient funds (NSF) there shall be a fee of $100.00 (US Dollars).

**LATE FEE**: If applicable payments should revert to monthly, if rent is not paid on the due date, there shall be a late fee assessed by the Landlord in the amount of: $100.00 (US Dollars) per occurrence, for each monthly payment, should future payments be made monthly. There shall be a 10-day grace period after each due date.

The Tenant(s) will not move into the Premises before the start of the Lease Term.

**SECURITY DEPOSIT:** A Security Deposit in the amount of $3900 (US Dollars) which is one month's rent (pet deposit is waived due to pet being a support animal, per federal law, upon proof of PET STATUS AS A DOCUMENTED SERVICE ANIMAL). THE *$3900* SECURITY DEPOSIT is paid to LANDLORD to assure the *faithful performance of all Lease terms and conditions*. The Security Deposit is to be returned to the Tenant(s) within 15 days after this Agreement has terminated if there are no deductions. If there are deductions to the Security Deposit the balance shall be returned within 30 days from termination of this Agreement. Should there be any dispute over said Security, there may be further delay but unless litigation is commenced, it shall not extend beyond 90 days from termination.

**The Security Deposit shall not be credited towards rent unless the Landlord gives written consent.**

**POSSESSION**: Tenant(s) has examined the condition of the Premises and by taking possession acknowledges that they have accepted the Premises in good order and in its current condition except as herein otherwise stated. Failure of the Landlord to deliver possession of the Premises at the start of the Lease Term to the Tenant(s) shall terminate this Agreement at the option of the Tenant(s). Furthermore, under such failure to deliver possession by the Landlord, and if the Tenant(s) cancels this Agreement, the Security Deposit (if any) shall be returned to the Tenant(s) along with any other pre-paid rent, fees, including if the Tenant(s) paid a fee during the application process before the execution of this Agreement.

***NOTE TO REALTORS: AT TURNOVER OF THE APARTMENT AND THE KEYS, TENANT AND REALTOR WILL TAKE PHOTOGRAPHS OF THE CONDITION OF PREMISES. IT MUST BE RETURNED IN THE SAME ORDER AND REPAIR, LESS REASONABLE WEAR AND TEAR. REALTOR AND TENANT SHALL fill out the CHECKLIST AT THE END OF THIS AGREEMENT.***

**ACCESS**: Upon approval by the Board and receipt and clearance of check and Lease, plus Amendments, Landlord agrees to give access to the Tenant(s) in the form of keys, fobs, cards, or any type of keyless security entry as needed to enter the common areas and the Premises. Duplicate copies of the access provided may only be authorized under the consent of the Landlord and, if any replacements are needed, the Landlord will provide them for a fee. At the end of this Agreement all access provided to the Tenant(s) shall be returned to the Landlord or a fee will be charged to the Tenant(s) or subtracted from the Security Deposit.

**MOVE-IN INSPECTION**: Before, at the time of the Tenant(s) accepting possession, or shortly thereafter, the Landlord and Tenant(s) shall perform an inspection documenting the present condition of all appliances, fixtures, furniture, and any existing damage within the Premises. If Landlord cannot be present on that date,

property manager on site and/or realtor shall be present on the move-in date, to confirm condition.

**SUBLETTING**: The Tenant(s) shall not have the right to sub-let the Premises or any part thereof.

**ABANDONMENT**: If the Tenant(s) vacates or abandons the property for a time-period that is the minimum set by State law or seven (7) days, whichever is less, the Landlord shall have the right to terminate this Agreement immediately and remove all belongings including any personal property off of the Premises. If the Tenant(s) vacates or abandons the property, the Landlord shall immediately have the right to terminate this Agreement.

**ASSIGNMENT:** Tenant(s) shall not assign this Lease without the prior written consent of the Landlord. The consent by the Landlord to one assignment shall not be deemed to be consent to any subsequent assignment.

**PARKING**: The Landlord shall provide the Tenant(s) 2 Parking Spaces.  (one is below the building in a garage, one is across the street). The Landlord shall not charge a fee for the 2 Parking Spaces. The Parking Space(s) can be described as: (see Addendum)

**RIGHT OF ENTRY**: The Landlord shall have the right to enter the Premises during normal working hours by providing notice in accordance with the minimum State requirement in order for inspection, make necessary repairs, alterations or improvements, to supply services as agreed or for any reasonable purpose. The Landlord may exhibit the Premises to prospective purchasers, mortgagees, or lessees upon reasonable notice.    TENANT MAY NOT CHANGE LOCKS OR ADD ADDITIONAL LOCKS ON DOORS.

**UTILITIES:** The Landlord agrees to pay for the following utilities and services: Basic Cable, Lawn Care, Trash Removal, Water, (via the La Pensee Condominium), with all other utilities and services to be the responsibility of the Tenant(s).  CABLE IS AS PROVIDED BY LA PENSEE. TENANT MUST PICK UP THE CABLE BOX. ANY ADDITIONAL CABLE SERVICE, INCLUDING TELEPHONE AND DATA, IS AT TENANT'S OPTION AND EXPENSE.

**MAINTENANCE, REPAIRS, OR ALTERATIONS**: The Tenant(s) shall, at their own expense and at all times, maintain premises in a clean and sanitary manner, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. The Tenant(s) may not make any alterations to the leased premises without the consent in writing of the Landlord. The Landlord shall be responsible for repairs to the interior and exterior of the building.

ALL APPLIANCES WILL BE MAINTAINED BY TENANT IN GOOD ORDER. ANY DAMAGE TO SAME IS TENANT'S RESPONSIBILITY BUT IF APPLIANCES, HEAT OR A/C FAIL, DUE TO NORMAL WEAR AND TEAR, LANDLORD WILL ASSUME COST OF REPAIR, PROVIDED TENANT ARRANGES FOR SERVICEPERSON TO

RENDER THE APPLIANCE OR SERVICE USABLE. IN NO EVENT WILL FEE TO REPAIR PERSON BE DEDUCTED FROM RENT by Tenant. LANDLORD WILL MAKE ARRANGEMENTS FOR PAYMENT TO SERVICEPESON, DIRECTLY BETWEEN LANDLORD OR LANDLORD'S PROPERTY MANAGER, PRIOR TO ARRIVAL OF SERVICEPERSON.

**SMOKE DETECTORS**:  The Landlord will place fresh batteries in all battery-operated smoke detectors when the Tenant(s) moves into the premises. After the initial placement of the fresh batteries, it is the responsibility of the Tenant(s) to replace batteries when needed. A monthly "cursory" inspection may be required for all fire extinguishers to make sure they are fully charged.

**EARLY TERMINATION**: The Tenant(s) may not be able to cancel this Agreement, pursuant to terms of all Agreements herein, except that a Tenant who is a victim of Domestic Violence may be able to lawfully terminate, as provided by US. Florida and Palm Beach County Laws and Regulations. In such case, the Tenant may be able to cancel in accordance with any local, state, or federal laws.

***PETS/SERVICE DOG***: The Tenant(s) shall be allowed to have:  One (1***) pet*** on the Premises consisting of Cats, Dogs, Fish, with no other types of Pet(s) being allowed on the Premises or common areas, hereinafter known as the "Pet(s)". The Tenant(s) shall NOT be required to pay a "pet SECURITY fee", typically in this region in the amount of $500 (refundable at the end of the Lease Term if there is no damage to the Premises that is caused by the Pet(s), in this case.  **INASMUCH AS TENANT HAS A *SERVICE ANIMAL* (A DOG), DOCUMENTARY PROOF OF STATUS AS A SERVICE ANIMAL IS REQUIRED FOR LANDLORD AND LA PENSEE CONDOMINIUM TO WAIVE ITS CUSTOMARY PET RESTRICTIONS, AND FOR LANDLORD TO WAIVE CUSTOMARY ADDITIONAL *PET SECURITY* FEES.** However, it remains Tenant responsibility to repair any and all damage that any SERVICE ANIMAL may cause, regardless of ownership of said SERVICE ANIMAL, and TENANT agrees to restore the property to its original condition at TENANT expense. There shall be a limit on the weight of any of the individual pet of 20 pounds (lbs.), unless it is a SERVICE ANIMAL.

**AT TIME OF SIGNING LEASE TENANT HAS THE FOLLOWING PETS:  one _____ (type of animal) WEIGHING:  _____.**

**NOISE/WASTE**: The Tenant(s) agrees not to commit waste on the premises, maintain, or permit to be maintained, a nuisance thereon, or use, or permit the premises to be used, in an unlawful manner. The Tenant(s) further agrees to abide by any and all local, county, and State noise ordinances.

**GUESTS:** There shall be no other persons living on the Premises other than the Tenant(s) and any Occupant(s). Guests of the Tenant(s) are allowed for periods not lasting for more than 2 WEEKS unless otherwise approved by the Landlord. THIS IS A RULE OF LA PENSEE.

**SMOKING POLICY**: Smoking on the Premises is prohibited on the entire LA PENSEE property, including individual units, common areas, every building and adjoining properties.

**COMPLIANCE WITH LAW**: The Tenant(s) agrees that during the term of the Agreement, to promptly comply with any present and future laws, ordinances, orders, rules, regulations, and requirements of the Federal, State, County, City, and Municipal government or any of their departments, bureaus, boards, commissions and officials thereof with respect to the premises, or the use or occupancy thereof, whether said compliance shall be ordered or directed to or against the Tenant(s), the Landlord, or both.

**DEFAULT**: If the Tenant(s) fails to comply with any of the financial or material provisions of this Agreement, or of any present rules and regulations or any that may be hereafter prescribed by the Landlord, or materially fails to comply with any duties imposed on the Tenant(s) by statute or State laws, within the time period after delivery of written notice by the Landlord specifying the non-compliance and indicating the intention of the Landlord to terminate the Agreement by reason thereof, the Landlord may terminate this Agreement. If the Tenant(s) fails to pay rent when due and the default continues for the time-period specified in the written notice thereafter, the Landlord may, at their option, declare the entire balance (compiling all months applicable to this Agreement) of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to the Landlord at law or in equity and may immediately terminate this Agreement.

The Tenant(s) will be in default if: (a) Tenant(s) does not pay rent or other amounts that are owed in accordance with respective State laws; (b) Tenant(s), their guests, or the Occupant(s) violate this Agreement, rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (c) Tenant(s) abandons the Premises; (d) Tenant(s) gives incorrect or false information in the rental application; (e) Tenant(s), or any Occupant(s) is arrested, convicted, or given deferred adjudication for a criminal offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (f) any illegal drugs or paraphernalia are found in the Premises or on the person of the Tenant(s), guests, or Occupant(s) while on the Premises and/or; (g) as otherwise allowed by law.

**MULTIPLE TENANT(S) OR OCCUPANT(S):** Each individual that is considered a Tenant(s) is jointly and individually liable for all of this Agreement's obligations, including but not limited to rent monies. If any Tenant(s), guest, or Occupant(s) violates this Agreement, the Tenant(s) is considered to have violated this Agreement. Landlord's requests and notices to the Tenant(s) or any of the Occupant(s) of legal age constitutes notice to the Tenant(s). Notices and requests from the Tenant(s) or any one of the Occupant(s) (including repair requests and

entry permissions) constitutes notice from the Tenant(s). In eviction suits, the Tenant(s) is considered the agent of the Premise for the service of process.

**DISPUTES**: If a dispute arises during or after the term of this Agreement between the Landlord and Tenant(s), they shall agree to hold negotiations amongst themselves, in "good faith", before any litigation.

**SEVERABILITY:** If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**SHOWING PREMISES TO PROSPECTIVE NEW TENANTS**:  Tenant agrees to permit showing of Premises within ***45 days of Lease Termination***, upon 24 hours' notice by Realtor to Tenants, and in presence of Tenants.

**SURRENDER OF PREMISES**: The Tenant(s) has surrendered the Premises when (a) the move-out date has passed and no one is living in the Premise within the Landlord's reasonable judgment; or (b) Access to the Premise have been turned in to Landlord – whichever comes first. Upon the expiration of the term hereof, the Tenant(s) shall surrender the Premise in better or equal condition as it were at the commencement of this Agreement, reasonable use, wear and tear thereof, and damages by the elements excepted.

**RETALIATION**: The Landlord is prohibited from making any type of retaliatory acts against the Tenant(s) including but not limited to restricting access to the Premises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures, or any other type of act that could be considered unjustified.

**WAIVER:** A Waiver by the Landlord for a breach of any covenant or duty by the Tenant(s), under this Agreement is not a waiver for a breach of any other covenant or duty by the Tenant(s), or of any subsequent breach of the same covenant or duty. No provision of this Agreement shall be considered waived unless such a waiver shall be expressed in writing as a formal amendment to this Agreement and executed by the Tenant(s) and Landlord.

**EQUAL HOUSING**: If the Tenant(s) possess (es) any mental or physical impairment, the Landlord shall provide reasonable modifications to the Premises unless the modifications would be too difficult or expensive for the Landlord to provide. Any impairment of the Tenant(s) is/are encouraged to be provided and presented to the Landlord in writing in order to seek the most appropriate route for providing the modifications to the Premises.

**HAZARDOUS MATERIALS**: The Tenant(s) agrees to not possess any type of personal property that could be considered a fire hazard such as a substance having flammable or explosive characteristics on the Premises. Items that are prohibited to be brought into the Premises, other than for everyday cooking or the

need of an appliance, includes but is not limited to gas (compressed), gasoline, fuel, propane, kerosene, motor oil, fireworks, or any other related content in the form of a liquid, solid, or gas.

**WATERBEDS**: The Tenant(s) is not permitted to furnish the Premises with waterbeds.

**INDEMNIFICATION**: The Landlord shall not be liable for any damage or injury to the Tenant(s), or any other person, or to any property, occurring on the Premises, or any part thereof, or in common areas thereof, and the Tenant(s) agrees to hold the Landlord harmless from any claims for damages unless caused solely by the Landlord's negligence. It is recommended that renter's insurance be purchased at the Tenant(s)'s expense.

**COVENANTS:** The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this Agreement.

NOTICES: Any notice to be sent by the Landlord or the Tenant(s) to each other shall use the following mailing addresses:


Landlord's/Agent's Mailing Address

VALERIE MANZO, Member, LA PENSEE 303, LLC; 16 DE MONT STREET, SMITHTOWN, New York, 11787-1906


Tenant(s)'s CURRENT Mailing Address (FILL IN)

_____

**AGENT/MANAGER**: The Landlord's husband, **THOMAS A. DE MARINIS, cell @ 631-942-7109, TDEMARINIS2@OPTONLINE.NET,** of the same address as Landlord, is the Property Manager. All contact or complaint regarding repair, maintenance, or any other matter needing Landlord attention, must go through the Landlord's Property Manager, as follows (emails shall be sent to Landlord as well):

**Landlord's Phone Number: CELL: (516) 456-4672 or office:  631-366-6361; Landlord's Email: VALMANZO@AOL.COM.**

EMERGENCIES ON PREMISES:  TENANT MAY CALL BUILDING (PHYSICAL PLANT) MANAGER:  **TODD DAVIS:  561-951-3145 (HE HAS KEYS AND IS ON LA PENSEE PREMISES).**

BUILDING ASSOCIATION OFFICE MANAGER (OFF-SITE) **MARY MC FADDEN** (SHE HAS RULES AND REGULATIONS, APPLICATION, AND ARRANGES

NEEDED APPROVAL OF TENANCY BY THE BOARD OF DIRECTORS OF LA PENSEE, INCLUDING INTERVIEW BY BOARD MEMBER OF TENANTS.

**MARY MC FADDEN WILL, PER LA PENSEE RULES, SUBMIT MEDICAL RECORDS PROVIDED BY TENANT ESTABLISHING NEED FOR THIS ANIMAL TO BE A SERVICE ANIMAL TO A LAWYER HIRED BY THE BOARD, FOR CONFIRMATION OF SAME.**

**PREMISES DEEMED UNINHABITABLE**: If the Property is deemed uninhabitable due to damage beyond reasonable repair the Tenant(s) will be able to terminate this Agreement by written notice to the Landlord. If said damage was due to the negligence of the Tenant(s), the Tenant(s) shall be liable to the Landlord for all repairs and for the loss of income due to restoring the Premises back to a livable condition in addition to any other losses that can be proved by the Landlord.

**ACCESS BY LANDLORD**: The Landlord must provide at least twelve (12) hours notice to the Tenant(s) before entering the Premises for any non-emergency reason.

**RADON GAS**: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

**SECURITY DEPOSIT DISCLOSURE**: YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOU NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF THE LANDLORD'S INTENT TO IMPOSE A CLAIM AGAINST THE DEPOSIT.  IF YOU DO NOT REPLY TO THE LANDLORD STATING YOUR OBJECTION TO THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF ANY.  IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE, THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER FILE A LAWSUIT CLAIMING A REFUND.  YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY THE LOSING PARTY. THIS DISCLOSURE IS BASIC. PLEASE REFER TO PART II

OF CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR LEGAL RIGHTS AND OBLIGATIONS.

**SERVICEMEMBERS CIVIL RELIEF ACT**: In the event the Tenant(s) is or hereafter becomes, a member of the United States Armed Forces on extended active duty and hereafter the Tenant(s) receives permanent change of station (PCS) orders to depart from the area where the Premises are located, or is relieved from active duty, retires or separates from the military, is ordered into military housing, or receives deployment orders, then in any of these events, the Tenant may terminate this lease upon giving thirty (30) days written notice to the Landlord. The Tenant shall also provide to the Landlord a copy of the official orders or a letter signed by the Tenant's commanding officer, reflecting the change which warrants termination under this clause. The Tenant will pay prorated rent for any days which he/she occupies the dwelling past the beginning of the rental period.

The damage/security deposit will be promptly returned to Tenant, provided there are no damages to the Premises.

**LEAD PAINT**: The Premises was not constructed before 1978 and therefore does not contain lead-based paint.

**GOVERNING LAW**: This Agreement is to be governed under the laws located in the State of Florida.

**APPLICATION**: Tenants shall comply with all rules and regulations, and requirements of LA PENSEE CONDOMINIUM ASSOCIATION AND ITS BOARD OF DIRECTORS, including completion of an application, submission of all document required by said Association, fees needed, including but not limited to service animal proofs, and examination the Board's lawyer of the same, and any and all additional requirements. Tenants shall pay an **application fee of $150.**00 per person, and fill out two (2) separate applications (one each), and pay a **LA PENSEE (separate) security deposit of $250.00.**

**ADDITIONAL TERMS AND CONDITIONS**: In addition to the above stated terms and conditions of this Agreement, the Landlord and Tenant agree to the following: **ALL RULES & REGULATIONS OF LA PENSEE CONDOMINIUM, TO BE PROVIDED BY MARY MC FADDEN OR VAL MANZO, ALONG WITH THE FIRST AMENDMENT WHICH IS ATTACHED HERETO AND MADE PART HEREOF**.

**ENTIRE AGREEMENT**: This Agreement contains all the terms agreed to by the parties relating to its subject matter and replaces all previous discussions, understandings, and oral agreements. The Landlord and Tenant(s) agree to the terms and conditions and shall be bound until the end of the Lease Term.

The parties have agreed and executed this agreement on _____, 20_____.

LANDLORD(S) SIGNATURE

Landlord's Signature _____

VALERIE MANZO, MEMBER, LA PENSEE 303, LLC

Date:  _____


TENANT(S) SIGNATURE

Tenant Signature            _____

Print name:                 _____

Tenant signature            _____

Print name:                 _____

Date:                       _____

Security and full rental fee

Deposit Receipt

Date: _____

THIS DOCUMENT ACKNOWLEDGES RECEIPT OF THE $50,700 FOR THIS 12 MONTH LEASE TERM FOR 4000 SOUTH OCEAN BLVD, SOUTH PALM BEACH, FLA 33480, by the owner, VALERIE S. MANZO, MEMBER, LA PENSEE 303, LLC.

The Landlord shall hold the entire fund, including the 43900 the Security Deposit in a separate account at THE BANK OF AMERICA, located at 30 ROUTE 111, SMITHTOWN, NY 11787 [Street Address] in the TOWN OF SMITHTOWN, State of NEW YORK.

The Security Deposit in the amount of $3900 (US Dollars) and the full one-year rental fee per the Lease Agreement, has been deposited in AN ACCOUNT TITLED **LA PENSEE 303. LLC**, which has as signatory the LLC MEMBER, **VALERIE S. MANZO.**

Thus, Landlord warrants that the full $50,700 shall be held, payable to Landlord for each month of Tenant's residence, for the full performance of Tenant's obligation to pay RENT during the term of the Lease, which Lease Agreement and Amendment has been fully executed by both TENANT AND LANDLORD,

**on the _____ day of _____, 2021**

Landlord's Signature _____

Tenant Signature _____

Tenant Signature: _____

AMOUNT ($) DUE AT SIGNING

Security Deposit: $3900.00 plus 12 months' rent:  $46,800.00

TOTAL:  $50,700.00

Page 12

Move-in Checklist

Property Address: 4000 SOUTH OCEAN BOULEVARD, APARTMENT 303,

SOUTH PALM BEACH, Florida, 33480

Unit Size: 3 Bedroom(s)

Move-in Inspection Date: _____

Move-out Inspection Date: _____

Write the condition of the space along with any specific damage or repairs needed. Be sure to write any repair needed such as paint chipping, wall damage, or any lessened area that could be considered maintenance needed at the end of the lease, and therefore, be deducted at the end of the Lease Term.

**Living Room**

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**Dining Room**

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**Kitchen Area**

Stove/Oven Condition _____ Specific Damage_____

Refrigerator Condition _____ Specific Damage_____

Sink/Faucets Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Cabinets Condition _____ Specific Damage_____

Closets Condition _____ Specific Damage_____

Exhaust Fan Condition _____ Specific Damage_____

Fire Alarms Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**Bedroom(s)**

(1)

Doors/Locks Condition _____ Specific Damage_____

Closets Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

#2

Doors/Locks Condition _____ Specific Damage_____

Closets Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

#3

Doors/Locks Condition _____ Specific Damage_____

Closets Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**Bathroom(s)**

**In bedroom #1**

Sink/Faucets Condition _____ Specific Damage_____

Shower/Tub Condition _____ Specific Damage_____

Curtain/Door Condition _____ Specific Damage_____

Towel Rack Condition _____ Specific Damage_____

Toilet Condition _____ Specific Damage_____

Doors/Locks Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

In bedroom #2

Sink/Faucets Condition _____ Specific Damage_____

Shower/Tub Condition _____ Specific Damage_____

Curtain/Door Condition _____ Specific Damage_____

Towel Rack Condition _____ Specific Damage_____

Toilet Condition _____ Specific Damage_____

Doors/Locks Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

In bedroom #3

Sink/Faucets Condition _____ Specific Damage_____

Shower/Tub Condition _____ Specific Damage_____

Curtain/Door Condition _____ Specific Damage_____

Towel Rack Condition _____ Specific Damage_____

Toilet Condition _____ Specific Damage_____

Doors/Locks Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

IN POWDER ROOM:

Sink/Faucets Condition _____ Specific Damage_____

Shower/Tub Condition _____ Specific Damage_____

Curtain/Door Condition _____ Specific Damage_____

Towel Rack Condition _____ Specific Damage_____

Toilet Condition _____ Specific Damage_____

Doors/Locks Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**GENERAL PREMISE INSPECTION/CONDITION:**

Heating Condition _____ Specific Damage_____

AC Unit(s) Condition _____ Specific Damage_____

Hot Water Heater Condition _____ Specific Damage_____

Smoke Alarm(s) Condition _____ Specific Damage_____

Door Bell Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**I, Tenant on this Lease, have sufficiently inspected the Premises and confirm above-stated information. (only 1 Tenant required)**

**Tenant's Signature _____   _____**

**I, the Landlord on this Lease, have sufficiently inspected the Premises and confirm above-stated information.**

**Landlord's Signature _____**

---------- Forwarded message ---------
From: **Roy Gelber** <roy.gelber@valuerealtyassociates.com>
Date: Thu, Jul 1, 2021 at 2:58 PM
Subject: Fwd: WILCOX LEASE
To: mary mcfadden <mmcfadden112909@gmail.com>

not a signed copy and if I find it will send that
---------- Forwarded message ---------
From: **Roy Gelber** <roy.gelber@valuerealtyassociates.com>
Date: Tue, Jan 5, 2021 at 7:17 PM
Subject: Fwd: WILCOX LEASE
To: David Wilcox <wdavidwilcox@gmail.com>

Sent from my iPhone

Begin forwarded message:

**From:** elelep@aol.com
**Date:** January 5, 2021 at 6:47:24 PM EST
**To:** Roy Gelber <roy.gelber@valuerealtyassociates.com>
**Subject: WILCOX LEASE**

Ed Lepselter Remax Advantage Plus

Boca Raton, Florida
561-302-9374


--
Regards,

**Roy Gelber | Value Realty Associates®**

Lic. Real Estate Broker
954.608.1581 /cel
954.323.7885 /tel
954.482.4229 /fax

CONFIDENTIALITY NOTICE: This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, the information contained in this e-mail message is legally privileged and confidential information intended only for the use of the individual or entity named above. If the receiver of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited and may violate the legal rights of the others. If you have received this message in error, please immediately notify the sender by replying to this e-mail message and deleting the message and any attachments from your system.

 Virus-free. [www.avast.com](http://www.avast.com)

# EXHIBIT D

*begins '/25/2021*
*Ends 7/24/2021*

# STANDARD LEASE AGREEMENT

### (FIRST AMENDMENT ATTACHED)

### FOR LEASE BEGINNING JANUARY 25, 2021

### NOTE: THIS AGREEMENT HAS A CHECKLIST AT THE END. TENANT AND REALTOR MUST FILL IT OUT TOGETHER UPON WALK-THROUGH AT RECEIPT OF THE KEYS. PHOTOS NEEDED.

This Agreement, dated *January 5, 2021*, by and between a business entity as follows: *VALERIE S. MANZO, MEMBER, LA PENSEE 303, LLC*, with a mailing address of 16 DE MONT STREET, SMITHTOWN, New York, 11787-1906, hereinafter known as the "Landlord",

AND

*WILLIAM DAVID WILCOX, JR.*, currently of West Palm Beach, Fla, and *MEGAN DANIELLE LUCHEY*, 371 Winters St. WPB,Fl. 33406, each hereinafter known as the "Tenant", agree to the following:

**OCCUPANT(S):** The Premises is to be occupied strictly as a residential dwelling with only the Tenants mentioned above as the Occupants.

**OFFER TO RENT:** The Landlord hereby rents to the Tenant, subject to the following terms and conditions of this Agreement, and a First Amendment, a condominium with the address of *4000 SOUTH OCEAN BOULEVARD, APARTMENT 303, SOUTH PALM BEACH, Florida, 33480*, consisting of 3.5 bathroom(s) and 3 bedroom(s) hereinafter known as the "Premises". The Landlord may also use the address for notices sent to the Tenant.

**PURPOSE:** The Tenant may only use the Premises as a **residential dwelling**. It may not be used for storage, manufacturing of any type of food or product, professional service(s), or for any commercial use unless otherwise stated in this Agreement.  NOTE THE CONDOMINIUM MAY HAVE ADDITIONAL RULES, WHICH WILL BE PROVIDED BY CONDOMINIUM MANAGEMENT, MARY MC FADDEN, LA PENSEE OFFICE MANAGER, PRIOR TO ACCEPTANCE OF APPLICATION TO RESIDE IN THE CONDOMINIUM, LA PENSEE, BY TENANT.

**FURNISHINGS:** The Premises is not furnished.

**APPLIANCES:** The Landlord shall provide the following appliances:  Dishwasher, Dryer (for Laundry), Fan(s), Hot Water Heater, HVAC, Microwave, Oven(s), Radiator(s), Refrigerator, Stove(s), Washer (for Laundry), and all other appliances to be provided by the Tenant(s). Any damage to the Landlord's appliances shall be the liability of the Tenant(s), reasonable wear-and-tear excepted, to be billed directly or subtracted from the Security Deposit.   There is also Central Air Conditioning and heat provided by Landlord, but paid for by Tenant.

Page 1

15 days after this Agreement has terminated if there are no deductions. If there are deductions the Security Deposit the balance shall be returned within 30 days from termination of this Agreement. Should there be any dispute over said Security, there may be further delay but unless litigation is commenced, it shall not extend beyond 90 days from termination.

The Security Deposit shall not be credited towards rent unless the ~~Landlord gives written consent.~~

**POSSESSION:** Tenant(s) has examined the condition of the Premises and by taking possession acknowledges that they have accepted the Premises in good order and in its current condition <u>except as herein otherwise stated.</u> Failure of the Landlord to deliver possession of the Premises at the start of the Lease Term to the Tenant(s) shall terminate this Agreement at the option of the Tenant(s). Furthermore, under such failure to deliver possession by the Landlord, and if the Tenant(s) cancels this Agreement, the Security Deposit (if any) shall be returned to the Tenant(s) along with any other pre-paid rent, fees, including if the Tenant(s) paid a fee during the application process before the execution of this Agreement.

*NOTE TO REALTORS:* <u>*AT TURNOVER OF THE APARTMENT AND THE KEYS, TENANT AND REALTOR WILL TAKE PHOTOGRAPHS OF THE CONDITION OF PREMISES. IT MUST BE RETURNED IN THE SAME ORDER AND REPAIR, LESS REASONABLE WEAR AND TEAR, REALTOR AND TENANT SHALL fill out the CHECKLIST AT THE END OF THIS AGREEMENT.*</u>

**ACCESS:** Upon approval by the Board and receipt and clearance of check and Lease, plus Amendments, Landlord agrees to give access to the Tenant(s) in the form of keys, fobs, cards, or any type of keyless security entry as needed to enter the common areas and the Premises. Duplicate copies of the access provided may only be authorized under the consent of the Landlord and, if any replacements are needed, the Landlord will provide them for a fee. At the end of this Agreement all access provided to the Tenant(s) shall be returned to the Landlord or a fee will be charged to the Tenant(s) or subtracted from the Security Deposit.

**MOVE-IN INSPECTION:** Before, at the time of the Tenant(s) accepting possession, or shortly thereafter, the Landlord and Tenant(s) shall perform an inspection documenting the present condition of all appliances, fixtures, furniture, and any existing damage within the Premises. If Landlord cannot be present on that date, property manager on site and/or realtor shall be present on the move-in date, to confirm condition.

**SUBLETTING:** The Tenant(s) shall not have the right to sub-let the Premises or any part thereof.

**ABANDONMENT:** If the Tenant(s) vacates or abandons the property for a time-period that is the minimum set by State law or seven (7) days, whichever is less, the Landlord shall have the right to terminate this Agreement immediately and remove all belongings including any personal property off of the Premises. If the Tenant(s) vacates or abandons the property, the Landlord shall immediately have the right to terminate this Agreement.

Page 3

**ASSIGNMENT:** Tenant(s) shall not assign this Lease without the prior written consent of the Landlord. The consent by the Landlord to one assignment shall not be deemed to be consent to any subsequent assignment.

**PARKING:** The Landlord shall provide the Tenant(s) 2 Parking Spaces.  (one is below the building in a garage, one is across the street). The Landlord shall not charge a fee for the 2 Parking Spaces. The Parking Space(s) can be described as: (see Addendum)

**RIGHT OF ENTRY:** The Landlord shall have the right to enter the Premises during normal working hours by providing notice in accordance with the minimum State requirement in order for inspection, make necessary repairs, alterations or improvements, to supply services as agreed or for any reasonable purpose. The Landlord may exhibit the Premises to prospective purchasers, mortgagees, or lessees upon reasonable notice.   TENANT MAY NOT CHANGE LOCKS OR ADD ADDITIONAL LOCKS ON DOORS.

**UTILITIES:** The Landlord agrees to pay for the following utilities and services:   Basic Cable, Lawn Care, Trash Removal, Water, (via the La Pensee Condominium), with all other utilities and services to be the responsibility of the Tenant(s).  CABLE IS AS PROVIDED BY LA PENSEE. TENANT MUST PICK UP THE CABLE BOX. ANY ADDITIONAL CABLE SERVICE, INCLUDING TELEPHONE AND DATA, IS AT TENANT'S OPTION AND EXPENSE.

**MAINTENANCE, REPAIRS, OR ALTERATIONS:** The Tenant(s) shall, at their own expense and at all times, maintain premises in a clean and sanitary manner, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. The Tenant(s) may not make any alterations to the leased premises without the consent in writing of the Landlord. The Landlord shall be responsible for repairs to the interior and exterior of the building.

ALL APPLIANCES WILL BE MAINTAINED BY TENANT IN GOOD ORDER. ANY DAMAGE TO SAME IS TENANT'S RESPONSIBILITY BUT IF APPLIANCES, HEAT OR A/C FAIL, DUE TO NORMAL WEAR AND TEAR, LANDLORD WILL ASSUME COST OF REPAIR, PROVIDED TENANT ARRANGES FOR SERVICEPERSON TO RENDER THE APPLIANCE OR SERVICE USABLE. IN NO EVENT WILL FEE TO REPAIR PERSON BE DEDUCTED FROM RENT by Tenant. LANDLORD WILL MAKE ARRANGEMENTS FOR PAYMENT TO SERVICEPESON, DIRECTLY BETWEEN LANDLORD OR LANDLORD'S PROPERTY MANAGER, PRIOR TO ARRIVAL OF SERVICEPERSON.

**SMOKE DETECTORS:**  The Landlord will place fresh batteries in all battery-operated smoke detectors when the Tenant(s) moves into the premises. After the initial placement of the fresh batteries, it is the responsibility of the Tenant(s) to replace batteries when needed. A monthly "cursory" inspection may be required for all fire extinguishers to make sure they are fully charged.

**EARLY TERMINATION:** The Tenant(s) may not be able to cancel this Agreement, pursuant to terms of all Agreements herein, except that a Tenant who is a victim of Domestic Violence may be able to lawfully terminate, as provided by US, Florida and Palm

Page 4

Beach County Laws and Regulations. In such case, the Tenant may be able to cancel in accordance with any local, state, or federal laws.

**_PETS/SERVICE DOG_**: The Tenant(s) shall be allowed to have:  One (1) *pet* on the Premises consisting of Cats, Dogs, Fish, with no other types of Pet(s) being allowed on the Premises or common areas, hereinafter known as the "Pet(s)". The Tenant(s) shall NOT be required to pay a "pet SECURITY fee", typically in this region in the amount of $500 (refundable at the end of the Lease Term if there is no damage to the Premises that is caused by the Pet(s), in this case.  **INASMUCH AS TENANT HAS A _SERVICE ANIMAL_ (A DOG), DOCUMENTARY PROOF OF STATUS AS A SERVICE ANIMAL IS REQUIRED FOR LANDLORD AND LA PENSEE CONDOMINIUM TO WAIVE ITS CUSTOMARY PET RESTRICTIONS, AND FOR LANDLORD TO WAIVE CUSTOMARY ADDITIONAL _PET SECURITY_ FEES.** However, it remains Tenant responsibility to repair any and all damage that any SERVICE ANIMAL may cause, regardless of ownership of said SERVICE ANIMAL, and TENANT agrees to restore the property to its original condition at TENANT expense. There shall be a limit on the weight of any of the individual pet of 20 pounds (lbs.), unless it is a SERVICE ANIMAL.

**AT TIME OF SIGNING LEASE TENANT HAS THE FOLLOWING PETS:  one _____ (type of animal) WEIGHING: _____.**

**NOISE/WASTE:** The Tenant(s) agrees not to commit waste on the premises, maintain, or permit to be maintained, a nuisance thereon, or use, or permit the premises to be used, in an unlawful manner. The Tenant(s) further agrees to abide by any and all local, county, and State noise ordinances.

**GUESTS:** There shall be no other persons living on the Premises other than the Tenant(s) and any Occupant(s). Guests of the Tenant(s) are allowed for periods not lasting for more than 2 WEEKS unless otherwise approved by the Landlord.    THIS IS A RULE OF LA PENSEE.

**SMOKING POLICY:** Smoking on the Premises is prohibited on the entire LA PENSEE property, including individual units, common areas, every building and adjoining properties.

**COMPLIANCE WITH LAW:** The Tenant(s) agrees that during the term of the Agreement, to promptly comply with any present and future laws, ordinances, orders, rules, regulations, and requirements of the Federal, State, County, City, and Municipal government or any of their departments, bureaus, boards, commissions and officials thereof with respect to the premises, or the use or occupancy thereof, whether said compliance shall be ordered or directed to or against the Tenant(s), the Landlord, or both.

**DEFAULT:** If the Tenant(s) fails to comply with any of the financial or material provisions of this Agreement, or of any present rules and regulations or any that may be hereafter prescribed by the Landlord, or materially fails to comply with any duties imposed on the Tenant(s) by statute or State laws, within the time period after delivery of written notice by the Landlord specifying the non-compliance and indicating the intention of the Landlord to terminate the Agreement by reason thereof, the Landlord may terminate this Agreement. If the Tenant(s) fails to pay rent when due and the default continues for the time-period

Page 5

specified in the written notice thereafter, the Landlord may, at their option, declare the entire balance (compiling all months applicable to this Agreement) of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to the Landlord at law or in equity and may immediately terminate this Agreement.

The Tenant(s) will be in default if: (a) Tenant(s) does not pay rent or other amounts that are owed in accordance with respective State laws; (b) Tenant(s), their guests, or the Occupant(s) violate this Agreement, rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (c) Tenant(s) abandons the Premises; (d) Tenant(s) gives incorrect or false information in the rental application; (e) Tenant(s), or any Occupant(s) is arrested, convicted, or given deferred adjudication for a criminal offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (f) any illegal drugs or paraphernalia are found in the Premises or on the person of the Tenant(s), guests, or Occupant(s) while on the Premises and/or; (g) as otherwise allowed by law.

**MULTIPLE TENANT(S) OR OCCUPANT(S):** Each individual that is considered a Tenant(s) is jointly and individually liable for all of this Agreement's obligations, including but not limited to rent monies. If any Tenant(s), guest, or Occupant(s) violates this Agreement, the Tenant(s) is considered to have violated this Agreement. Landlord's requests and notices to the Tenant(s) or any of the Occupant(s) of legal age constitutes notice to the Tenant(s). Notices and requests from the Tenant(s) or any one of the Occupant(s) (including repair requests and entry permissions) constitutes notice from the Tenant(s). In eviction suits, the Tenant(s) is considered the agent of the Premise for the service of process.

**DISPUTES:** If a dispute arises during or after the term of this Agreement between the Landlord and Tenant(s), they shall agree to hold negotiations amongst themselves, in "good faith", before any litigation.

**SEVERABILITY:** If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**SHOWING PREMISES TO PROSPECTIVE NEW TENANTS:** Tenant agrees to permit showing of Premises within *45 days of Lease Termination*, upon 24 hours' notice by Realtor to Tenants, and in presence of Tenants.  *COVID Negative Test 72 hous*

**SURRENDER OF PREMISES:** The Tenant(s) has surrendered the Premises when (a) the move-out date has passed and no one is living in the Premise within the Landlord's reasonable judgment; or (b) Access to the Premise have been turned in to Landlord – whichever comes first. Upon the expiration of the term hereof, the Tenant(s) shall surrender the Premise in better or equal condition as it were at the commencement of this

Page 6

Agreement, reasonable use, wear and tear thereof, and damages by the elements excepted.

**RETALIATION:** The Landlord is prohibited from making any type of retaliatory acts against the Tenant(s) including but not limited to restricting access to the Premises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures, or any other type of act that could be considered unjustified.

**WAIVER:** A Waiver by the Landlord for a breach of any covenant or duty by the Tenant(s), under this Agreement is not a waiver for a breach of any other covenant or duty by the Tenant(s), or of any subsequent breach of the same covenant or duty. No provision of this Agreement shall be considered waived unless such a waiver shall be expressed in writing as a formal amendment to this Agreement and executed by the Tenant(s) and Landlord.

**EQUAL HOUSING:** If the Tenant(s) possess (es) any mental or physical impairment, the Landlord shall provide reasonable modifications to the Premises unless the modifications would be too difficult or expensive for the Landlord to provide. Any impairment of the Tenant(s) is/are encouraged to be provided and presented to the Landlord in writing in order to seek the most appropriate route for providing the modifications to the Premises.

**HAZARDOUS MATERIALS:** The Tenant(s) agrees to not possess any type of personal property that could be considered a fire hazard such as a substance having flammable or explosive characteristics on the Premises. Items that are prohibited to be brought into the Premises, other than for everyday cooking or the need of an appliance, includes but is not limited to gas (compressed), gasoline, fuel, propane, kerosene, motor oil, fireworks, or any other related content in the form of a liquid, solid, or gas.

**WATERBEDS:** The Tenant(s) is not permitted to furnish the Premises with waterbeds.

**INDEMNIFICATION:** The Landlord shall not be liable for any damage or injury to the Tenant(s), or any other person, or to any property, occurring on the Premises, or any part thereof, or in common areas thereof, and the Tenant(s) agrees to hold the Landlord harmless from any claims for damages unless caused solely by the Landlord's negligence. It is recommended that renter's insurance be purchased at the Tenant(s)'s expense.

**COVENANTS:** The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this Agreement.

**NOTICES:** Any notice to be sent by the Landlord or the Tenant(s) to each other shall use the following mailing addresses:

Landlord's/Agent's Mailing Address

VALERIE MANZO, Member, LA PENSEE 303, LLC; 16 DE MONT STREET, SMITHTOWN, New York, 11787-1906

Page 7

Tenant(s)'s CURRENT Mailing Address (FILL IN)

_____

AGENT/MANAGER: The Landlord's husband, **THOMAS A. DE MARINIS**, cell @ 631-942-7109, **TDEMARINIS2@OPTONLINE.NET**, of the same address as Landlord, is the Property Manager. All contact or complaint regarding repair, maintenance, or any other matter needing Landlord attention, must go through the Landlord's Property Manager, as follows (emails shall be sent to Landlord as well):

Landlord's Phone Number: CELL: (516) 456-4672 or office: 631-366-6361;
Landlord's Email: **VALMANZO@AOL.COM**.

EMERGENCIES ON PREMISES: TENANT MAY CALL BUILDING (PHYSICAL PLANT) MANAGER: TODD DAVIS: 561-951-3145 (HE HAS KEYS AND IS ON LA PENSEE PREMISES).

BUILDING ASSOCIATION OFFICE MANAGER (OFF-SITE) MARY MC FADDEN (SHE HAS RULES AND REGULATIONS, APPLICATION, AND ARRANGES NEEDED APPROVAL OF TENANCY BY THE BOARD OF DIRECTORS OF LA PENSEE, INCLUDING INTERVIEW BY BOARD MEMBER OF TENANTS.

MARY MC FADDEN WILL, PER LA PENSEE RULES, SUBMIT ~~MEDICAL~~ RECORDS PROVIDED BY TENANT ESTABLISHING NEED FOR THIS ANIMAL TO BE A SERVICE ANIMAL TO A LAWYER HIRED BY THE BOARD, FOR CONFIRMATION OF SAME.

PREMISES DEEMED UNINHABITABLE: If the Property is deemed uninhabitable due to damage beyond reasonable repair the Tenant(s) will be able to terminate this Agreement by written notice to the Landlord. If said damage was due to the negligence of the Tenant(s), the Tenant(s) shall be liable to the Landlord for all repairs and for the loss of income due to restoring the Premises back to a livable condition in addition to any other losses that can be proved by the Landlord.

ACCESS BY LANDLORD: The Landlord must provide at least twelve (12) hours notice to the Tenant(s) before entering the Premises for any non-emergency reason.

RADON GAS: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

SECURITY DEPOSIT DISCLOSURE: YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. ~~THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOU NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF THE LANDLORD'S INTENT TO IMPOSE A CLAIM AGAINST THE DEPOSIT. IF YOU~~

Page 8

DO NOT REPLY TO THE LANDLORD STATING YOUR OBJECTION TO THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF ANY.   IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE, THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER FILE A LAWSUIT CLAIMING A REFUND.   YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY THE LOSING PARTY. THIS DISCLOSURE IS BASIC. PLEASE REFER TO PART II OF CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR LEGAL RIGHTS AND OBLIGATIONS.

**SERVICEMEMBERS CIVIL RELIEF ACT:** In the event the Tenant(s) is or hereafter becomes, a member of the United States Armed Forces on extended active duty and hereafter the Tenant(s) receives permanent change of station (PCS) orders to depart from the area where the Premises are located, or is relieved from active duty, retires or separates from the military, is ordered into military housing, or receives deployment orders, then in any of these events, the Tenant may terminate this lease upon giving thirty (30) days written notice to the Landlord. The Tenant shall also provide to the Landlord a copy of the official orders or a letter signed by the Tenant's commanding officer, reflecting the change which warrants termination under this clause. The Tenant will pay prorated rent for any days which he/she occupies the dwelling past the beginning of the rental period.

The damage/security deposit will be promptly returned to Tenant, provided there are no damages to the Premises.

**LEAD PAINT:** The Premises was not constructed before 1978 and therefore does not contain lead-based paint.

**GOVERNING LAW:** This Agreement is to be governed under the laws located in the State of Florida.

**APPLICATION:** Tenants shall comply with all rules and regulations, and requirements of LA PENSEE CONDOMINIUM ASSOCIATION AND ITS BOARD OF DIRECTORS, including completion of an application, submission of all document required by said Association, fees needed, including but not limited to service animal proofs, and examination the Board's lawyer of the same, and any and all additional requirements. Tenants shall pay an **application fee of $150.00** per person, and fill out two (2) separate applications (one each), and pay a **LA PENSEE (separate) security deposit of $250.00.**

**ADDITIONAL TERMS AND CONDITIONS:** In addition to the above stated terms and conditions of this Agreement, the Landlord and Tenant agree to the following: **ALL RULES & REGULATIONS OF LA PENSEE CONDOMINIUM, TO BE PROVIDED BY MARY MC**

Page 9

FADDEN OR VAL MANZO, ALONG WITH THE FIRST AMENDMENT WHICH IS ATTACHED HERETO AND MADE PART HEREOF.

**ENTIRE AGREEMENT:** This Agreement contains all the terms agreed to by the parties relating to its subject matter and replaces all previous discussions, understandings, and oral agreements. The Landlord and Tenant(s) agree to the terms and conditions and shall be bound until the end of the Lease Term.

The parties have agreed and executed this agreement on

_January 17_____, 20 _21_.

LANDLORD(S) SIGNATURE

Landlord's Signature _Valerie O Manzo, Member_

VALERIE MANZO, MEMBER, LA PENSEE 305, LLC

Date: _1-7-21_

TENANT(S) SIGNATURE

Tenant Signature _David Wilcox_

Print name: _WILLIAM WILCOX_

Tenant signature _____

Print name: _____

Date: _____

Page 10

## *FIRST AMENDMENT TO STANDARD LEASE AGREEMENT*

This amendment, dated as of JANUARY 5, 2021, is a First Amendment (the "First Amendment") to the Standard Lease Agreement, dated January 5, 2021, by and between *VALERIE S. MANZO, MEMBER, LA PENSEE 303, LLC* hereinafter known as the "Landlord" and *WILLIAM DAVID WILCOX, JR. AND MEGAN DANIELLE LUCHEY,* hereinafter collectively known as the "Tenant".

The Landlord and the Tenant hereby agree to amend the Lease Agreement as follows:

1.  Tenant will be granted occupancy on 1/25/2021 provided they are approved by LA PENSEE CONDOMINIUM ASSOCIATION, and cooperate with same in a timely way, submitting all needed documents and conducting an interview (virtually) with a Board Member, as may be required. NO weekend move-ins are permitted per CONDOMINIUM rules and regulations, and all move-ins and move-outs must be coordinated with TODD DAVIS, manager of the physical plant of LA PENSEE.

2.  The walkthrough inspection with realtor or realtors shall be set up by TENANTS with each realtor, and photographs of current conditions shall be submitted to LANDLORD, checklist at the end of Lease Agreement filled out by tenant and realtor, after which move-in shall follow, **on January 25, 2021, as arranged with TODD DAVIS**.

3.  The LEASE PROHIBITS SMOKING.

4.  RULES AND REGULATIONS ARE ATTACHED.

5.  BROKERS ARE ROY T. GELBER, VALUE REALTY ASSOCIATES AND ELLYLEPSELTER, RE/MAX ADVANTAGE PLUS. LANDLORD SHALL PAY THEM.

**LANDLORD(S) SIGNATURE**

Landlord's Signature *Valerie O Manzo*

VALERIE MANZO, MEMBER, LA PENSEE 303, LLC

Date: 1-7-21

TELEPHONE: 516-456-4672

EMAIL: VALMANZO@AOL.COM

LANDLORD'S PROPERTY MANAGER: *TOM DE MARINIS*, VAL'S HUSBAND 631-942-7109 AND EMAIL TDEMARINIS2@OPTONLINE.NET

TENANT(S) SIGNATURE

*David Wilcox* Jan 6, 2021

WILLIAM DAVID WILCOX, JR.

CELL: 561-517-3750

EMAIL WDAVIDWILCOX@GMAIL.COM

MEGAN DANIELLE LUCHEY

EMAIL: _____

CELL: _____

Date: 1-7-21.

- 2 -

**LA PENSEE CONDOMINIUM ASSOCIATION, INC.**

The applicant hereby advises that the apartment described above will be occupied by _____ person (s), solely members of the immediate family of the owner, as follows:

| NAME | RELATIONSHIP | AGE |
|------|--------------|-----|
| WILLIAM WILCOX | | |
| MEGAN LUCHEY | | |
| | | |
| | | |

The applicant by his/her/their execution of this instrument, accept and acknowledge that he/she/they are subject in every respect to the Declaration of Condominium, the Bylaws and Rules and Regulations of LaPensee Condominium Association, Inc.

Final approval of this application will only be issued upon presentation by the applicant of a copy of the executed contract for purchase or lease for rental, in a form satisfactory to the Board of Directors, and a non-refundable application fee of $150.00, also a check for $250.00, which can be refunded, if no damage occurs during your move-in or move-out.

I have read the foregoing application and have received a copy of the Rules and Regulations Guidelines Booklet of LaPensee Condominium Association, Inc.

_____
**Applicant**

_____
**Printed Name**   Megan Luchey

_____
**Date**   1/6/21

_____
**Unit Owner(s)**   Valerie Manzi

**LEASE TERM**: This Agreement shall be a fixed-period arrangement beginning JANUARY 25TH, 2021 and ending on JANUARY 24TH, 2022, with an option to renew to be **mutually exercised** by LANDLORD and TENANT, should both be in agreement, said option, if exercised by BOTH, to extend one year from termination of this Lease term. Tenant(s) are required to move out at the end of the Lease Term if a new Lease Agreement or option to extend is not authorized by the parties. The parties hereby acknowledge that there will only be an extension of this LEASE AGREEMENT, if acknowledged IN WRITING by both parties, upon a mutually agreed-upon Rent, which may be increased during the optional extension contemplated herein. Such agreement to extend shall be known as the "Lease Term" (should it be exercised by both) and shall be agreed to in writing by both Landlord and Tenant.

**RENT:** Tenant(s) shall pay the Landlord in the lump sum of *$46,800*, a total of the 12 monthly payments for the INITIAL lease term. This shall be known as the "Rent". In addition, the Tenants shall give the landlord **$3900** in **security**. FULL ANNUAL RENT SHALL BE PAID IN ADVANCE OF THE START OF THE INITIAL TERM, by **JANUARY 15TH, 2021**, which shall be held pending approval by the La Pensee Board, and returned should this not be forthcoming.

The rental fee is $3900 per month if the full annual fee is paid "up front" and if monthly payments should be made during the Lease extension period, the full monthly rental fee may be more than $4000 per month, and no less than $4000 per month, and shall remain due on or before the 25th of each month covering the 25th to the 24th of each month. RENTAL FEES shall be drawn to and mailed to the Landlord: *Valerie S. Manzo, Member, La Pensee 303, LLC*, at Landlord's address: 16 De Mont St., Smithtown, NY 11787-1906. All rent shall be paid by a check drawn on a US bank, mailed to the address in this paragraph (not ACH). At Tenant's option, rental fees may be automated, via bank or brokerage, and a paper check shall be sent.

**REALTOR FEES**: The Landlord will pay realtors' fees, as follows, $1,950 to ReMax/Advantage Plus and $1,950 to Value Realty Associates.

**NON-SUFFICIENT FUNDS (NSF CHECKS)**: If the Tenant(s) attempts to pay the rent with a check that is not honored or an electronic transaction (ACH) due to insufficient funds (NSF) there shall be a fee of $100.00 (US Dollars).

**LATE FEE**: If applicable payments should revert to monthly, if rent is not paid on the due date, there shall be a late fee assessed by the Landlord in the amount of: $100.00 (US Dollars) per occurrence, for each monthly payment, should future payments be made monthly. There shall be a 10-day grace period after each due date.

The Tenant(s) will not move into the Premises before the start of the Lease Term.

**SECURITY DEPOSIT:** A Security Deposit in the amount of $3900 (US Dollars) which is one month's rent (pet deposit is waived due to pet being a support animal, per federal law, upon proof of PET STATUS AS A DOCUMENTED SERVICE ANIMAL). THE *$3900* SECURITY DEPOSIT is paid to LANDLORD to assure the *faithful performance of all Lease terms and conditions*. The Security Deposit is to be returned to the Tenant(s) within

Page 2

# EXHIBIT E

# STANDARD LEASE AGREEMENT

(FIRST AMENDMENT ATTACHED)

**FOR LEASE BEGINNING JANUARY 25, 2021**

**_NOTE:  THIS AGREEMENT HAS A CHECKLIST AT THE END. TENANT AND REALTOR MUST FILL IT OUT TOGETHER UPON WALK-THROUGH AT RECEIPT OF THE KEYS.  PHOTOS NEEDED._**

This Agreement, dated *January 5, 2021*, by and between a business entity as follows: *VALERIE S. MANZO, MEMBER, LA PENSEE 303, LLC*, with a mailing address of 16 DE MONT STREET, SMITHTOWN, New York, 11787-1906, hereinafter known as the **"Landlord"**,

AND

*WILLIAM DAVID WILCOX, JR.,* currently of West Palm Beach, Fla, and *MEGAN DANIELLE LUCHEY*, 371 Winters St. WPB,Fl. 33406, each hereinafter known as the "Tenant", agree to the following:

**OCCUPANT(S):** The Premises is to be occupied strictly as a residential dwelling with only the Tenants mentioned above as the Occupants.

**OFFER TO RENT**: The Landlord hereby rents to the Tenant, subject to the following terms and conditions of this Agreement, and a First Amendment, a condominium with the address of *4000 SOUTH OCEAN BOULEVARD, APARTMENT 303, SOUTH PALM BEACH, Florida, 33480,* consisting of 3.5 bathroom(s) and 3 bedroom(s) hereinafter known as the "Premises". The Landlord may also use the address for notices sent to the Tenant.

**PURPOSE**: The Tenant may only use the Premises as a **residential dwelling**. It may not be used for storage, manufacturing of any type of food or product, professional service(s), or for any commercial use unless otherwise stated in this Agreement.  NOTE THE CONDOMINIUM MAY HAVE ADDITIONAL RULES, WHICH WILL BE PROVIDED BY CONDOMINIUM MANAGEMENT, MARY MC FADDEN, LA PENSEE OFFICE MANAGER, PRIOR TO ACCEPTANCE OF APPLICATION TO RESIDE IN THE CONDOMINIUM, LA PENSEE, BY TENANT.

**FURNISHINGS:** The Premises is not furnished.

**APPLIANCES:** The Landlord shall provide the following appliances:  Dishwasher, Dryer (for Laundry), Fan(s), Hot Water Heater, HVAC, Microwave, Oven(s), Radiator(s), Refrigerator, Stove(s), **Washer (for Laundry)**, and all other appliances to be provided by the Tenant(s). Any damage to the Landlord's appliances shall be the liability of the Tenant(s), reasonable **wear-and-tear** excepted, to be billed directly or subtracted from the Security Deposit.    There is also Central Air Conditioning and heat provided by Landlord, but paid for by Tenant.

Page 1

*[handwritten: 2023 VSM]*

**LEASE TERM**: This Agreement shall be a fixed-period arrangement beginning JANUARY 25ᵀᴴ, 2021 and ending on JANUARY 24ᵀᴴ, ~~2022, with an option to renew to be mutually exercised by LANDLORD and TENANT, should both be in agreement; said option, if exercised by BOTH, to extend one year from termination of this Lease term~~. Tenant(s) are required to move out at the end of the Lease Term if a new Lease Agreement or option to extend is not authorized by the parties. The parties hereby acknowledge that there will only be an *[handwritten: further]* extension of this LEASE AGREEMENT, if acknowledged IN WRITING by both parties, upon a mutually agreed-upon Rent, ~~which may be increased during the optional extension contemplated herein.~~ Such agreement to extend shall be known as the "Lease Term" (should it be exercised by both) and shall be agreed to in writing by both Landlord and Tenant.

*[handwritten margin notes: $ after Jan 24 2023]*

**RENT**: Tenant(s) shall pay the Landlord in the lump sum of *$46,800*, a total of the 12 monthly payments for the INITIAL lease term. This shall be known as the "Rent". In addition, the Tenants shall give the landlord **$3900 in security**. FULL ANNUAL RENT SHALL BE PAID IN ADVANCE OF THE START OF THE INITIAL TERM, by **JANUARY 15ᵀᴴ, 2021**, ~~which shall be held pending approval by the La Pensee Board, and returned should this not be forthcoming.~~ *[handwritten: [BANK CHECK]  Following La Pensee Board approval + Prior to tenancy]*

The rental fee is $3900 per month if the full annual fee is paid 'up front' and if monthly payments should be made during the Lease extension period, the full monthly rental fee ~~may be more than $4000 per month, and no less than $4000 per month~~, and shall remain due on or before the 25ᵗʰ of each month covering the 25ᵗʰ to the 24ᵗʰ of each month. *[handwritten: will be $4000 VSM]* RENTAL FEES shall be drawn to and mailed to the Landlord: *Valerie S. Manzo, Member, La Pensee 303, LLC*, at Landlord's address: 16 De Mont St., Smithtown, NY 11787-1906. All rent shall be paid by a check drawn on a US bank, mailed to the address in this paragraph (not ACH). At Tenant's option, rental fees may be automated, via bank or brokerage, and a paper check shall be sent.

**REALTOR FEES**: The Landlord will pay realtors' fees, as follows, $1,950 to ReMax/Advantage Plus and $1,950 to Value Realty Associates.

**NON-SUFFICIENT FUNDS (NSF CHECKS)**: If the Tenant(s) attempts to pay the rent with a check that is not honored or an electronic transaction (ACH) due to insufficient funds (NSF) there shall be a fee of $100.00 (US Dollars).

**LATE FEE**: If applicable payments should revert to monthly, if rent is not paid on the due date, there shall be a late fee assessed by the Landlord in the amount of: $100.00 (US Dollars) per occurrence, for each monthly payment, should future payments be made monthly. There shall be a 10-day grace period after each due date.

The Tenant(s) will not move into the Premises before the start of the Lease Term.

**SECURITY DEPOSIT**: A Security Deposit in the amount of $3900 (US Dollars) which is one month's rent (pet deposit is waived due to pet being a support animal, per federal law, upon proof of PET STATUS AS A DOCUMENTED SERVICE ANIMAL). THE *$3900* SECURITY DEPOSIT is paid to LANDLORD to assure the *faithful performance of all Lease terms and conditions*. The Security Deposit is to be returned to the Tenant(s) within

Page 2

15 days after this Agreement has terminated if there are no deductions. If there are deductions to the Security Deposit the balance shall be returned within 30 days from termination of this Agreement. Should there be any dispute over said Security, there may be further delay but unless litigation is commenced, it shall not extend beyond 90 days from termination.

**The Security Deposit shall not be credited towards rent unless the Landlord gives written consent.**

**POSSESSION**: Tenant(s) has examined the condition of the Premises and by taking possession acknowledges that they have accepted the Premises in good order and in its current condition except as herein otherwise stated. Failure of the Landlord to deliver possession of the Premises at the start of the Lease Term to the Tenant(s) shall terminate this Agreement at the option of the Tenant(s). Furthermore, under such failure to deliver possession by the Landlord, and if the Tenant(s) cancels this Agreement, the Security Deposit (if any) shall be returned to the Tenant(s) along with any other pre-paid rent, fees, including if the Tenant(s) paid a fee during the application process before the execution of this Agreement.

*NOTE TO REALTORS: AT TURNOVER OF THE APARTMENT AND THE KEYS, TENANT AND REALTOR WILL TAKE PHOTOGRAPHS OF THE CONDITION OF PREMISES. IT MUST BE RETURNED IN THE SAME ORDER AND REPAIR, LESS REASONABLE WEAR AND TEAR. REALTOR AND TENANT SHALL fill out the CHECKLIST AT THE END OF THIS AGREEMENT.*

**ACCESS**: Upon approval by the Board and receipt and clearance of check and Lease, plus Amendments, Landlord agrees to give access to the Tenant(s) in the form of keys, fobs, cards, or any type of keyless security entry as needed to enter the common areas and the Premises. Duplicate copies of the access provided may only be authorized under the consent of the Landlord and, if any replacements are needed, the Landlord will provide them for a fee. At the end of this Agreement all access provided to the Tenant(s) shall be returned to the Landlord or a fee will be charged to the Tenant(s) or subtracted from the Security Deposit.

**MOVE-IN INSPECTION**: Before, at the time of the Tenant(s) accepting possession, or shortly thereafter, the Landlord and Tenant(s) shall perform an inspection documenting the present condition of all appliances, fixtures, furniture, and any existing damage within the Premises. If Landlord cannot be present on that date, property manager on site and/or realtor shall be present on the move-in date, to confirm condition.

**SUBLETTING**: The Tenant(s) shall not have the right to sub-let the Premises or any part thereof.

**ABANDONMENT**: If the Tenant(s) vacates or abandons the property for a time-period that is the minimum set by State law or seven (7) days, whichever is less, the Landlord shall have the right to terminate this Agreement immediately and remove all belongings including any personal property off of the Premises. If the Tenant(s) vacates or abandons the property, the Landlord shall immediately have the right to terminate this Agreement.

Page 3

**ASSIGNMENT:** Tenant(s) shall not assign this Lease without the prior written consent of the Landlord. The consent by the Landlord to one assignment shall not be deemed to be consent to any subsequent assignment.

**PARKING:** The Landlord shall provide the Tenant(s) 2 Parking Spaces.  (one is below the building in a garage, one is across the street). The Landlord shall not charge a fee for the 2 Parking Spaces. The Parking Space(s) can be described as: (see Addendum)

**RIGHT OF ENTRY:** The Landlord shall have the right to enter the Premises during normal working hours by providing notice in accordance with the minimum State requirement in order for inspection, make necessary repairs, alterations or improvements, to supply services as agreed or for any reasonable purpose. ~~The Landlord may exhibit the Premises to prospective purchasers, mortgagees, or lessees upon reasonable notice.~~   TENANT MAY NOT CHANGE LOCKS OR ADD ADDITIONAL LOCKS ON DOORS.

**UTILITIES:** The Landlord agrees to pay for the following utilities and services:   Basic Cable, Lawn Care, Trash Removal, Water, (via the La Pensee Condominium), with all other utilities and services to be the responsibility of the Tenant(s).  CABLE IS AS PROVIDED BY LA PENSEE. TENANT MUST PICK UP THE CABLE BOX. ANY ADDITIONAL CABLE SERVICE, INCLUDING TELEPHONE AND DATA, IS AT TENANT'S OPTION AND EXPENSE.

**MAINTENANCE, REPAIRS, OR ALTERATIONS:** The Tenant(s) shall, at their own expense and at all times, maintain premises in a clean and sanitary manner, and shall surrender the same at termination hereof, in as good condition as received, normal wear and tear excepted. The Tenant(s) may not make any alterations to the leased premises without the consent in writing of the Landlord. The Landlord shall be responsible for repairs to the interior and exterior of the building.

ALL APPLIANCES WILL BE MAINTAINED BY TENANT IN GOOD ORDER. ANY DAMAGE TO SAME IS TENANT'S RESPONSIBILITY BUT IF APPLIANCES, HEAT OR A/C FAIL, DUE TO NORMAL WEAR AND TEAR, LANDLORD WILL ASSUME COST OF REPAIR, PROVIDED TENANT ARRANGES FOR SERVICEPERSON TO RENDER THE APPLIANCE OR SERVICE USABLE. IN NO EVENT WILL FEE TO REPAIR PERSON BE DEDUCTED FROM RENT by Tenant. LANDLORD WILL MAKE ARRANGEMENTS FOR PAYMENT TO SERVICEPESON, DIRECTLY BETWEEN LANDLORD OR LANDLORD'S PROPERTY MANAGER, PRIOR TO ARRIVAL OF SERVICEPERSON.

**SMOKE DETECTORS:**  The Landlord will place fresh batteries in all battery-operated smoke detectors when the Tenant(s) moves into the premises. After the initial placement of the fresh batteries, it is the responsibility of the Tenant(s) to replace batteries when needed. A monthly "cursory" inspection may be required for all fire extinguishers to make sure they are fully charged.

**EARLY TERMINATION:** The Tenant(s) may not be able to cancel this Agreement, pursuant to terms of all Agreements herein, except that a Tenant who is a victim of Domestic Violence may be able to lawfully terminate, as provided by US. Florida and Palm

Page 4

Beach County Laws and Regulations. In such case, the Tenant may be able to cancel in accordance with any local, state, or federal laws.

*PETS/SERVICE DOG*: The Tenant(s) shall be allowed to have:  One (1) *pet* on the Premises consisting of Cats, Dogs, Fish, with no other types of Pet(s) being allowed on the Premises or common areas, hereinafter known as the "Pet(s)". The Tenant(s) shall NOT be required to pay a "pet SECURITY fee", typically in this region in the amount of $500 (refundable at the end of the Lease Term if there is no damage to the Premises that is caused by the Pet(s), in this case. **INASMUCH AS TENANT HAS A *SERVICE ANIMAL* (A DOG), DOCUMENTARY PROOF OF STATUS AS A SERVICE ANIMAL IS REQUIRED FOR LANDLORD AND LA PENSEE CONDOMINIUM TO WAIVE ITS CUSTOMARY PET RESTRICTIONS, AND FOR LANDLORD TO WAIVE CUSTOMARY ADDITIONAL *PET SECURITY* FEES.** However, it remains Tenant responsibility to repair any and all damage that any SERVICE ANIMAL may cause, regardless of ownership of said SERVICE ANIMAL, and TENANT agrees to restore the property to its original condition at TENANT expense. There shall be a limit on the weight of any of the individual pet of 20 pounds (lbs.), unless it is a SERVICE ANIMAL.

**AT TIME OF SIGNING LEASE TENANT HAS THE FOLLOWING PETS:  one** _____ **(type of animal) WEIGHING:** _____.

**NOISE/WASTE**: The Tenant(s) agrees not to commit waste on the premises, maintain, or permit to be maintained, a nuisance thereon, or use, or permit the premises to be used, in an unlawful manner. The Tenant(s) further agrees to abide by any and all local, county, and State noise ordinances.

**GUESTS**: There shall be no other persons living on the Premises other than the Tenant(s) and any Occupant(s). Guests of the Tenant(s) are allowed for periods not lasting for more than 2 WEEKS unless otherwise approved by the Landlord.   THIS IS A RULE OF LA PENSEE.

**SMOKING POLICY**: Smoking on the Premises is prohibited on the entire LA PENSEE property, including individual units, common areas, every building and adjoining properties.

**COMPLIANCE WITH LAW**: The Tenant(s) agrees that during the term of the Agreement, to promptly comply with any present and future laws, ordinances, orders, rules, regulations, and requirements of the Federal, State, County, City, and Municipal government or any of their departments, bureaus, boards, commissions and officials thereof with respect to the premises, or the use or occupancy thereof, whether said compliance shall be ordered or directed to or against the Tenant(s), the Landlord, or both.

**DEFAULT**: If the Tenant(s) fails to comply with any of the financial or material provisions of this Agreement, or of any present rules and regulations or any that may be hereafter prescribed by the Landlord, or materially fails to comply with any duties imposed on the Tenant(s) by statute or State laws, within the time period after delivery of written notice by the Landlord specifying the non-compliance and indicating the intention of the Landlord to terminate the Agreement by reason thereof, the Landlord may terminate this Agreement. If the Tenant(s) fails to pay rent when due and the default continues for the time-period

Page 5

specified in the written notice thereafter, the Landlord may, at their option, declare the entire balance (compiling all months applicable to this Agreement) of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to the Landlord at law or in equity and may immediately terminate this Agreement.

The Tenant(s) will be in default if: (a) Tenant(s) does not pay rent or other amounts that are owed in accordance with respective State laws; (b) Tenant(s), their guests, or the Occupant(s) violate this Agreement, rules, or fire, safety, health, or criminal laws, regardless of whether arrest or conviction occurs; (c) Tenant(s) abandons the Premises; (d) Tenant(s) gives incorrect or false information in the rental application; (e) Tenant(s), or any Occupant(s) is arrested, convicted, or given deferred adjudication for a criminal offense involving actual or potential physical harm to a person, or involving possession, manufacture, or delivery of a controlled substance, marijuana, or drug paraphernalia under state statute; (f) any illegal drugs or paraphernalia are found in the Premises or on the person of the Tenant(s), guests, or Occupant(s) while on the Premises and/or; (g) as otherwise allowed by law.

**MULTIPLE TENANT(S) OR OCCUPANT(S):** Each individual that is considered a Tenant(s) is jointly and individually liable for all of this Agreement's obligations, including but not limited to rent monies. If any Tenant(s), guest, or Occupant(s) violates this Agreement, the Tenant(s) is considered to have violated this Agreement. Landlord's requests and notices to the Tenant(s) or any of the Occupant(s) of legal age constitutes notice to the Tenant(s). Notices and requests from the Tenant(s) or any one of the Occupant(s) (including repair requests and entry permissions) constitutes notice from the Tenant(s). In eviction suits, the Tenant(s) is considered the agent of the Premise for the service of process.

**DISPUTES:** If a dispute arises during or after the term of this Agreement between the Landlord and Tenant(s), they shall agree to hold negotiations amongst themselves, in "good faith", before any litigation.

**SEVERABILITY:** If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

**SHOWING PREMISES TO PROSPECTIVE NEW TENANTS:** Tenant agrees to permit showing of Premises within *45 days of Lease Termination*, upon 24 hours' notice by Realtor to Tenants, and in presence of Tenants. *COVID Negative Test 72 hour* VM

**SURRENDER OF PREMISES:** The Tenant(s) has surrendered the Premises when (a) the move-out date has passed and no one is living in the Premise within the Landlord's reasonable judgment; or (b) Access to the Premise have been turned in to Landlord – whichever comes first. Upon the expiration of the term hereof, the Tenant(s) shall surrender the Premise in better or equal condition as it were at the commencement of this

Page 6

Agreement, reasonable use, wear and tear thereof, and damages by the elements excepted.

**RETALIATION**: The Landlord is prohibited from making any type of retaliatory acts against the Tenant(s) including but not limited to restricting access to the Premises, decreasing or cancelling services or utilities, failure to repair appliances or fixtures, or any other type of act that could be considered unjustified.

**WAIVER:** A Waiver by the Landlord for a breach of any covenant or duty by the Tenant(s), under this Agreement is not a waiver for a breach of any other covenant or duty by the Tenant(s), or of any subsequent breach of the same covenant or duty. No provision of this Agreement shall be considered waived unless such a waiver shall be expressed in writing as a formal amendment to this Agreement and executed by the Tenant(s) and Landlord.

**EQUAL HOUSING**: If the Tenant(s) possess (es) any mental or physical impairment, the Landlord shall provide reasonable modifications to the Premises unless the modifications would be too difficult or expensive for the Landlord to provide. Any impairment of the Tenant(s) is/are encouraged to be provided and presented to the Landlord in writing in order to seek the most appropriate route for providing the modifications to the Premises.

**HAZARDOUS MATERIALS**: The Tenant(s) agrees to not possess any type of personal property that could be considered a fire hazard such as a substance having flammable or explosive characteristics on the Premises. Items that are prohibited to be brought into the Premises, other than for everyday cooking or the need of an appliance, includes but is not limited to gas (compressed), gasoline, fuel, propane, kerosene, motor oil, fireworks, or any other related content in the form of a liquid, solid, or gas.

**WATERBEDS**: The Tenant(s) is not permitted to furnish the Premises with waterbeds.

**INDEMNIFICATION**: The Landlord shall not be liable for any damage or injury to the Tenant(s), or any other person, or to any property, occurring on the Premises, or any part thereof, or in common areas thereof, and the Tenant(s) agrees to hold the Landlord harmless from any claims for damages unless caused solely by the Landlord's negligence. It is recommended that renter's insurance be purchased at the Tenant(s)'s expense.

**COVENANTS:** The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this Agreement.

NOTICES: Any notice to be sent by the Landlord or the Tenant(s) to each other shall use the following mailing addresses:

Landlord's/Agent's Mailing Address

VALERIE MANZO, Member, LA PENSEE 303, LLC; 16 DE MONT STREET, SMITHTOWN, New York, 11787-1906

Page 7

Tenant(s)'s CURRENT Mailing Address (FILL IN)

_____

**AGENT/MANAGER**: The Landlord's husband, **THOMAS A. DE MARINIS, cell @ 631-942-7109, TDEMARINIS2@OPTONLINE.NET,** of the same address as Landlord, is the Property Manager. All contact or complaint regarding repair, maintenance, or any other matter needing Landlord attention, must go through the Landlord's Property Manager, as follows (emails shall be sent to Landlord as well):

**Landlord's Phone Number: CELL: (516) 456-4672 or office:  631-366-6361;
Landlord's Email: VALMANZO@AOL.COM.**

EMERGENCIES ON PREMISES:  TENANT MAY CALL BUILDING (PHYSICAL PLANT) MANAGER:  **TODD DAVIS: 561-951-3145 (HE HAS KEYS AND IS ON LA PENSEE PREMISES).**

BUILDING ASSOCIATION OFFICE MANAGER (OFF-SITE) **MARY MC FADDEN** (SHE HAS RULES AND REGULATIONS, APPLICATION, AND ARRANGES NEEDED APPROVAL OF TENANCY BY THE BOARD OF DIRECTORS OF LA PENSEE, INCLUDING INTERVIEW BY BOARD MEMBER OF TENANTS.

**MARY MC FADDEN WILL, PER LA PENSEE RULES, SUBMIT ~~MEDICAL~~ RECORDS PROVIDED BY TENANT ESTABLISHING NEED FOR THIS ANIMAL ~~TO BE A SERVICE~~ ANIMAL TO A LAWYER HIRED BY THE BOARD, FOR CONFIRMATION OF SAME.**

*[handwritten: Service Animal VM]*

**PREMISES DEEMED UNINHABITABLE**: If the Property is deemed uninhabitable due to damage beyond reasonable repair the Tenant(s) will be able to terminate this Agreement by written notice to the Landlord. If said damage was due to the negligence of the Tenant(s), the Tenant(s) shall be liable to the Landlord for all repairs and for the loss of income due to restoring the Premises back to a livable condition in addition to any other losses that can be proved by the Landlord.

**ACCESS BY LANDLORD**: The Landlord must provide at least twelve (12) hours notice to the Tenant(s) before entering the Premises for any non-emergency reason.

*[handwritten: VM CONJD Tes, 72 hours]*

**RADON GAS**: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

**SECURITY DEPOSIT DISCLOSURE**: YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. ~~THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOU NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF~~ THE LANDLORD'S INTENT TO IMPOSE A CLAIM AGAINST THE DEPOSIT.  IF YOU

*[handwritten: VM]*

Page 8

DO NOT REPLY TO THE LANDLORD STATING YOUR OBJECTION TO THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF ANY.  IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE, THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER FILE A LAWSUIT CLAIMING A REFUND.  YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY THE LOSING PARTY. THIS DISCLOSURE IS BASIC. PLEASE REFER TO PART II OF CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR LEGAL RIGHTS AND OBLIGATIONS.

**SERVICEMEMBERS CIVIL RELIEF ACT**: In the event the Tenant(s) is or hereafter becomes, a member of the United States Armed Forces on extended active duty and hereafter the Tenant(s) receives permanent change of station (PCS) orders to depart from the area where the Premises are located, or is relieved from active duty, retires or separates from the military, is ordered into military housing, or receives deployment orders, then in any of these events, the Tenant may terminate this lease upon giving thirty (30) days written notice to the Landlord. The Tenant shall also provide to the Landlord a copy of the official orders or a letter signed by the Tenant's commanding officer, reflecting the change which warrants termination under this clause. The Tenant will pay prorated rent for any days which he/she occupies the dwelling past the beginning of the rental period.

The damage/security deposit will be promptly returned to Tenant, provided there are no damages to the Premises.

**LEAD PAINT**: The Premises was not constructed before 1978 and therefore does not contain lead-based paint.

**GOVERNING LAW**: This Agreement is to be governed under the laws located in the State of Florida.

**APPLICATION**: Tenants shall comply with all rules and regulations, and requirements of LA PENSEE CONDOMINIUM ASSOCIATION AND ITS BOARD OF DIRECTORS, including completion of an application, submission of all document required by said Association, fees needed, including but not limited to service animal proofs, and examination the Board's lawyer of the same, and any and all additional requirements. Tenants shall pay an **application fee of $150.**00 per person, and fill out two (2) separate applications (one each), and pay a **LA PENSEE (separate) security deposit of $250.00.**

**ADDITIONAL TERMS AND CONDITIONS**: In addition to the above stated terms and conditions of this Agreement, the Landlord and Tenant agree to the following: **ALL RULES & REGULATIONS OF LA PENSEE CONDOMINIUM, TO BE PROVIDED BY MARY MC**

Page 9

**FADDEN OR VAL MANZO, ALONG WITH THE FIRST AMENDMENT WHICH IS ATTACHED HERETO AND MADE PART HEREOF.**

**ENTIRE AGREEMENT**: This Agreement contains all the terms agreed to by the parties relating to its subject matter and replaces all previous discussions, understandings, and oral agreements. The Landlord and Tenant(s) agree to the terms and conditions and shall be bound until the end of the Lease Term.

The parties have agreed and executed this agreement on ___January 7___, 20_21_.

LANDLORD(S) SIGNATURE

Landlord's Signature _Valerie Q Manzo, Member_

VALERIE MANZO, MEMBER, LA PENSEE 303, LLC

Date: _1-7-21_

TENANT(S) SIGNATURE

Tenant Signature _David Wilco_

Print name: _WILLIAM WILCO_

Tenant signature _____

Print name: _____

Date: _____

Page 10

*To be signed by Landlord when bank check received & keep given (1.25.21).*

Security and full rental fee

Deposit Receipt

Date: *Jan 25, 2021*

[$48,600 RENT 3900 Security Deposit]

THIS DOCUMENT ACKNOWLEDGES RECEIPT OF THE $50,700 FOR THIS 12 MONTH LEASE TERM FOR 4000 SOUTH OCEAN BLVD, SOUTH PALM BEACH, FLA 33480, by the owner, VALERIE S. MANZO, MEMBER, LA PENSEE 303, LLC.

The Landlord shall hold the entire fund, including the 3900 the Security Deposit in a separate account at THE BANK OF AMERICA, located at 30 ROUTE 111, SMITHTOWN, NY 11787 [Street Address] in the TOWN OF SMITHTOWN, State of NEW YORK.

The Security Deposit in the amount of $3900 (US Dollars) and the full one-year rental fee per the Lease Agreement, has been deposited in AN ACCOUNT TITLED **LA PENSEE 303. LLC**, which has as signatory the LLC MEMBER, **VALERIE S. MANZO.**

Thus, Landlord warrants that the full $50,700 shall be held, payable to Landlord for each month of Tenant's residence, for the full performance of Tenant's obligation to pay RENT during the term of the Lease, which Lease Agreement and Amendment has been fully executed by both TENANT AND LANDLORD,

on the _____ day of _____, 2021

Landlord's Signature _____

Tenant Signature _____

Page 11

Tenant Signature: _____

AMOUNT ($) DUE AT SIGNING  *Jan 25, 2021*

Security Deposit: $3900.00 plus 12 months' rent:  $46,800.00

TOTAL:  $50,700.00

Page 12

## Move-in Checklist

Property Address: 4000 SOUTH OCEAN BOULEVARD, APARTMENT 303,

SOUTH PALM BEACH, Florida, 33480

Unit Size: 3 Bedroom(s)

Move-in Inspection Date: _____

Move-out Inspection Date: _____

*To Be Complete Jan 25, 202*

Write the condition of the space along with any specific damage or repairs needed. Be sure to write any repair needed such as paint chipping, wall damage, or any lessened area that could be considered maintenance needed at the end of the lease, and therefore, be deducted at the end of the Lease Term.

**Living Room**

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**Dining Room**

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**Kitchen Area**

Stove/Oven Condition _____ Specific Damage_____

Refrigerator Condition _____ Specific Damage_____

Sink/Faucets Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Cabinets Condition _____ Specific Damage_____

Closets Condition _____ Specific Damage_____

Exhaust Fan Condition _____ Specific Damage_____

Fire Alarms Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**Bedroom(s)**

(1)

Doors/Locks Condition _____ Specific Damage_____

Closets Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Page 14

Other Condition _____ Specific Damage_____

**#2**

Doors/Locks Condition _____ Specific Damage_____

Closets Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**#3**

Doors/Locks Condition _____ Specific Damage_____

Closets Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Page 15

**Bathroom(s)**

**In bedroom #1**

Sink/Faucets Condition _____ Specific Damage_____

Shower/Tub Condition _____ Specific Damage_____

Curtain/Door Condition _____ Specific Damage_____

Towel Rack Condition _____ Specific Damage_____

Toilet Condition _____ Specific Damage_____

Doors/Locks Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**In bedroom #2**

Sink/Faucets Condition _____ Specific Damage_____

Shower/Tub Condition _____ Specific Damage_____

Curtain/Door Condition _____ Specific Damage_____

Towel Rack Condition _____ Specific Damage_____

Toilet Condition _____ Specific Damage_____

Doors/Locks Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Page 16

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

In bedroom #3

Sink/Faucets Condition _____ Specific Damage_____

Shower/Tub Condition _____ Specific Damage_____

Curtain/Door Condition _____ Specific Damage_____

Towel Rack Condition _____ Specific Damage_____

Toilet Condition _____ Specific Damage_____

Doors/Locks Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

IN POWDER ROOM:

Sink/Faucets Condition _____ Specific Damage_____

Shower/Tub Condition _____ Specific Damage_____

Curtain/Door Condition _____ Specific Damage_____

Towel Rack Condition _____ Specific Damage_____

Toilet Condition _____ Specific Damage_____

Doors/Locks Condition _____ Specific Damage_____

Floors Condition _____ Specific Damage_____

Walls Condition _____ Specific Damage_____

Page 17

Ceiling Condition _____ Specific Damage_____

Windows Condition _____ Specific Damage_____

Lighting Condition _____ Specific Damage_____

Electrical Outlets Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**GENERAL PREMISE INSPECTION/CONDITION:**

Heating Condition _____ Specific Damage_____

AC Unit(s) Condition _____ Specific Damage_____

Hot Water Heater Condition _____ Specific Damage_____

Smoke Alarm(s) Condition _____ Specific Damage_____

Door Bell Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

Other Condition _____ Specific Damage_____

**I, Tenant on this Lease, have sufficiently inspected the Premises and confirm above-stated information. (only 1 Tenant required)**

**Tenant's Signature** _____ Jan 25-2021

**I, the Landlord on this Lease, have sufficiently inspected the Premises and confirm above-stated information.**

**Landlord's Signature** _____

Page 18

## *FIRST AMENDMENT TO STANDARD LEASE AGREEMENT*

This amendment, dated as of JANUARY 5, 2021, is a First Amendment (the "First Amendment") to the Standard Lease Agreement, dated January 5, 2021, by and between **VALERIE S. MANZO, MEMBER, LA PENSEE 303, LLC** hereinafter known as the "Landlord" and **WILLIAM DAVID WILCOX, JR. AND MEGAN DANIELLE LUCHEY,** hereinafter collectively known as the "Tenant".

The Landlord and the Tenant hereby agree to amend the Lease Agreement as follows:

1. Tenant will be granted occupancy on 1/25/2021 provided they are approved by LA PENSEE CONDOMINIUM ASSOCIATION, and cooperate with same in a timely way, submitting all needed documents and conducting an interview (virtually) with a Board Member, as may be required. NO weekend move-ins are permitted per CONDOMINIUM rules and regulations, and all move-ins and move-outs must be coordinated with TODD DAVIS, manager of the physical plant of LA PENSEE.

2. The walkthrough inspection with realtor or realtors shall be set up by TENANTS with each realtor, and photographs of current conditions shall be submitted to LANDLORD, checklist at the end of Lease Agreement filled out by tenant and realtor, after which move-in shall follow, **on January 25, 2021, as arranged with TODD DAVIS**.

3. The LEASE PROHIBITS SMOKING.

4. RULES AND REGULATIONS ARE ATTACHED.

5. BROKERS ARE ROY T. GELBER, VALUE REALTY ASSOCIATES AND ELLYLEPSELTER, RE/MAX ADVANTAGE PLUS. LANDLORD SHALL PAY THEM.

**LANDLORD(S) SIGNATURE**



**Landlord's Signature** _Valerie P Manzo_

VALERIE MANZO, MEMBER, LA PENSEE 303, LLC

**Date:** _1-7-21_

**TELEPHONE: 516-456-4672**

**EMAIL: VALMANZO@AOL.COM**

**LANDLORD'S PROPERTY MANAGER:** _TOM DE MARINIS_, **VAL'S HUSBAND 631-942-7109 AND EMAIL TDEMARINIS2@OPTONLINE.NET**

**TENANT(S) SIGNATURE**

_David Wilcox    Jan 6, 2021_

WILLIAM DAVID WILCOX, JR.

CELL: 561-517-3750

EMAIL WDAVIDWILCOX@GMAIL.COM

MEGAN DANIELLE LUCHEY

EMAIL: _____

CELL: _____

**Date:** _1-7-21_.

- 2 -

**From:** VAL MANZO <valmanzo@aol.com>
**Sent:** Wednesday, July 21, 2021 6:13 PM
**To:** Burnett, JoAnn <JBURNETT@beckerlawyers.com>
**Subject:** W. DAVID WILCOX LEASE

**EXTERNAL EMAIL - This message originated from an External Source**.

Dear Ms. Burnett,

We received your email.

We here enclose the original Lease Agreement and related forms for our tenant W. David Wilcox.

Very truly yours,

VAL MANZO, ESQ.
MICHELLE PFEIFFENBERGER, ESQ.
Law Office of Valerie S. Manzo, Esq.
16 De Mont Street, Smithtown, NY 11787-1906
tel/fax: 631-366-6361

*PLEASE DO NOT SEND SENSITIVE PERSONAL INFORMATION VIA SCANNED EMAIL. USE FAX OR U.S. MAIL. PLEASE CALL US, IF WE DO NOT REPLY TO EMAIL WITHIN 24 HOURS, AS EMAIL IS OCCASIONALLY UNRELIABLE. WE DO NOT GIVE TAX ADVICE. ALWAYS CHECK WITH YOUR PERSONAL TAX ADVISOR.* **Confidentiality Disclosure:** The information in this email, fax, attachments, etc. is confidential and intended solely for the attention and use of the named addressee(s). This information may be subject to legal, professional or other privilege or may otherwise be protected by work product immunity or other legal rules. It must not be disclosed to any person without our authority. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are not authorized to disclose, and must not disclose, copy, distribute, or retain this message or any part of it.

# EXHIBIT F

Incorporation, the recording of which shall not be required among the Public Records to be effective unless such recording is otherwise required by law.   No amendment to the Articles shall, however, change any condominium parcel nor the voting rights appurtenant to a parcel unless the record owner or owners thereof and all record owners of liens upon such parcel or parcels shall join in the execution of such amendment.

## VIII.
## BY-LAWS

The operation of the Condominium Property shall be governed by the By-Laws of the Condominium Association which are annexed to this Declaration as Exhibit "C" and made a part hereof.

## IX.
## MEMBERSHIP IN THE CONDOMINIUM ASSOCIATION
## AND VOTING RIGHTS OF UNIT OWNERS

Every owner of a condominium unit whether he/she has acquired title by purchase from the Developer, the Developer's grantee, successor or assigns, or by gift, conveyance, or by operation of law, is bound to and hereby agrees that he/she shall accept membership in the Condominium Association described in Article VII hereinabove, and does hereby agree to be bound by The Condominium Act, Chapter 718, Florida Statutes, this Declaration, the Articles of Incorporation of the Association, the By-Laws of the Association and the Rules and Regulations enacted pursuant thereto and any amendments thereto.   Membership is automatic upon acquisition of the ownership of a condominium unit and may not be transferred apart and separate from a transfer of the ownership of the unit. Membership shall likewise automatically terminate upon sale or transfer of the unit, whether voluntary or involuntary.

The owner of every condominium unit shall accept ownership of said unit subject to restrictions, easements, reservations, conditions and limitations of record and affecting the land and improvements constituting the Condominium Property.

Subject to the provisions and restrictions set forth in the By-Laws of the Condominium Association, each apartment condominium unit owner is entitled to one (1) vote in the Condominium Association for each apartment condominium unit owned by him. Voting rights and qualifications of voters and membership in the Corporation are more fully stated, qualified and determined by the provisions of the Articles of Incorporation of the Association and its By-Laws.   Whenever a particular numerical or percentage vote is

5

called for or provided for in The Condominium Act, in this Declaration or in the By-Laws (such as "2/3 of the unit owners" or a "majority of the members") unless the particular provision describing the vote required shall specifically require to the contrary, the vote required shall be that percentage or fraction of the total number of votes of the condominium unit owners present and voting, or if the provision involved so requires, of the total number of votes entitled to be voted on the matter. Unless a particular provision shall require otherwise, a majority vote of the number of unit owners present and voting and entitled to vote on any matter shall be controlling, providing a quorum has been established.

## X.
## AMENDMENT TO DECLARATION

A.    Except as elsewhere provided in this Declaration, this Declaration may be amended from time to time by resolution adopted at any regular or special meeting of the unit owners of the Condominium called in accordance with the By-Laws at which a quorum is present, such adoption to be by the affirmative vote of two-thirds (2/3) of the total number of votes to which the unit owners present and voting shall be entitled. Such amendment shall be duly recorded in compliance with requirements of the Condominium Act. No amendment shall change any condominium parcel nor the share of the common elements, common expenses or common surplus attributable to any parcel, nor the voting rights appurtenant to any parcel, unless the record owners or owner thereof and all record owners of liens upon such parcel or parcels shall join in the execution of such amendments.

B.    The provisions of Paragraph A above notwithstanding, no provisions of this Declaration or of the By-Laws of the Condominium Association which requires to be effective, operational or to be enacted, a vote of the unit owners greater than that required in Paragraph A above, shall be amended or changed by any amendment to this Declaration or to the By-Laws of the Condominium Association insofar as they appertain to said provision or provisions, unless in addition to all other requirements of Paragraph A, above, being met, said amendment or change shall be approved by a vote of the membership not less than that required by this Declaration or the By-Laws, whichever shall be applicable, to effect such provision or provisions. Furthermore, no amendment or change to this Declaration or to the By-Laws shall be effective to affect or impair the validity or priority of any mortgage encumbering a condominium parcel or parcels without the written consent thereto by all of the mortgagees owning and holding the mortgage or mortgages encumbering the said parcel or parcels, which consent

6

# EXHIBIT G

5.2.4   To employ personnel to perform the services required for the proper operation of La Pensee.

5.2.5   To perform any other act necessary or proper to carry out the provisions of this Declaration, the Articles or By-Laws as expressed or implied therein, or any other thing reasonably necessary to promote the common health, safety, recreation or welfare of the Owners, family members, residents, guests, visitors and invitees.

## ARTICLE VI

### OFFICERS

6.1   <u>Executive Officers</u>.   The Executive Officers of the Association shall be a President, who shall be a Director, a Vice-President, who shall be a Director, a Treasurer and a Secretary, which officers need not be Directors.   The Officers shall be elected annually by the Board of Directors and may be removed with or without cause at any meeting by a vote of a majority of all of the Directors.   A person may hold more than one office except that the President may not also be the Secretary or Assistant Secretary. No person shall sign an instrument nor perform an act in the capacity of more than one office.   The Board of Directors from time to time may elect other Officers and designate their powers and duties as the Board shall find to be required to manage the affairs of the Association.

6.2   <u>President</u>.   The President shall be the chief executive officer of the Association.   He shall have all of the powers and duties that usually are vested in the office of President of an association, and shall unless he or she decides otherwise, preside at all meetings of the Board.

6.3   <u>Vice-President</u>.   The Vice-President shall exercise the powers and perform the duties of the President in the absence or disability of the President.   "Absence" or "Disability" shall be viewed on a case by case, duty by duty basis, and as used herein shall mean incapability of the President to effect the particular duty under question, incident to the office of the President.   He also shall assist the President and exercise such other powers and perform such other duties as are incident to the office of the Vice-President of an association and as may be required by the Directors or the President.

6.4   <u>Secretary</u>.   The Secretary shall keep the minutes of all proceedings of the Directors and the Members.   He shall attend to the giving of all notices to the Members and Directors and other notices required by law.   He shall have custody of the seal of the

10

# EXHIBIT H

from the OWNER OF RECORD.  Written permission must be granted by a majority vote of the members of the Board of Directors.  This permission must be received by the OWNER OF RECORD prior to the arrival of the guest in question.  All guests, including children, must observe the rules of this condominium.

B.  The Parking area is limited to passenger automobiles only.  No unit owner or other person shall be permitted to park or store boats, trailers, trucks, commercial vehicles or any inoperative vehicle on the condominium property.  Vehicles which are leaking fluid in the garage must be moved to the Guest Parking area.

C.  **Rental or Lease of Apartment** - Apartments can only be rented or leased one time in any twelve (12) month period.  A $100.00 non-refundable processing charge is to be attached to all rental/purchase applications, which must be approved by a majority vote of the Board of Directors prior to the tenant taking possession.

In addition to any and all provisions contained elsewhere governing the leasing/rental of units in La Pensee, the following apply:

1.  Unit owner must provide any member of the Board with written request to lease/rent the subject unit.  Each request must reflect the term of the lease and name(s) of potential tenant.

2.  Any member of the Board will schedule an interview with the potential tenant.  All such interviews including requested information will be the same as conducted for potential owners as in the case of the sale of a unit. A minimum of two directors will conduct the interview.

3.  At the scheduled interview, the Board members will review all rules and regulations with the potential tenant and require the potential tenant to sign an acknowledgement that they agree to be subject to all La Pensee rules and regulations and to abide by same.

4.  The Board will notify the unit owner of its decision.

5.  The unit owner bears all responsibility for any problem encountered with any tenant and the Association may enforce this Declaration against the unit owner and the Lessee.

10

# EXHIBIT I

4.   **Entrance Doors**

Entrance doors to apartments are not to be changed or altered in any way without written consent of the Board of Directors. The doors shall not be left in such a manner so as to interfere with the Association maintaining the air conditioning equipment. Entrance doors shall not be left open into the hallway for any extended period of time.

5.   **Garbage Disposal**

Grease, fats and other foreign matter such as paper, cigarettes, strings, etc. should not be put in the garbage disposal units or anything else which creates odors.

6.   **Extermination**

Each apartment, hallways, stairwells, lobby and building extremities will be treated by licensed exterminators on a monthly basis.  Building Maintenance should be contacted if bugs be a problem.

7.   **Noise**

No apartment owner shall make or permit to be made any disturbing noise in his apartment or the common areas, which will interfere with the rights and reasonable comfort and convenience of other owners.  No disturbing work should begin in anyone's apartment until 9:00 a.m. and work must cease by 5:00 p.m.  No work by a contractor is permitted on Sundays or Holidays.

8.   **Locks**

No extra locks may be placed on entrance doors without consent of Board of Directors.  Should permission be granted to change locks or add locks, a key must be give to maintenance.

9.   **Guests**

A.   Any one unit may not have more than two (2) guest occupancies in a 60-day period, when the OWNER OF RECORD is not in residence.  If more than two guest occupancies are desired in a 60-day period, the Board of Directors must receive a WRITTEN REQUEST

9

# EXHIBIT J

```
          P A L M   B E A C H   C O U N T Y   S H E R I F F ' S   O F F I C E        PAGE   1
CASE NO. 21038898              O F F E N S E   R E P O R T                   CASE NO. 21038898
                                                              DISPOSITION: ZULU
                                                              DIVISION: ROAD PATROL
911:
NEIGHBOR TROUBLE                    *                *                 *
SIGNAL CODE: 39    CRIME CODE:   NON CRIME CODE: NB   CODE: 9539  DATE: 02/24/21    WEDNESDAY
ZONE: N11 GRID: 19-11 DEPUTY I.D.:  35920 NAME: HUL DAVID       ASSIST:    TIME D 1335 A 1335 C 1449
OCCURRED BETWEEN DATE: 02/24/21 , 1334 HOURS AND  DATE: 02/24/21 , 1449 HOURS
EXCEPTION TYPE:
INCIDENT LOCATION: 4000   S  OCEAN                  BD  APT. NO.:
            CITY: SOUTH PALM BCH         STATE: FL        ZIP: 33480

NO. OFFENSES: 00 NO. OFFENDERS: UK NO. VEHICLES STOLEN:  0  NO. PREMISES ENTERED:  0
LOCATION: APARTMENT / CONDOMINIUM
NO. VICTIMS: 00 NO. ARRESTED:  0  FORCED ENTRY: 0


NAME LIST:
    ROLE:
COMPLAINANT           WILLIAM D WILCOX                   DOB: 09/28/1987
                SEX: M RACE: W HT: 603 WT: 230 HR: BROWN    EYE: BROWN
RESIDENTIAL ADDRESS: 4000  S  OCEAN      BD APT. 303  SOUTH PALM FL 33480     HOME PHONE:901 482-1987
BUSINESS PHONE: 561 000-0000
PROPERTY OWNER        DAVID G WOLF                      DOB: 01/17/1939
                SEX: M RACE: W HT: 509 WT: 180 HR: GRAY     EYE: HAZEL
RESIDENTIAL ADDRESS: 4000  S  OCEAN      BD APT. 604  SOUTH PALM FL 33480     HOME PHONE:215 768-4023
BUSINESS PHONE: 561 000-0000
..
    REPORT NUMBER: 1
WEATHER: DAY CLEAR


        ON 02-24-2021 AT APPROXIMATELY 1334 HOURS I WAS DISPATCHED TO A COMPLAINT
    OF NEIGHBOR TROUBLES AT 4000 SOUTH OCEAN BLVD, SOUTH PALM BEACH, PALM BEACH
    COUNTY, FL 33480. THE COMPLAINANT WILLIAM WILCOX STATED HE WISHED TO SPEAK TO
    A DEPUTY REGARDING RACIAL SLURS MADE BY OTHER RESIDENTS TOWARDS HIM.
        UPON ARRIVAL SGT GARRISON (ID#35918) AND I MADE CONTACT WITH WILCOX AT
    HIS APARTMENT, #303. WILCOX WAS IDENTIFIED BY FLORIDA DRIVERS LICENSE, AND WAS
    ASK TO EXPLAIN WHAT HAD OCCURRED. WILCOX STATED THE INCIDENT HE WAS CALLING
    ABOUT OCCURRED APPROXIMATELY TWO WEEKS AGO, AND AT THAT TIME ANOTHER RESIDENT
    HAD TOLD HIS GIRLFRIEND (NOT PRESENT AT THE TIME OF THIS CALL) THAT "NIGGERS
    DON'T BELONG HERE." WILCOX STATED HE KNEW THE RESIDENT WHO MADE THE STATEMENTS
    AS DAVID WOLF WHO RESIDED IN APARTMENT #604. WILCOX FURTHER STATED HE WAS
```

P A L M   B E A C H   C O U N T Y   S H E R I F F ' S   O F F I C E        PAGE    2
CASE NO. 21038898                    O F F E N S E   R E P O R T                    CASE NO. 21038898
                                                            DISPOSITION: ZULU

CONCERNED ABOUT FURTHER ESCALATION OF HARASSMENT AND CONFRONTATIONS.
        IT WAS EXPLAINED TO WILCOX THAT WHILE THE STATEMENT WAS OFFENSIVE IT DID
NOT CONSTITUTE A CRIMINAL ACT. IT WAS SUGGESTED TO WILCOX THAT HE AND HIS
GIRLFRIEND AVOID THE OTHER PARTY EVOLVED AND IF THEY WERE CONCERNED ABOUT
POSSIBLE INTERACTIONS WHILE IN THE COMMON AREAS OF BUILDING THEY COULD VIDEO
AS LONG AS THERE WAS NO EXPECTATION OF PRIVACY IN THAT AREA.
        SGT GARRISON AND I MADE CONTACT WITH THE OTHER PARTY INVOLVED, DAVID WOLF
IDENTIFIED BY PENNSYLVANIA DRIVERS LICENSE, WHO STATED TODAY PRIOR TO OUR
ARRIVAL WILCOX HAD BEEN GETTING ON TO THE ELEVATOR AS HE WAS EXITING TO WALK
HIS DOG AND WILCOX HAD STARTED TO YELL AT HIM ABOUT USING RACIAL SLURS. WOLF
STATED HE ATTEMPTED TO WALK AWAY BUT WAS FOLLOWED A SHORT DISTANCE BY WILCOX.
WOLF WAS INFORMED WE WERE CALLED REGARDING COMMENTS ALLEGEDLY MADE TWO WEEKS
AGO; WOLF STATED HE HAD HEARD ABOUT WILCOX'S ACCUSATION AND ADAMANTLY DENIED
MAKING IT.
        WOLF STATED HE WAS CONCERNED ABOUT AN ESCALATION OF HARASSMENT OR
CONFRONTATIONS BY WILCOX, AND THE SAME SUGGESTIONS WERE MADE TO HIM TO AVOID
THE OTHER PARTIES EVOLVED AND IF THEY WERE CONCERNED ABOUT POSSIBLE
INTERACTIONS WHILE IN THE COMMON AREAS OF BUILDING THEY COULD VIDEO AS LONG AS
THERE WAS NO EXPECTATION OF PRIVACY IN THAT AREA.
        AT THIS TIME NO CRIME HAS OCCURRED, THIS REPORT IS FOR INFORMATIONAL
PURPOSES ONLY.
D/S HUL 35920
DICT: 02242021 @ 1615
TRANS: 02252021 - AD/15628 (COPIED/PASTED VERBATIM)

----------------------------------------------------------------------------
                              *printed by Employee Id #: 8674  on  July 08, 2021 01:04:02PM*
----------------------------------------------------------------------------

```
                  P A L M   B E A C H   C O U N T Y   S H E R I F F ' S   O F F I C E        PAGE   1
CASE NO. 21060169                 O F F E N S E   R E P O R T                      CASE NO. 21060169
                                                                        DISPOSITION: ZULU
                                                                        DIVISION: ROAD PATROL
911:
NEIGHBOR TROUBLE                        *                   *                 *
SIGNAL CODE: 14     CRIME CODE:    NON CRIME CODE: NB   CODE: 9539  DATE: 04/28/21      WEDNESDAY
ZONE: N11 GRID: 19-11 DEPUTY I.D.:   5860 NAME: LAFORTE JASON   ASSIST:    TIME D 2115 A 2120 C 0115
OCCURRED BETWEEN DATE: 04/28/21 , 2118 HOURS AND   DATE: 04/28/21 , 2249 HOURS
EXCEPTION TYPE:
INCIDENT LOCATION: 4000     S OCEAN                   BD   APT. NO.: 203
          CITY: SOUTH PALM BCH          STATE: FL      ZIP: 33480

NO. OFFENSES: 00 NO. OFFENDERS: UK NO. VEHICLES STOLEN:  0  NO. PREMISES ENTERED:  0
LOCATION: PARKING LOT / GARAGE
NO. VICTIMS: 00 NO. ARRESTED:  0  FORCED ENTRY: 0


NAME LIST:
     ROLE:
COMPLAINANT          WILLIAM D WILCOX                   DOB: 09/28/1987
                SEX: M RACE: W HT: 603 WT: 230 HR: BROWN   EYE: BROWN
RESIDENTIAL ADDRESS: 4000   S OCEAN     BD APT. 303 SOUTH PALM FL 33480      HOME PHONE: 901 482-1987
BUSINESS PHONE: 561 000-0000
..
    REPORT NUMBER: 1
WEATHER: NIGHT CLEAR


             ON APRIL 28, 2021 AT APPROXIMATELY 2118 HOURS, I WAS DISPATCHED TO A
        COMPLAINT OF NEIGHBOR TROUBLES AT 4000 SOUTH OCEAN BLVD., SOUTH PALM BEACH,
        PALM BEACH FL 33480. UPON ARRIVAL DEPUTY ALEXANDRE (#5403) AND I MADE CONTACT
        WITH THE COMPLAINANT WILLIAM WILCOX. WILCOX STATED HE OBSERVED HIS NEIGHBORS
        ON THE 2RD FLOOR BALCONY (UNIT #203) SNORTING WHAT HE SUSPECTED TO BE COCAINE
        WHILE WALKING HIS DOG ON THE ROADWAY. D/S ALEXANDRE ASKED WILCOX HOW DID HE
        KNOW IT WAS COCAINE. WILCOX SAID HIS DOG CAN SNIFF COCAINE AND IS A CERTIFIED
        DRUG DOG.
             WILCOX FURTHER STATED HE IS A FEDERAL CONTRACT GOVERNMENT EMPLOYEE AND
        WAS ASKED TO PROVIDE IDENTIFICATION WHICH HE THEN PRODUCED A FLORIDA CONCEALED
        LICENSE.  HE WAS UNABLE TO ADVISE WHICH GOVERNMENT AGENCY HE WORKED FOR BUT
        DID PROVIDE A FLORIDA DRIVER'S LICENSE. I WENT OVER TO THE FRONT OF THE
        BUILDING AND OBSERVED TWO SUBJECTS SITTING ON THE 2ND STORY BALCONY. I
        OBSERVED THE SUBJECTS FOR SEVERAL MINUTES AND DID NOT OBSERVE ANY SUSPICIOUS
        ACTIVITY. WILCOX WANTED US TO MAKE CONTACT WITH THE RESIDENTS IN UNIT#203 AND
```

--------------------------------------------------------------------------------
--------------------------------------------------------------------------------

P A L M   B E A C H   C O U N T Y   S H E R I F F ' S   O F F I C E          PAGE    2

CASE NO. 21060169                    O F F E N S E   R E P O R T                    CASE NO. 21060169

DISPOSITION: ZULU

I ADVISED HIM WE HAD NO PROBABLE CAUSE.

    I INFORMED WILCOX I DIDN'T OBSERVE ANY SUSPICIOUS ACTIVITY ONLY TWO
SUBJECTS SITTING ON THEIR BALCONY. I ASKED WILCOX IF HE HAD ANY PRIOR NEIGHBOR
ISSUES WITH THE PEOPLE ON THE BALCONY AND HE TOLD ME HE HAD SOME PRIOR VERBAL
ALTERCATIONS WITH THEM BEFORE. WILCOX ALSO HAD A THIRD INCIDENT WITH ANOTHER
NEIGHBOR ON THE SIX FLOOR. ( CASE # 21-038898 )

    I REFEREED WILCOX TO FOLLOW UP WITH HIS HOA AND HIS RESPONSE WAS THEY
NEVER DO ANYTHING. D/S ALEXANDRE TOLD HIM THERE IS NOTHING FURTHER THAT CAN BE
DONE AT THIS TIME. WILCOX BECAME AGITATED BECAUSE ALEXANDRE TOLD HIM NOTHING
ELSE COULD BE DONE. HE DEMANDED TO SPEAK WITH ME AWAY FROM D/S ALEXANDRE. I
SPOKE WITH HIM PRIVATELY AS HE ALSO BECAME UPSET WITH ME AND REQUESTED TO
SPEAK WITH A SUPERVISOR. I INFORMED WILCOX A SGT. WAS EN ROUTE.  D/S ALEXANDRE
AND I STOOD AWAY FROM WILCOX TO DE-ESCALATE ANY FURTHER SITUATION UNTIL SGT.
SPERBECK AND SGT. STUBBLEBINE'S ARRIVAL. WILCOX BECAME UPSET WITH ME FOR
WALKING AWAY FROM HIM AND DEMANDED I COME BACK. I INFORMED HIM I WAS STANDING
BY WITH MY PARTER UNTIL A SUPERVISOR ARRIVED.

    SERGEANT SPERBECK GAVE WILCOX A SWORN STATEMENT WHICH HE COMPLETED. WHILE
READING OVER THE SWORN STATEMENT I OBSERVED INCONSISTENCIES. WILCOX WROTE HE
SMELLED A STRONG ODOR OF MARIJUANA COMING FROM THE 2ND FLOOR UNIT #203.
HOWEVER, HE STATED TO D/S ALEXANDRE AND I THE NEIGHBORS APPEARED TO BE
SNORTING COCAINE. IT WAS ALSO DOCUMENTED WITH COMMUNICATION IN CAD HE COULD
SEE THE SUBJECTS SNORTING DRUGS FROM THE ROADWAY.

    THIS REPORT IS FOR INFORMATIONAL PURPOSES ONLY.

D/S LA FORTE 5860
DICT: 04282021 @ 2300
TRANS: 04292021 - AD/15628 (COPIED/PASTED VERBATIM)

------------------------------------------------------------------------------------
------------------------------------------------------------------------------------

```
           P A L M   B E A C H   C O U N T Y   S H E R I F F ' S   O F F I C E        PAGE    1
      CASE NO. 21085928                 O F F E N S E   R E P O R T            CASE NO. 21085928
                                                            DISPOSITION: ZULU
                                                            DIVISION: ROAD PATROL
911:
ANIMAL BITE                          *                *                 *
SIGNAL CODE: 70    CRIME CODE:    NON CRIME CODE: AR   CODE: 9570 DATE: 07/15/21    THURSDAY
ZONE: N11 GRID: 19-11 DEPUTY I.D.: 35920 NAME: HUL DAVID     ASSIST:    TIME D 1009 A 1013 C 1038
OCCURRED BETWEEN DATE: 07/15/21 , 0919 HOURS AND  DATE: 07/15/21 , 1038 HOURS
EXCEPTION TYPE:
INCIDENT LOCATION: 4000    S OCEAN                 BD  APT. NO.:
         CITY: SOUTH PALM BCH          STATE: FL          ZIP: 33480

NO. OFFENSES: 00 NO. OFFENDERS: UK NO. VEHICLES STOLEN:  0  NO. PREMISES ENTERED:  0
LOCATION: APARTMENT / CONDOMINIUM
NO. VICTIMS: 00 NO. ARRESTED:  0  FORCED ENTRY: 0


NAME LIST:
    ROLE:
COMPLAINANT         WILLIAM D WILCOX                   DOB: 09/28/1987
               SEX: M RACE: W HT: 603 WT: 230 HR: BROWN    EYE: BROWN
RESIDENTIAL ADDRESS: 4000 S OCEAN      BD APT. 303 SOUTH PALM FL 33480    HOME PHONE:561 517-3750
BUSINESS PHONE: 561 000-0000
OTHER               TODD E DAVIS                      DOB: 08/16/1971
               SEX: M RACE: W HT: 507 WT: 190 HR: BROWN    EYE: BLUE
RESIDENTIAL ADDRESS: 4000     OCEAN     BD APT. 3   SOUTH PALM FL 33480    HOME PHONE:561 951-3145
BUSINESS PHONE: 561 000-0000
..
    REPORT NUMBER: 1
WEATHER: DAY CLEAR


          ON 07-15-2021 AT APPROXIMATELY 1012 HOURS I RESPONDED TO 4000 SOUTH OCEAN
     BLVD, TOWN OF SOUTH PALM BEACH, PALM BEACH COUNTY, FL 33480 IN RESPONSE TO AN
     ANIMAL CALL. THE COMPLAINANT DAVID WILCOX (KNOWN TO THIS DEPUTY FROM PRIOR
     CALLS) ADVISED DISPATCH HIS SERVICE ANIMAL HAD BEEN ATTACKED BY ANOTHER DOG.
     DISPATCH NOTIFIED ANIMAL CARE AND CONTROL OF THE INCIDENT PRIOR TO MY ARRIVAL.
          UPON ARRIVAL I MET WITH WILCOX I WAS ADVISED THERE WAS NO PHYSICAL
     INJURIES INVOLVED IN THIS INCIDENT TO EITHER HIMSELF OR THE ANIMALS INVOLVED.
     WILCOX SHOWED ME A VIDEO RECORDING FROM THE CONDOMINIUM'S CCTV SECURITY SYSTEM
     WHICH SHOWED HE AND HIS DOG (WHICH WAS LEASHED AND UNDER PHYSICAL CONTROL AT
     THE TIME) WAITING IN THE LOBBY AREA NEAR THE ELEVATOR. WHEN THE ELEVATOR
     ARRIVED AND THE DOORS OPENED A SMALL BLACK DOG WAS SEEN LUNGING OUT OF THE
```

--------------------------------------------------------------------------------
                        printed by Employee Id #: 6990  on  July 19, 2021 12:31:44PM
--------------------------------------------------------------------------------

```
              P A L M   B E A C H   C O U N T Y   S H E R I F F ' S   O F F I C E        PAGE    2
CASE NO. 21085928                      O F F E N S E   R E P O R T            CASE NO. 21085928
                                                            DISPOSITION: ZULU
```

ELEVATOR TOWARDS WILCOX'S DOG; THE FOOTAGE THEN SHOWED WILCOX PULLING HIS DOG
AWAY BY THE LEASH, THE OTHER OWNER PULLED THEIR DOG BACK INTO THE ELEVATOR AND
IT APPEARED THE DOGS NEVER MADE CONTACT WITH EACH OTHER.

    WILCOX REQUESTED I REVIEW THE FOOTAGE AGAIN IN THE PROPERTY MANAGEMENT
OFFICE TO VERIFY IT HAD NOT BEEN DELETED. I MET WITH TODD DAVIS, THE PROPERTY
MAINTENANCE MAN, AND REVIEWED THE VIDEO FOOTAGE, WHICH WAS IDENTICAL TO THE
ONE SHOWN TO ME BY WILCOX.

    WHILE REVIEWING THE FOOTAGE DAVIS STATED PER HOA GUIDELINES HE WAS ONLY
SUPPOSED TO REVIEW THE VIDEO FOOTAGE WITH HOA BOARD MEMBERS AND NOT GENERAL
RESIDENTS, BUT HE FELT PRESSURED TO ALLOW WILCOX TO VIEW THE FOOTAGE BASED ON
PAST INCIDENTS, WHICH OCCURRED INVOLVING WILCOX. WHEN I ASKED DAVIS TO
ARTICULATE WHY HE FELT PRESSURED TO DO SO HE COULD NOT IDENTIFY A SPECIFIC
ACTION OR REASON OTHER THAN STATING WILCOX DEMANDED TO SEE THE VIEW INSTEAD OF
ASKING.

    NO CRIME HAS OCCURRED, THE ANIMAL CALL WAS REFERRED TO ACC. THIS REPORT
IS FOR INFORMATIONAL PURPOSES ONLY.
D/S HUL 35920
DICT: 07152021 @ 1242
TRANS: 07152021 - AD/15628 (COPIED/PASTED VERBATIM)

-----------------------------------------------------------------------------
                          *printed by Employee Id #: 6990  on  July 19, 2021 12:31:44PM*
-----------------------------------------------------------------------------

# EXHIBIT K

```
          P A L M   B E A C H   C O U N T Y   S H E R I F F ' S   O F F I C E          PAGE    1
  CASE NO. 21103868              O F F E N S E   R E P O R T                CASE NO. 21103868
                                                              DISPOSITION: ZULU
                                                              DIVISION: ROAD PATROL
  911:
  INFORMATION                    *                *                *
  SIGNAL CODE: 22     CRIME CODE:    NON CRIME CODE: PS   CODE: 9514 DATE: 09/06/21    MONDAY
  ZONE: N11 GRID: 19-11 DEPUTY I.D.: 30557 NAME: STEWART JUNE   ASSIST:   TIME D 2025 A 2029 C 2054
  OCCURRED BETWEEN DATE: 09/06/21 , 2024 HOURS AND  DATE: 09/06/21 , 2044 HOURS
  EXCEPTION TYPE:
  INCIDENT LOCATION: 4000    S OCEAN              BD  APT. NO.: 601
          CITY: SOUTH PALM BCH          STATE: FL      ZIP: 33480

  NO. OFFENSES: 00 NO. OFFENDERS: UK NO. VEHICLES STOLEN:  0  NO. PREMISES ENTERED:  0
  LOCATION: APARTMENT / CONDOMINIUM
  NO. VICTIMS: 00 NO. ARRESTED:  0  FORCED ENTRY: 0


  NAME LIST:
      ROLE:
  OTHER                JOHN M LAWSON                  DOB: 06/06/1946
              SEX: M RACE: W HT: 602 WT: 218 HR: BROWN    EYE: BROWN
  BUSINESS PHONE: 561 000-0000
  OTHER                PAUL BRUSSER                   DOB: 10/26/1959
              SEX: M RACE: W HT: 508 WT: 180 HR: BROWN    EYE: BROWN
  RESIDENTIAL ADDRESS: 3601 S OCEAN     BD       SOUTH PALM FL 33480   HOME PHONE:561 707-0216
  BUSINESS PHONE: 561 000-0000
  OTHER                WILLIAM D WILCOX               DOB: 09/28/1987
              SEX: M RACE: W HT: 603 WT: 200 HR: BROWN    EYE: BROWN
  RESIDENTIAL ADDRESS: 4000 S OCEAN     BD APT. 303 SOUTH PALM FL 33480  HOME PHONE:561 517-3750
  BUSINESS PHONE: 561 000-0000
  ..
   *.*
              ON 09/06/2021 AT APPROXIMATELY 20:24 HOURS, I RESPONDED TO UNIT # 601 IN
        THE CONDOMINIUM OF LA PENSEE IN THE TOWN OF SOUTH PALM BEACH, PALM BEACH
        COUNTY, FL. IN REFERENCE TO A DISTURBANCE INVESTIGATION.
              UPON MY ARRIVAL, I SPOKE WITH THE COMPLAINANT, JOHN LAWSON WHO TOLD ME HE
        WAS WALKING HIS DOG ON SOUTH OCEAN BLVD. ON THE SIDEWALK AND TOLD ME THAT
        DAVID WILCOX WALKED BY AND LAWSON SAID HE CALLED HIM AN EXPLETIVE AND STATED
        HE IS GOING TO HAVE JESSE JACKSON COME TO THE CONDOMINIUM. LAWSON SAID HIS
        NEIGHBOR, PAUL BRUSSER WAS WALKING BY AND BRUSSER SAID HE HEARD HIM YELL AT
        LAWSON IN A THREATENING MANNER. LAWSON SAID HE MUST HAVE A CASE NUMBER BECAUSE
        THERE IS AN ONGOING LEGAL MATTER WITH THE CONDOMINIUM REGARDING WILCOX AND
        EVERY CONTACT MADE MUST BE RECORDED.
```

P A L M   B E A C H   C O U N T Y   S H E R I F F ' S   O F F I C E        PAGE     2

CASE NO. 21103868                    O F F E N S E   R E P O R T                CASE NO. 21103868

                                                               DISPOSITION: ZULU


          I SPOKE TO WILCOX WHO RECORDED ME WHILE I WAS ASKING HIM ABOUT HIS
     VERSION OF THE INCIDENT AND HE SAID HE DID NOT THREATEN ANYONE AND IF I HAVE
     ANY FURTHER QUESTIONS THAT I SHOULD SPEAK TO HIS ATTORNEY.
          THIS CASE IS FOR INFORMATIONAL PURPOSES ONLY.
     D/S STEWART 30057
     DICT: 09062021 @ 2200
     TRANS: 09072021 - AD/15628 (COPIED/PASTED VERBATIM)


*Generated by Employee: 29690 on Sep 07, 2021 02:09:29*

This file was last transferred from the mainframe on: 09/07/2021 01:17:42 PM